Exhibit 1

OFFICE OF JUDICIAL RECORDS
COURT OF COMMON PLEAS

Filed and Attested by the
Office of Judicial Records
14 MAY 2019 11:36 am
A. SILIGRINI

TO:   HMC INCORPORATED
      7190 Oakland Mills Road, #10
      Columbia, MD 21046

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. :<br>d/b/a PAR FUNDING, | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
| Plaintiff, : | |
| v. : | |
| HMC INCORPORATED, : | No. |
| and : | |
| KARA DIPIETRO, GUARANTOR, : | |
| Defendants. : | |

## NOTICE

Pursuant to Rule 236 of the Supreme Court of Pennsylvania, you are hereby notified that a Judgment has been entered against you in the above proceeding as indicated below.

Clerk, Office of Judicial Records

     __XXX__  JUDGMENT BY CONFESSION

     _____  JUDGMENT BY DEFAULT

     _____  JUDGMENT IN REPLEVIN

     _____  JUDGMENT ON GARNISHEE'S ANSWERS TO INTERROGATORIES

     _____  JUDGMENT ON AWARD OF ARBITRATORS

     _____  JUDGMENT ON VERDICT

     _____  JUDGMENT ON COURT FINDINGS

     _____  JUDGMENT ON WRIT OF REVIVAL

IF YOU HAVE ANY QUESTIONS CONCERNING THIS NOTICE, PLEASE CALL:

ATTORNEY:   JOHN HARTLEY, ESQUIRE
                (215) 987-3671

Case ID: 190501349

OFFICE OF JUDICIAL RECORDS
COURT OF COMMON PLEAS

TO:   KARA DIPIETRO, GUARANTOR
      1836 Landrake Road
      Towson, MD 21204

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. : <br> d/b/a PAR FUNDING, | COURT OF COMMON PLEAS <br> PHILADELPHIA COUNTY |
| Plaintiff, : | |
| v. : | No. |
| HMC INCORPORATED, : | |
| and : | |
| KARA DIPIETRO, GUARANTOR, : | |
| Defendants. : | |

## NOTICE

Pursuant to Rule 236 of the Supreme Court of Pennsylvania, you are hereby notified that a Judgment has been entered against you in the above proceeding as indicated below.

Clerk, Office of Judicial Records

XXX   JUDGMENT BY CONFESSION

_____   JUDGMENT BY DEFAULT

_____   JUDGMENT IN REPLEVIN

_____   JUDGMENT ON GARNISHEE'S ANSWERS TO INTERROGATORIES

_____   JUDGMENT ON AWARD OF ARBITRATORS

_____   JUDGMENT ON VERDICT

_____   JUDGMENT ON COURT FINDINGS

_____   JUDGMENT ON WRIT OF REVIVAL

IF YOU HAVE ANY QUESTIONS CONCERNING THIS NOTICE, PLEASE CALL:

ATTORNEY:  JOHN HARTLEY, ESQUIRE
           (215) 987-3671

Case ID: 190501349

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
By: John Hartley, Esquire
Attorney I.D. No.: 47106
By: Brian H. Smith, Esquire
Attorney I.D. No.: 65627
20 N. 3rd Street               Attorneys for Plaintiff
Philadelphia, PA 19106
(215) 987-3671

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. : <br> d/b/a PAR FUNDING, | COURT OF COMMON PLEAS <br> PHILADELPHIA COUNTY |
| Plaintiff, : | |
| v. : | |
| HMC INCORPORATED, : | No. |
| and : | |
| KARA DIPIETRO, GUARANTOR, : | |
| Defendants. : | |

### CONFESSION OF JUDGMENT

Pursuant to the authority contained in the warrants of attorney, the originals or true and correct copies of

which are attached to the complaint filed in the action, I appear for the defendant(s) and confess judgment, exclusive

of costs, in favor of plaintiff(s) and against defendant(s) as follows:

| | |
|---|---|
| Unpaid Receivables | $11,407,826.93 |
| Interest (at the rate of 6% per annum from May 9, 2019, through date of filing, and continuing) | $7,501.04 |
| Attorney Fees | $570,391.35 |
| TOTAL | $11,985,719.32 |

COMPLETE    BUSINESS    SOLUTIONS
GROUP, INC. d/b/a PAR FUNDING

By: _____
      John Hartley, Esquire
      Brian H. Smith, Esquire

Date: May 13, 2019

Case ID: 190501349

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
By: John Hartley, Esquire
Attorney I.D. No.: 47106
By: Brian H. Smith, Esquire
Attorney I.D. No.: 65627
20 N. 3rd Street
Philadelphia, PA 19106
(215) 987-3671

Attorneys for Plaintiff

| COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a PAR FUNDING, | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
|---|---|
| Plaintiff, | |
| v. | No. |
| HMC INCORPORATED, | |
| and | |
| KARA DIPIETRO, GUARANTOR, | |
| Defendants. | |

### AFFIDAVIT OF DEFAULT

| COMMONWEALTH OF PENNSYLVANIA | |
|---|---|
| | ss |
| COUNTY OF PHILADELPHIA | |

Jamie McElhone, being duly sworn according to law, deposes and says that I am authorized to make this affidavit on behalf of Plaintiff Complete Business Solutions Group, Inc d/b/a Par Funding ("Plaintiff" or "CBSG") and that:

Defendant HMC INCORPORATED ("Merchant") is believed to be a Maryland corporation with a last known address at 7190 Oakland Mills Road, #10   Columbia, MD 21046.

Defendant KARA DIPIETRO, Guarantor ("Guarantor"), is believed to be an adult individual with a last known address at 1836 Landrake Road   Towson, MD 21204.

Plaintiff and Merchant entered into six Factoring Agreements dated May 3, 2019, February 27, 2019, August 24, 2018, December 19, 2018, August 7, 2018, and October 3, 2018 (the "Agreements," a true and correct copy of which is attached to Plaintiff's Complaint in Confession of Judgment (the "Complaint") as Exhibit "A", Exhibit "B", Exhibit "C", Exhibit "D", Exhibit "E", and Exhibit "F" and incorporated herein by reference), pursuant

to which Merchant sold to Plaintiff and Plaintiff purchased from Merchant certain of Merchant's future receivables (the "Receivables") under the terms set forth in the Agreements.

Also, in connection with Merchant's execution of the Agreements and as a condition precedent to its effectiveness, Guarantor executed an individual Guaranty (the "Guaranty") personally guarantying Merchant's obligations under the Agreements (*see*, Complaint, Exhibit "A", Exhibit "B", Exhibit "C", Exhibit "D", Exhibit "E", and Exhibit "F" at p. 9). Guarantor individually, jointly, severally, and unconditionally guaranteed payment of the sums due and owing to Plaintiff by Merchant. Guarantor is individually, jointly, severally, and unconditionally liable to Plaintiff for the sums due and owing by Merchant.

Pursuant to the terms of the Agreements, Plaintiff purchased from Merchant $14,791,256.43 worth of Merchant's Receivables. Also pursuant to the terms to the Agreements, CBSG paid to Merchant the purchase price of the Receivables as required by the Agreements.

As of the filing of the Complaint in Confession of Judgment, Merchant has failed to deliver to CBSG the Receivables as required by the Agreements and is, therefore, in default of the Agreements, and Guarantor is in default of the Guaranty. CBSG has demanded that Merchant deliver the Receivables and that Guarantor satisfy the obligations under the Guaranty.

Judgment is not being entered against a natural person in connection with a consumer credit transaction or in connection with a residential lease. No current assignment has been made under the Agreements or the Guaranty. No judgment has been entered in any other jurisdiction.

Defendants are in default under the terms of the Agreements and/or the Guaranty in the amount of $11,407,826.93. Defendants are in default of continuing interest at the rate of 6% per annum due and owing under the Agreements and the Guaranty in the amount of $7,501.04 from May 9, 2019, and as of the date of filing of the Complaint in Confession of Judgment.

Attorney fees in the amount of $570,391.35 are owed by Defendants to Plaintiff pursuant to the Agreements and the Guaranty. The $570,391.35 for attorney fees represents actual attorney fees incurred to date together with anticipated attorney fees associated with the enforcement of Defendants' payment obligations enumerated herein, among other matters. These include, without limitation, the preparation and filing of the instant Confession of Judgment and to execute upon the judgment as necessary until same is paid in full. Plaintiff reserves the right to

assess additional attorney fees against Defendants in the event that a challenge to the instant Confession of Judgment

is made by any Defendant or in the event that actual attorney fees exceed those anticipated herein

Signer understands that the statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a PAR FUNDING

May 13, 2019

Jamie McElhone

Case ID: 190501349

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
By: John Hartley, Esquire
Attorney I.D. No.: 47106
By: Brian H. Smith, Esquire
Attorney I.D. No.: 65627
20 N. 3rd Street
Philadelphia, PA 19106
(215) 987-3671

Attorneys for Plaintiff

| COMPLETE BUSINESS SOLUTIONS GROUP, INC. | : | COURT OF COMMON PLEAS |
|---|---|---|
| d/b/a PAR FUNDING, | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| v. | : | No. |
| HMC INCORPORATED, | : | |
| and | : | |
| KARA DIPIETRO, GUARANTOR, | : | |
| Defendants. | : | |

NOTICE OF RIGHT TO RECOVER ATTORNEY FEES AND COSTS AND PROCEDURE TO
FOLLOW TO STRIKE OFF OR OPEN A CONFESSED JUDGMENT

TO:        ALL NAMED DEFENDANTS:

Pursuant to 42 Pa.C.S.A. 2737.1, you are hereby notified that a debtor who has been incorrectly identified
and had a confession of judgment entered against him shall be entitled to costs and reasonable attorney fees as
determined by the court.

Pursuant to 42 Pa.C.S.A. 2737.1, you are hereby notified of the instructions regarding the procedure to
follow to strike off or open a confessed judgment under Pennsylvania Rule of Civil Procedure 2959, which is
reproduced in full, in this Notice.

Pennsylvania Rule of Civil Procedure 2959
Striking Off or Opening; Judgment; Pleadings; Procedure

(a)(1)   Relief from a judgment by confession shall be sought by petition. Except as provided in subparagraph (2),
all grounds for relief whether to strike off the judgment or to open it must be asserted in a single petition.
The petition may be filed in the county in which the judgment was originally entered, in any county to
which the judgment has been transferred or in any other county in which the sheriff has received a writ of
execution directed to the sheriff to enforce the judgment.

(2)   The ground that the waiver of the due process rights of notice and hearing not voluntary, intelligent and
knowing shall be raised only

(i)    in support of a further request for a stay of execution where the court has not stayed

Case ID: 190501349

execution despite the timely filing of a petition for relief from the judgment and the presentation of prima facie evidence of a defense; and

(ii)     as provided by Rule 2958.3 or Rule 2973 .3.

(3)    If written notice is served upon the petitioner pursuant to Rule 2956. 1 (c) (2) or Rule 2973.1 (c), the petition shall be filed within thirty days after such service. Unless the defendant(s) can demonstrate that there were compelling reasons for the delay, a petition not timely filed shall be denied.

(b) If the petition states prima facie grounds for relief the court shall issue a rule to show cause and may grant a stay of proceedings. After being served with a copy of the petition, the plaintiff shall file an answer on or before the return day of the rule. The return day of the rule shall be fixed by the court by local rule or special order.

(c) A party waives all defenses and objections which are not included in the petition or answer.

(d) The petition and the rule to show cause and the answer shall be served as provided in Rule 440.

(e) The court shall dispose of the rule on petition and answer, and on any testimony, depositions, admissions and other evidence. The court for cause shown may stay proceedings on the petition insofar as it seeks to open the judgment pending disposition of the application to strike off the judgment. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment.

(f) The lien or the judgment of or any levy or attachment shall be preserved while the proceedings to strike off or open the judgment are pending.

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
By: John Hartley, Esquire
Attorney I.D. No.: 47106
By: Brian H. Smith, Esquire
Attorney I.D. No.: 65627
20 N. 3rd Street
Philadelphia, PA 19106
(215) 987-3671

Attorneys for Plaintiff

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. : <br> d/b/a PAR FUNDING, | COURT OF COMMON PLEAS <br> PHILADELPHIA COUNTY |
| Plaintiff, | |
| v. | No. |
| HMC INCORPORATED, | |
| and | |
| KARA DIPIETRO, GUARANTOR, | |
| Defendants. | |

COMMONWEALTH OF PENNSYLVANIA    :
                                :  ss
COUNTY OF PHILADELPHIA          :

### AFFIDAVIT OF INCOME, OF NON-CONSUMER CREDIT TRANSACTION,
### OF COMMERCIAL TRANSACTION & NON-RETAIL SALES AGREEMENTS OR CONTRACT,
### AND OF NON-MILITARY SERVICE

Jamie McElhone, being duly sworn according to law, deposes and says that she is an authorized representative of Plaintiff for purposes of the Confession of Judgment and related filings and that to the best of her knowledge, information, and belief:

1. the income of the or each individual Defendant is in excess of $10,000.00 per year;

2. this Confession of Judgment is not being entered against a natural person in connection with a consumer credit transaction;

3. the transaction upon which the judgment being entered arose out of a commercial transaction and is not based upon a retail sales Agreements or contract;

4. Defendant(s) is(are) not engaged in the military service of the United States, within the purview of the Servicemembers Civil Relief Act of 2003, as amended; and

Case ID: 190801349

5.   the name(s), approximate ages(s), residence address(es) of defendant(s) above-named is(are) as follows:

Name: KARA DIPIETRO, Guarantor
Age: Over 21 years
1836 Landrake Road
Towson, MD 21204

Name: HMC INCORPORATED
Age: N/A – business entity
7190 Oakland Mills Road, #10
Columbia, MD 21046

Signer understands that the statements herein are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

May 13, 2019

Jamie McElhone

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
By: John Hartley, Esquire
Attorney I.D. No.: 47106
By: Brian H. Smith, Esquire
Attorney I.D. No.: 65627
20 N. 3rd Street                                    Attorneys for Plaintiff
Philadelphia, PA 19106
(215) 987-3671

| | | |
|---|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a PAR FUNDING, | : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| v. | : | |
| HMC INCORPORATED, | : | No. |
| and | : | |
| KARA DIPIETRO, GUARANTOR, | : | |
| Defendants. | : | |

PRAECIPE TO ENTER CONFESSION OF JUDGMENT
AND ASSESSMENT OF DAMAGES

TO THE CLERK, OFFICE OF JUDICIAL RECORDS:

Please enter judgment in favor of Plaintiff Complete Business Solutions Group, Inc. d/b/a Par Funding, and against Defendant HMC INCORPORATED and Defendant KARA DIPIETRO, Guarantor, in the amount of $11,985,719.32.

By: _____
John Hartley, Esquire
Brian H. Smith, Esquire

Attorneys for Plaintiff

Date: May 18, 2019

Assessment of Damages:

| | |
|---|---|
| Unpaid Receivables | $11,407,826.93 |
| Interest (at the rate of 6% per annum from May 9, 2019, through date of filing, and continuing) | $7,501.04 |
| Attorney Fees | $570,391.35 |
| TOTAL | $11,985,719.32 |

Date: May 13, 2019

By: _____
John Hartley, Esquire
Brian H. Smith

Attorneys for Plaintiff

I hereby assess damages:

_____
Clerk, Office of Judicial Records

CERTIFICATION OF ADDRESSES

The undersigned hereby certifies of record that the precise addresses of Defendants are:

KARA DIPIETRO, Guarantor
1836 Landrake Road
Towson, MD 21204

HMC INCORPORATED
7190 Oakland Mills Road, #10
Columbia, MD 21046

The address of the plaintiff is:

Complete Business Solutions Group, Inc. d/b/a Par Funding
20 N. 3rd Street
Philadelphia, PA 19106

Date: May 13, 2019

By: _____
John Hartley, Esquire
Brian H. Smith, Esquire
Attorneys for Plaintiff

Case ID: 190501349

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
By: John Hartley, Esquire
Attorney I.D. No.: 47106
By: Brian H. Smith, Esquire
Attorney I.D. No.: 65627
20 N. 3rd Street                                    Attorneys for Plaintiff
Philadelphia, PA 19106
(215) 987-3671

| COMPLETE BUSINESS SOLUTIONS GROUP, INC. : | COURT OF COMMON PLEAS |
|---|---|
| d/b/a PAR FUNDING, : | PHILADELPHIA COUNTY |
| Plaintiff, : | |
| v. : | No. |
| HMC INCORPORATED, : | |
| and : | |
| KARA DIPIETRO, GUARANTOR, : | |
| Defendants. : | |

### COMPLAINT IN CONFESSION OF JUDGMENT

1.        Plaintiff is Complete Business Solutions Group, Inc. d/b/a Par Funding ("CBSG" or "Plaintiff"),

doing business at 20 N. 3rd Street, Philadelphia, Pennsylvania, 19106.

2.        Defendant HMC INCORPORATED ("Merchant") is believed to be a Maryland corporation with a

last known address at 7190 Oakland Mills Road, #10  Columbia, MD 21046.

3.        Defendant KARA DIPIETRO ("Guarantor"), is believed to be an adult individual with a last known

address at 1836 Landrake Road  Towson, MD 21204.

4.        Plaintiff and Merchant entered into six Factoring Agreements dated May 3, 2019, February 27,

2019, August 24, 2018, December 19, 2018, August 7, 2018, and October 3, 2018 (the "Agreements," a true and

correct copy of which is attached hereto as Exhibit "A", Exhibit "B", Exhibit "C", Exhibit "D", Exhibit "E", and

Exhibit "F" and incorporated herein by reference), pursuant to which Merchant sold to CBSG and CBSG purchased

from Merchant certain of Merchant's future receivables (the "Receivables") under the terms set forth in the

Agreements.

5.        Also, in connection with Merchant's execution of the Agreements and as a condition precedent to

its effectiveness, Guarantor executed an individual Guaranty (the "Guaranty") personally guarantying Merchant's obligations under the Agreements (see, Exhibit "A", Exhibit "B", Exhibit "C", Exhibit "D", Exhibit "E", and Exhibit "F" at p. 9). Guarantor individually, jointly, severally, and unconditionally guaranteed payment of the sums due and owing to Plaintiff by Merchant. Guarantor is individually, jointly, severally, and unconditionally liable to Plaintiff for the sums due and owing by Merchant.

6.      Pursuant to the terms of the Agreements, Plaintiff purchased from Merchant $14,791,256.43 worth of Merchant's Receivables.

7.      Also pursuant to the terms to the Agreements, Plaintiff paid to Merchant the purchase price of the Receivables as required by the Agreements.

8.      As of the filing of this Complaint in Confession of judgment, Merchant has failed to deliver to CBSG the Receivables as required by the Agreements and is, therefore, in default of the Agreements, and Guarantor is in default of the Guaranty.

9.      CBSG has demanded that Merchant deliver the Receivables and that Guarantor satisfy the obligations under the Guaranty.

10.     Judgment is not being entered against a natural person in connection with a consumer credit transaction or in connection with a residential lease.

11.     No current assignment has been made under the Agreements or Guaranty.

12.     No judgment has been entered in any other jurisdiction.

13.     Defendants are in default under the terms of the Agreements and/or the Guaranty in the amount of $11,407,826.93, which is the amount of non-deliverable receivables.

14.     Defendants are in default of continuing interest at the rate of 6% per annum due and owing under the Agreements and the Guaranty in the amount of $7,501.04 from May 9, 2019, and as of the date of filing the Complaint in Confession of Judgment.

15.     Attorney fees in the amount of $570,391.35 are owed by Defendants to Plaintiff pursuant to the Agreements and the Guaranty. The $570,391.35 for attorney fees represents actual attorney fees incurred to date together with anticipated attorney fees associated with the enforcement of Defendants' payment obligations

enumerated herein, among other matters. These include, without limitation, the preparation and filing of the instant

Confession of Judgment and to execute upon the judgment as necessary until same is paid in full.  Plaintiff reserves

the right to assess additional attorney fees against Defendants in the event that a challenge to the instant Confession

of Judgment is made by any Defendant or in the event that actual attorney fees exceed those anticipated herein.

16.    Defendants have failed and continue to fail to tender the obligations set forth herein.

17.    Plaintiff hereby confesses judgment pursuant to the warrants of attorney contained in the

Agreements and the Guaranty.

WHEREFORE, Plaintiff demands this Honorable Court grant judgment in favor of Plaintiff and against

Defendants, jointly and severally, for the sum of $11,985,719.32, as follows:

| | |
|---|---|
| Unpaid Receivables | $11,407,826.93 |
| Interest (at the rate of 6% per annum from May 9, 2019, through date of filing, and continuing) | $7,501.04 |
| Attorney Fees | $570,391.35 |
| TOTAL | $11,985,719.32 |

COMPLETE  BUSINESS  SOLUTIONS  GROUP,
INC. d/b/a PAR FUNDING

By: _____
John Hartley, Esquire
Brian H. Smith, Esquire

Attorneys for Plaintiff

Date: May 13, 2019

Case ID: 190501349

VERIFICATION

Jamie McElhone hereby states that she is an authorized representative of plaintiff for purposes of the foregoing Complaint in Confession of Judgment and verifies that the statements made in the civil action complaint are true and correct to the best of her knowledge, information, and belief. Further, any averments made in the alternative are based upon personal knowledge and/or information and belief. The language of the Complaint is that of counsel and not of signer. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn falsification to authorities.

Jamie McElhone

Date: May 13, 2019

Filed and Attested by the
Office of Judicial Records
14 MAY 2019 03:36 am
A. SILIGRINI

# EXHIBIT "A"

Case ID: 190501349

DocuSign Envelope ID: 1F63083A-4B0A-46B7-9CC9-7590EF03E054

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

## FACTORING AGREEMENT

Dated the 24TH day of AUGUST, 2018 by and between Complete Business Solutions Group, Inc. ("CBSG" and/or "PURCHASER") and the "SELLER/MERCHANT" listed below (as "Seller/Merchant" or "the Merchant").

Business Legal Name: HMC INCORPORATED
D/B/A: HMC INCORPORATED
Type of entity (check one) [] Corporation  [] LLC  [] Limited Partnership []  Limited Liability Partnership [] Sole Proprietor
Physical Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Mailing Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Fed ID#: 52-2005467

### PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Seller/Merchant's customers' and/or other third party payers (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.

THIS IS A FACTORING AGREEMENT WITH RECOURSE.

The Purchased Amount shall be paid to CBSG by Seller/Merchant's irrevocably authorizing only one depositing account acceptable to CBSG (the "Account") to remit the Daily Specified Amount from the Seller/Merchant's receipts until such time as CBSG receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Seller/Merchant hereby authorizes CBSG to ACH debit the "Specified Daily Amount" from the merchant's bank account, as an approximation of the base payment due under the Specified Percentage. It is the Seller/Merchant's responsibility to provide bank statements for any and all bank accounts by the Merchant to reconcile the daily payments made against the Daily Specified Amount. Failure to provide all of their bank statements in a timely instance or missing a month shall forfeit all rights to future reconciliations. CBSG may, upon Seller/Merchant's request, adjust the amount of any payment due under this Agreement at CBSG's sole discretion and as it deems appropriate in servicing this Agreement. Seller/Merchant warrants that it will ensure that funds adequate to cover the amount to be debited by CBSG remains in the account. Seller/Merchant will be held responsible for any fees incurred by CBSG resulting from a rejected ACH attempt or an event of default. (See Appendix A)  CBSG is not responsible for any overdrafts or rejected transactions in the Seller/Merchant's account which may result from CBSG's scheduled ACH debit under the terms of this Agreement. Notwithstanding, anything to the contrary in this Agreement or any other agreement between CBSG and Seller/Merchant, upon the violation of any provision contained in Sections I and II of the FACTORING AGREEMENT, shall be deemed a breach of the representations and warranties contained herein. A list of all fees applicable under this FACTORING AGREEMENT is contained in Appendix A.

Purchase Price: $1,816,756.14 Specified Percentage: 10%  Daily Specified Amount: $6,086.00  for 44 days    Receipts Purchased Amount: $1,107,137.13

* Deal 647 / Invoices: 7667, 2896, 2926, 2248, 2998, 2999, 3000, 3001, 3002, 3003, 3004, 3006, 3007, 3009, 3010, 3011, 3012, 3013, 3014, 3015, 3016, 3017, 3020, 3021, 3022, 3023, 3024, 3025, 3026, 3028, 3029

* After 44 Days, Defaulted to be returned or we will reassess factor rate

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGES 1 THROUGH 12 HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS FACTORING AGREEMENT.

FOR THE SELLER/MERCHANT
By: LARA DIPIETRO, OWNER        X ___Lara DiPietro___
Name and Title                        (Seller/Merchant Signature)

FOR THE SELLER/MERCHANT
By: LARA DIPIETRO, OWNER        X ___Lara DiPietro___
Name and Title                        (Seller/Merchant Signature)

COMPLETE BUSINESS SOLUTIONS GROUP, INC.

By _____
        Company Officer

To the extent set forth herein, each of the parties is obligated upon his/her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below.  Each individual executing this Agreement represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to honor the terms of this obligation and that the information provided herein and in all of CBSG documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements and the representations and warranties contained herein between Merchant and CBSG and CBSG shall be entitled to all remedies available under law  Merchant and each of the above-signed Officers/ Owners authorizes CBSG, its agents and representatives and any credit reporting agency engaged by CBSG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/Owner(s) continue to have any obligation owed to CBSG

ANY MISREPRESENTATION MADE BY SELLER/MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION

Page | 2                                        Merchant Initials ___

Case ID: 190501349

DocuSign Envelope ID: 1F60083A-4B6A-46B7-9CC9-7590EF03E054



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

HMC INCORPORATED

08/24/2018

COSTS TO COMPLETE

| JOB # | PROJECT NAME | | CONTRACT TOTAL | COST TO COMPLETE |
|---|---|---|---|---|
| 2002 | PG COUNTY COURTHOUSE | $ | 599,405.00 | 391,593.00 |
| 2006 | ARMADA HOFFLER CONST | $ | 2,208,447.16 | 36,000.00 |
| 2946 | ROBINS & MORTON GROU | $ | 1,651,392.00 | 499,474.40 |
| 2948 | ELMIRA COLLEGE - NY | $ | 614,256.00 | 125,000.00 |
| 2998 | POTOMAC CONSTRUCTION | $ | 114,653.35 | 2,500.00 |
| 2999 | POTOMAC CONSTRUCTION | $ | 132,174.08 | 2,750.00 |
| 3000 | GILBANE BUILDING COM | $ | 382,393.00 | 193,649.00 |
| 3001 | BOOZ ALLEN - 1MTI | $ | 103,133.02 | 200.00 |
| 3002 | POTOMAC CONSTRUCTION | $ | 113,284.32 | 300.00 |
| 3003 | GILBANE BUILDING COM | $ | 71,370.00 | 3,900.00 |
| 3004 | FCL BUILDERS | $ | 198,722.23 | 10,000.00 |
| 3006 | SALISBURY BROADCAST GROUP | $ | 22,070.33 | 2,700.00 |
| 3007 | BOOZ ALLEN 2ND FL | $ | 1,974.40 | 1,400.00 |
| 3009 | HENSEL PHELPS - NIST | $ | 22,000.00 | 13,200.00 |
| 3010 | DEPT DEFENSE | $ | 8,187.12 | 5,700.00 |
| 3011 | HARFORD MEMORIAL HSPT | $ | 10,150.00 | 7,100.00 |
| 3012 | BALTIMORE NATIONAL ZOO | $ | 3,759.08 | 2,800.00 |
| 3013 | ST FRANCIS UNIVERSITY | $ | 28,371.00 | 18,500.00 |
| 3014 | MAGRUDER HIGH SCHOOL | $ | 28,740.12 | 18,000.00 |
| 3015 | DREAM BUS | $ | 4,776.42 | 3,340.00 |
| 3016 | PWC BUILDERS | | 6,460.00 | 940.54 |
| 3017 | JOHN HOPKINS UNIVERSITY | $ | 17,905.21 | 12,500.00 |
| 3020 | RESIDENCE INN BALTIMORE | $ | 136,850.45 | 95,300.00 |
| 3021 | COPT - ACOE | $ | 1,376.01 | 969.20 |
| 3022 | MITCHELL COURT HOUSE | $ | 207,094.32 | 145,000.00 |
| 3023 | SALISBURY BROADCAST GROUP | $ | 3,390.00 | 2,250.00 |
| 3024 | PRCS HQ MILLER DRIVE | $ | 82,067.00 | 55,500.00 |
| 3025 | G.W.U. UNV. CAFE | $ | 8,197.00 | 5,700.00 |
| 3026 | BOOZ ALLEN MCLEAN | $ | 16,000.00 | 10,500.00 |
| 3028 | DISCOVERY BLDG | $ | 1,722.00 | 1,200.00 |
| 3029 | HARFORD COUNTY COURTHOUSE | $ | 229,000.00 | 150,000.00 |
| | | $ | 7,009,254.95 | 1,816,759.14 |

Merchant Initials

DocuSign Envelope ID: 1FE80D2A-4B6A-46B7-6CC9-7680EF03E084

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-305-7562

FACTORING AGREEMENT TERMS AND CONDITIONS

I. GENERAL TERMS OF AGREEMENT (MUTUAL REPRESENTATIONS AND WARRANTIES)

1.1 Electronic Fund Transfer. Upon request from PURCHASER (hereinafter "CBSG or Purchaser") Seller/Merchant (hereinafter Merchant") shall execute such forms of agreements acceptable to PURCHASER, with Bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER, and/or its authorized agent with all the information, authorization and passwords necessary for verifying Merchant's receivable, receipts and deposits into the account. Merchant shall authorize PURCHASER and/or it's agent to debit the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the SPECIFIED DAILY AMOUNT by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER

1.2 Deposit Agreement. Seller/Merchant shall execute an agreement (the "Deposit Agreement") acceptable to PURCHASER, with a Bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER and/or its authorized agent with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts and deposits into the account. Merchant shall authorize PURCHASER and/or it's agent to debit the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER

1.3 Term of Agreement. This Agreement shall have a term as set forth above. Upon the expiration of the term, this Agreement shall automatically renew for successive similar terms, provided, however, that during the renewal term(s) Merchant may terminate this Agreement upon ninety days' prior written notice (effective upon receipt) to PURCHASER. The termination of this Agreement shall not affect Merchant's responsibility to satisfy all outstanding obligations to PURCHASER at the time of termination.

1.4 Future Performance. PURCHASER reserves the right to rescind the offer to make any payment payments hereunder, in its sole discretion.

1.5 Financial Condition. Merchant authorizes PURCHASER and its agents to investigate their financial responsibility and history, and will provide to PURCHASER any bank or financial statements, tax returns, etc., as PURCHASER deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. PURCHASER is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.6 Transactional History. Merchant authorizes their bank to provide PURCHASER with Merchant's banking or processing history to determine qualification or continuation in this program.

Page 14

1.7 Indemnification. Merchant jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees)

incurred by Processor resulting from (a) claims asserted by PURCHASER for monies owed to PURCHASER from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by PURCHASER

1.8 No Liability. In no event will CBSG be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant

1.9 Reliance on Terms. Section 1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, PURCHASER and Processor, and notwithstanding the fact that Processor is not a party to this Agreement, Processor may rely upon their terms and treat them as a defense to any action

1.10 Sale of Receipts. Merchant and CBSG agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PURCHASER to Merchant. Merchant agrees that the Purchase Price is in exchange for future Receipts pursuant to this Agreement equals the fair market value of such Receipts. PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to PURCHASER with respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 11. IN NO EVENT SHALL THE AGGREGATE OF THE AMOUNTS RECEIVED AS INTEREST HEREUNDER. In the event that a court determines that PURCHASER has charged or received interest hereunder, and that said amount is in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PURCHASER shall promptly refund to Merchant any interest received by PURCHASER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PURCHASER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. MERCHANT ACKNOWLEDGES THAT PENNSYLVANIA LAW APPLIES TO THE WITHIN AGREEMENT

1.11 Monthly Statement of Merchant Cash Flow. Merchant hereby authorizes PURCHASER to initiate one or more ACH debits at the specified "Daily Retrieval Rate" from the Account as an approximation of the base payment due under the Specified Percentage. It is the Merchant's responsibility to provide financial information (e.g bank statements, credit card processing statements, general ledger) regarding its gross receivables, to reconcile the daily payments made against the Specified Percentage, permitting PURCHASER to debit or credit the difference to Merchant on a monthly basis so that the Daily Retrieval Rate equals the Specified Percentage.

1.12 Power of Attorney. Merchant irrevocably appoints PURCHASER as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to

PURCHASER from Processor, or in the case of a violation by Merchant of Section 1.12 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to PURCHASER; and (v) to file any claims or take any action or institute any proceeding which PURCHASER may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

1.13 Protections Against Default. Merchant represents and warrants that it will not violate Conditions (a) through (e) below and in the event of a breach thereunder the following Protections I through 8 may be invoked by PURCHASER, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without running into the PURCHASER electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to PURCHASER; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of PURCHASER, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to PURCHASER at law, in equity or otherwise pursuant to this Agreement
Protection 1. The full unaltered Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately
Protection 2. Upon breach of ANY MATERIAL PROVISION OR BREACH OF REPRESENTATIONS AND WARRANTIES in this Agreement, PURCHASER may enter that confession of judgment (judgment) with the Clerk of the Court and execute thereon
Protection 3 Purchaser may enforce its security interest in the Collateral described in Article III hereof
Protection 4. The entire Unpaid Purchase Amount shall become immediately refundable to PURCHASER from Merchant
Protection 5. Purchaser may proceed to protect and enforce its rights and remedies by lawsuit. In any such _____ Merchant Initials

DocuSign Envelope ID: 1F080B3A-4B6A-46B7-9CC9-7500EF03E054

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone. 215-922-2636 Fax: 888 305-7562

lawsuit, in which Purchaser shall recover judgment against Merchant, Merchant shall be liable for the full costs of PURCHASER'S legal action, including all reasonable attorneys' fees and court costs.

Protection 6. Merchant shall, upon execution of this Agreement, deliver to PURCHASER an executed assignment of lease of Merchant's premises in favor of CBSG. Upon breach of any provision in this paragraph 1.13, PURCHASER may exercise its rights under such assignment of lease.

Protection 7. PURCHASER may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account.

Protection 8. In the event Merchant changes or permits the change of the Processor approved by CBSG, or adds an additional Processor, in violation of Section 1.11 above, CBSG shall have the right, without waiving any of its rights and remedies and without notice to Merchant, to notify the new or additional Processor of the sale of the Receipts hereunder and to direct such new or additional Processor to make payment directly to CBSG of all or any portion of the amount received by such Processor.

1.14 Protection of Information. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes PURCHASER to disclose information concerning Merchant's and each Owner's credit standing (including credit bureau reports that PURCHASER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against PURCHASER or any of its affiliates relating to any (i) investigation undertaken by or on behalf of PURCHASER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.15 Confidentiality. Merchant understands and agrees that the terms and conditions of the products and services offered by PURCHASER, including this Agreement and any other PURCHASER documentations (collectively, "Confidential Information") are proprietary and confidential information of PURCHASER. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PURCHASER to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.15.

1.16 D/B/A's. Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PURCHASER and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

II. MERCHANT REPRESENTATIONS, WARRANTIES AND COVENANTS Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:

2.1 Financial Condition and Financial Information. Bank and financial statements, and future statements furnished to PURCHASER, fairly represent the financial condition of Merchant at such dates. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material or adverse change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.2 Governmental Approvals. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3 Authorization. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 Insurance. Merchant will maintain business-interruption insurance naming CBSG as loss payee and additional insured in amounts and against risks as are satisfactory to PURCHASER and shall provide PURCHASER proof of such insurance upon request.

2.5 Electronic Check Processing Agreement. Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without PURCHASER'S prior written consent. Any such change shall be a material breach of this Agreement.

2.6 Change of Name or Location. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PURCHASER or change any of its places of business.

2.7 Daily Batch Out. Merchant will batch out receipts with the Processor on a daily basis.

2.8 Estoppel Certificate. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, person firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.9 No Bankruptcy. As of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 2 and 3 are immediately invoked.

2.10 Working Capital Funding. Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than PURCHASER.

2.11 Unencumbered Receipts. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

2.12 Business Purpose. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement FOR BUSINESS PURPOSES ONLY and not as a consumer for personal, family or household purposes.

2.13 Default under Other Contracts. Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

2.14 3rd Party Negotiators with Regard to This Agreement and the Obligations Herein. Merchant hereby agrees not to retain any 3rd party negotiators, consolidators, or credit relief agencies with regard to its obligations under the terms of this Agreement. Merchant will maintain and allow direct communication with PURCHASER at all times during the course of this Agreement and shall not engage any 3rd party to negotiate its obligations as stated in this Agreement. Should Merchant violate this subsection 2.14, Merchant will be liable for the additional fee as specific in the attached Appendix A.

III. EVENTS OF BREACH OF REPRESENTATIONS, WARRANTIES, AND COVENANTS AND REMEDIES

3.1 Events of Breach of Representations, Warranties and Covenants. The occurrence of any of the following events shall constitute an "Event of a Breach of Representations, Warranties, and Covenants" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by MERCHANT; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (h) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of PURCHASER; (j) Merchant shall change its depositing account without the prior written consent of PURCHASER; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (l) Merchant shall engage a third party to renegotiate the terms of this Agreement on Merchant's behalf; (m) Merchant shall engage a third party in an attempt to cease direct communication and/or contact with PURCHASER; or (n) Merchant shall default under any of the terms, covenants and conditions of any other agreement with PURCHASER.

3.2 Remedies. In case any Event of a Breach of Representations, Warranties and Covenants, Default occurs and is not waived pursuant to Section 4.4 hereof, PURCHASER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder or any other legal or equitable right or remedy. IN THE EVENT OF VIOLATION OF THE REPRESENTATIONS AND WARRANTIES BY MERCHANT, PURCHASER may also file a Complaint in Confession of Judgment pursuant to the Warrant of Attorney contained herein. All rights,

Merchant Initials:

Case ID: 190501349

DocuSign Envelope ID: 1F680B3A-406A-46B7-9CC9-7590EF03E054



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by PURCHASER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 Consent to Sale/Transfer of Interest: In event of MERCHANT breach of warranties, covenants and representations under this Agreement, Merchant consents to PURCHASER's sale or transfer of its remaining interests in MERCHANT's receivables to a third party buyer of defaulted financial obligations and instruments. More specifically, MERCHANT recognizes PURCHASER's authority to sell its interests in said receivables to New York Utility Factor, LLC ("NYUF") which MERCHANT authorizes to pursue legal remedies in NYUF's home State of New York in the event of a breach of the warranties, covenants, and representations stated under this Agreement.

3.4 WARRANT OF ATTORNEY TO CONFESS JUDGMENT. UPON THE OCCURRENCE OF A VIOLATION OF THE REPRESENTATIONS AND WARRANTIES MADE HERETOFORE BY MERCHANT, MERCHANT IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE UNDER THIS MERCHANT AGREEMENT OR ANY ACCOMPANYING AGREEMENT, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO TEN PERCENT (10%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEY'S COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEY'S FEES AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS MERCHANT AGREEMENT "ATTORNEY'S FEES AND COLLECTION COSTS" TO THE EXTENT PERMITTED BY LAW. MERCHANT: (1) WAIVE THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVE AND RELEASE ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREINAFTER ENACTED; AND (3) RELEASE ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS MERCHANT AGREEMENT, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF PURCHASER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL MERCHANT AGREEMENT AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS PURCHASER

SHALL FIND IT NECESSARY AND DESIRABLE AND THIS BUSINESS CASH ADVANCE AND SECURITY AGREEMENT SHALL BE A SUFFICIENT WARRANT THEREFOR. PURCHASER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE AMOUNTS OWING HEREUNDER, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME AMOUNTS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST THE MERCHANT HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON MERCHANT'S BEHALF FOR ANY REASON, PURCHASER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR ANY PART OR ALL OF THE AMOUNTS OWED HEREUNDER, AS PROVIDED FOR HEREIN, IF DOING SO WILL CURE ANY ERRORS AND DEFECTS IN SUCH PRIOR PROCEEDINGS.

3.4.1 NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY MERCHANT IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT RECOURSE TO THE MERCHANT AND THE MERCHANT'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

3.5 Costs: Merchant shall pay to PURCHASER all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of PURCHASER's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees.

3.6 Required Notifications. Merchant is required to give PURCHASER written notice within 24 hours of any filing under Title 11 of the United States Code Merchant is required to give PURCHASER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

IV. MISCELLANEOUS

4.1 Modification(s); Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PURCHASER.

4.2 Assignment. PURCHASER may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3 Notices: All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 Waiver Remedies. No failure on the part of PURCHASER to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 Merchant/Guarantor(s) barred from transfer. This Agreement shall be binding upon and inure to the benefits of Merchant, PURCHASER and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER which consent may be withheld in PURCHASER's sole discretion. PURCHASER reserves the rights to assign this Agreement with or without prior written notice to Merchant or Guarantor(s).

4.6 Governing Law/Jurisdiction/Venue for disputes. All signatories to this Agreement consent that this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PURCHASER so elects, be instituted in the Court of Common Pleas, Philadelphia County, Federal Court for the Eastern District of Pennsylvania, or the Philadelphia County Municipal Court, (the "Acceptable Forums") Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum.

4.7 Survival of Representation, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.8 Severability In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9 Entire Agreement. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement herein embody the entire agreement between Merchant and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IN

Merchant Initials [ ]

DocuSign Envelope ID: 1F866D3A-4B8A-46B7-9CC9-7598EF03E064



22 N 3ʳᵈ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

PERMITTED BY LAW OR COURT OF LAW TO
PROCEED WITH A CLASS OR REPRESENT-
ATIVE ACTION AGAINST THE OTHER, THE
PARTIES HEREBY AGREE THAT: (1) THE
PREVAILING PARTY SHALL NOT BE
ENTITLED TO RECOVER ATTORNEYS' FEES
OR COSTS ASSOCIATED WITH PURSUING
THE CLASS OR REPRESENTATIVE ACTION
(NOT WITHSTANDING ANY OTHER PROV-
ISION IN THIS AGREEMENT); AND (2) THE
PARTY WHO INITIATES OR PARTICIPATES
AS A MEMBER OF THE CLASS WILL NOT
SUBMIT A CLAIM OR OTHERWISE PART-
ICIPATE IN ANY RECOVERY SECURED
THROUGH THE CLASS OR REPRESENT-
ATIVE ACTION.

4.12 Counterparts & Facsimile/Email Signatures.
This Agreement may be executed in any number of
counterparts each of which shall be deemed to be an
original, all of which together shall be deemed one and
the same instrument. Further, facsimile and email
signatures shall be deemed to be originals for all
purposes.

Page 17

Merchant Initials 

Case ID: 190501349

DocuSign Envelope ID: 1F680B3A-480A-4687-9CC9-7590EF03E054



22 N 3ʳᵈ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

Seller/Merchant's Legal Name: HMC INCORPORATED DBA HMC INCORPORATED

Physical Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046

FED ID # (Merchant): 52-2005467

## SECURITY AGREEMENT

**Security Interest.** To secure SELLER/MERCHANT'S'S performance obligations to PURCHASER under the "Factoring Agreement", SELLER/MERCHANT hereby grants to PURCHASER a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by SELLER/MERCHANT; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral")

**Cross-Collateral.** To secure MERCHANT's payment and performance obligations to PURCHASER under this Security Agreement (the "Agreement"), MERCHANT hereby grants PURCHASER a security interest in ___ (the "Additional Collateral") MERCHANT understands that PURCHASER will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement

SELLER/MERCHANT acknowledge and agree that any security interest granted to PURCHASER under any other agreement between SELLER/MERCHANT and PURCHASER (the "Cross-Collateral") will secure the obligations hereunder and under the FACTORING Agreement.

SELLER/MERCHANT agrees to execute any documents or take any action in connection with this Agreement as PURCHASER deems necessary to perfect or maintain PURCHASER'S first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements SELLER/MERCHANT hereby authorizes PURCHASER to file any financing statements deemed necessary by PURCHASER to perfect or maintain PURCHASER's security interest, which financing statements may contain notification that SELLER/MERCHANT have granted a negative pledge to PURCHASER with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien or may be tortiously interfering with PURCHASER'S rights SELLER/MERCHANT shall be liable for and PURCHASER may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by PURCHASER in protecting, preserving and enforcing PURCHASER'S security interest and rights

**Negative Pledge.** SELLER/MERCHANT agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** PURCHASER shall have the right to cure SELLER/MERCHANT default in the payment of rent on the following terms In the event SELLER/MERCHANT is served with papers in an action against SELLER/MERCHANT for nonpayment of rent or for summary eviction, PURCHASER may execute its rights and remedies under the Assignment of Lease. SELLER/MERCHANT also agrees that PURCHASER may enter into an agreement with SELLER/MERCHANT landlord giving PURCHASER the right (a) to enter SELLER/MERCHANT'S premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign SELLER/MERCHANT'S lease to another qualified SELLER/MERCHANT capable of operating a business comparable to SELLER/MERCHANT at such premises

**Remedies.** Upon any Event of Default, PURCHASER may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise

SELLER/MERCHANT
BY: KARA DIPIETRO, OWNER

*DocuSigned by:*
*Kara DiPietro*
Name (Merchant/signer)

Page 1 R                          Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 1F88083A-4B6A-4BB7-9CC9-7590EF03E054



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-165-7562

DISCLOSURE FOR CONFESSION OF JUDGMENT

AFFIANT:     KARA DIPIETRO

OBLIGEE:     Complete Business Solutions Group, Inc. d/b/a Par Funding

The undersigned have executed, and/or is executing, on even date herewith, one or more of the following instruments under which the Merchant is obligated to repay monies to Obligee:

1.          Factoring Agreement dated AUGUST 24, 2018; and

A.          THE MERCHANT ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY ENTER JUDGMENT BY CONFESSION AGAINST THE MERCHANT   BEING FULLY AWARE OF THE MERCHANT'S RIGHTS TO PRIOR NOTICE AND A HEARING ON THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT MAY BE ASSERTED AGAINST THE MERCHANT BY OBLIGEE THEREUNDER BEFORE JUDGMENT IS ENTERED, THE UNDERSIGNED HEREBY FREELY, KNOWINGLY, AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S ENTERING JUDGMENT AGAINST THE MERCHANT BY CONFESSION PURSUANT TO THE TERMS THEREOF.

B.          THE UNDERSIGNED ALSO ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY, AFTER ENTRY OF JUDGMENT AND WITHOUT EITHER NOTICE OR A HEARING, FORECLOSE UPON, ATTACH, LEVY, OR OTHERWISE SEIZE PROPERTY OR PROCEED AGAINST THE INTERESTS OF THE MERCHANT IN PROPERTY (REAL OR PERSONAL) IN FULL OR PARTIAL PAYMENT OR SATISFACTION OF THE JUDGMENT OR JUDGMENTS   BEING FULLY AWARE OF THE MERCHANT'S RIGHTS AFTER JUDGMENT IS ENTERED (INCLUDING THE RIGHT TO MOVE TO OPEN OR STRIKE THE JUDGMENT OR JUDGMENTS), THE UNDERSIGNED HEREBY FREELY, KNOWINGLY AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S TAKING SUCH ACTIONS AS MAY BE PERMITTED UNDER APPLICABLE STATE AND FEDERAL LAW WITHOUT PRIOR NOTICE TO THE MERCHANT.

C.          The Merchant hereby certifies that the financial accommodations being provided by the Obligee are for a business purpose, and not for personal, family or household use

D.          The statements made in this Disclosure for Confession of Judgment are made subject to the penalties of 18 Pa C S A. § 4904 relating to unsworn falsification to authorities.

SELLER/MERCHANT
By KARA DIPIETRO                        ┌─────────────┐
                                        │ Kara DiPietro │
EIN# 52-2005467                         │ (Signature)   │
                                        └─────────────┘

SELLER/MERCHANT
By: KARA DIPIETRO                       ┌─────────────┐
                                        │ Kara DiPietro │
SS# 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                         │ (Signature)   │
                                        └─────────────┘

Page | 9                    Afert-Sonn Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 1F68083A-4B6A-48B7-0CC0-7590EF03E054



22 N 3RD Street Philadelphia, Pennsylvania 19306
Phone: 215-922-2636          Fax: 888-305-7562

GUARANTY

Personal Guaranty of Performance. The undersigned Guarantor(s) hereby guarantees to PURCHASER, SELLER/MERCHANT'S performance of all of the representations, and warranties made by SELLER/MERCHANT in this Agreement and the Factoring Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations") Guarantor's obligations are due at the time of any breach by Merchant of any representation or warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement.

Guarantor Waivers. In the event that SELLER/MERCHANT violates its representations and warranties under the FACTORING AGREEMENT, PURCHASER may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral PURCHASER may hold pursuant to this Agreement or any other guaranty

PURCHASER does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) SELLER/MERCHANT'S violation of the representations and warranties of the FACTORING AGREEMENT or any renewal, extension or other modification of the FACTORING AGREEMENT. In addition, PURCHASER may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the FACTORING AGREEMENT or SELLER/MERCHANT'S other obligations to PURCHASER; (ii) release SELLER/MERCHANT from its obligations to PURCHASER; (iii) sell, release, impair, waive or otherwise execute upon any collateral securing the Guaranteed Obligations ; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until all obligations are fulfilled under the FACTORING AGREEMENT and SELLER/MERCHANT'S other obligations to PURCHASER under the FACTORING AGREEMENT and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against SELLER/MERCHANT, any other guarantor, or any collateral provided by SELLER/MERCHANT or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation, (ii) reimbursement, (iii) performance; (iv) indemnification; or (v) contribution. In the event that PURCHASER must return any amount paid by SELLER/MERCHANT or any other guarantee of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THE GUARANTY, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY GUARANTOR IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT RECOURSE TO THE GUARANTOR AND THE GUARANTOR'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT

GUARANTOR ACKNOWLEDGEMENT. Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail him/herself of that opportunity.

JOINT AND SEVERAL LIABILITY. The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

SELLER/MERCHANT
By: KARA DIPIETRO

EIN# 57-5006-467

SELLER/MERCHANT
By: KARA DIPIETRO

SS# 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

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY.

CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

Case ID: 190501349

DocuSign Envelope ID: 1F680B3A-4D6A-4667-9CCD-7560EF03E084



22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 484-383-7562

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the FACTORING AGREEMENT. You should keep this important legal document for your records.

**DISBURSEMENT OF BUSINESS CASH ADVANCE PROCEEDS:** By signing below, Seller/Merchant authorizes PURCHASER to disburse the Cash Advance Proceeds less the amount of any applicable fees upon approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller/Merchant later identified and is acceptable to PURCHASER) (hereinafter referred to as the "Designated Checking Account") in the disbursed amount set forth in the accompanying documents. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Merchant's depository bank a reasonable opportunity to act on it

**AUTOMATIC PAYMENT PLAN.** Enrollment in PURCHASER's Automatic Payment Plan is required for approval. By signing below, Seller/Merchant agrees to enroll in the Automatic Payment Plan and authorize PURCHASER to collect payments required under the terms of Seller/Merchant Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the payment schedule set forth in the accompanying Seller/Merchant Agreement. Seller/Merchant authorizes PURCHASER to increase the amount of any scheduled ACH debit entry to correct multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the payment schedule and any unpaid fees. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Seller/Merchant's depository bank a reasonable opportunity to act on it. PURCHASER may suspend or terminate Seller/Merchant's enrollment in the Automatic Payment Plan immediately if Seller/Merchant fails to keep Seller/Merchant's designated checking account in good standing or if there are insufficient funds in Merchant's checking account to process any payment.

If Seller/Merchant revokes the authorization or PURCHASER suspends or terminates Seller/Merchant's enrollment in the Automatic Payment Plan, Seller/Merchant will be responsible for making timely payments pursuant to the alternative payment methods described in the Seller/Merchant Agreement.

**BUSINESS PURPOSE ACCOUNT:** By signing below, Seller/Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes

**ACCOUNT CHANGES:** Seller/Merchant agrees to notify PURCHASER promptly if there are any changes to the account and routing numbers of the Designated Checking Account

**MISCELLANEOUS:** PURCHASER is not responsible for any fees charged by Seller/Merchant's bank as the result of credits or debits initiated under this agreement. The origination of ACH PURCHASER's Merchant's account must comply with the provisions of U.S. law.

Signature _____  Name _____  8/27/2018 3:19:16 PM PDT

Bank Name: TD Bank

City _____  State _____  Zip _____

Routing Number: 054001725

Account Number: 4351994186

Business Name on Account: HMC

Address on Account: _____

Seller/Merchant Phone #: _____  Tax ID Number: _____

Email _____

Signature _____

Title: _____

Page 14     Merchant Initials _____     Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: 1F660B3A-4B6A-4067-0CC0-7600EF03E064



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

BANK ACCOUNT DISCLOSURE AFFIDAVIT

For the purpose of obtaining the Business Cash Advance evidence by the Merchant Agreement of this same date herewith (the "Business Cash Advance") from Complete Business Solutions Group, Inc., the undersigned Seller/Merchant hereby makes the following statement under penalty of law:

PLEASE SIGN OPTION ONE OR TWO

OPTION 1 – DISCLOSURE AND AUTHORIZATION FOR ADDITIONAL ACCOUNTS:

The Seller/Merchant hereby declares that in addition to the designated for ACH debit, the Seller/Merchant also has the following additional account(s) which he authorizes us to use in the event we are unable to debit from the designated account:

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account
*attach additional pages if necessary

Seller/Merchant Signature _____   Dated   8/27/2018 3:10:36 PM PDT

Seller/Merchant Signature _____   Dated   8/27/2018 3:10:36 PM PDT

OPTION 2 - By signing below, the merchant swears, under penalty of law, that he has no accounts in any lending institution in addition to the one provided for ACH debit

Seller/Merchant Signature _____   Dated _____

Seller/Merchant Signature _____   Dated _____

Case ID: 190501349

DocuSign Envelope ID: 1F68DB3A-4B6A-4GB7-9CC0-7560EF03E054



22 N 3ᵈ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

## AUTHORIZATION TO RESUME ACH DEBITING FORM

NAME OF SELLER/MERCHANT: _____

INFORMATION (To be filled out by the customer)

I authorize Company (as shown above) to resume electronically debiting my bank account as detailed below, including a non-sufficient fund fee if applicable, until the debt to the company is paid in full.

Full Name on Account: _____

Account #: _____ Routing #: _____

Account Type (select one):    Checking    ☐    Savings    ☐

Account Class (select one):    Customer Account    ☐    Business Account    ☐

Payment amount: _____ Number of Payments: _____

Date of next payment: _____ Frequency of payments: _____

I understand that I may cancel this authorization by contacting the company at least five (5) business days prior to the payment due date. I further understand that canceling my ACH authorizations does not relieve me of the responsibility of paying my account in full, and that if I cancel or revoke this authorization before the debt is paid in full, the Company may take additional actions including legal actions to secure the debt.

Customer signature: *Izaira DiPietro*    Date: 8/27/2018 3:10:36 PM PDT

Customer Printed Name: _____

Customer contact Telephone #: _____

Customer signature: _____    Date: _____

Customer Printed Name: _____

Customer contact Telephone #: _____

Merchant Initials _____    Merchant Initials 

Case ID: 190501349

DocuSign Envelope ID: 1F680B3A-4B6A-46B7-8CC9-7580EF03E064



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

Dear Client,

Thank you for accepting this offer from Complete Business Solutions Group D/b/a Par Funding   We look forward to being your factoring partner for as long as you need.

Daily ACH Program:

Complete Business Solutions Group will require viewing access to your bank account prior to funding as part of our underwriting process, as well as during the time you have a balance with our company.

Please be assured that we carefully safeguard your confidential information and only essential top level personnel will have access to it

Please fill out the form below with the information necessary to access your account

**Be sure to indicate capital or lower case letters.

NAME OF BANK: _____

BANK PORTAL WEBSITE: _____

USERNAME: _____

PASSWORD: _____

SECURITY QUESTION/ANSWER 1: _____

SECURITY QUESTION/ANSWER 2: _____

SECURITY QUESTION/ANSWER 3: _____

ANY OTHER INFORMATION NECESSARY TO ACCESS YOUR ACCOUNTS:

Page | 14                          Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 1F680R0A-4B8A-4697-9CC9-7680EF03E064



22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2036          Fax: 868-305-7567

### APPENDIX A: THE FEE STRUCTURE

1    Origination Fee: $10,000.00 to cover underwriting and related expenses

2    ACH Program Fee - $8,000.00 – The ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs;

3    NSF Fee - $75.00 (each) - Up to FOUR TIMES ONLY before a default is declared;

4    Rejected ACH - $100.00 – If a merchant directs the bank to reject our debit ACH;

5    Bank Change Fee - $50.00 - If a merchant requires a change of account to be debited requiring us to adjust our system;

6    Blocked Account - $250.00 – If a merchant blocks CDSG's ACH debit of the Account, bounces more than 4 debits of the Account or simultaneously uses multiple bank accounts or credit-card processors to process its receipts;

7    Default Fee - $500.00 default fee - If a merchant changes bank accounts or switches to another credit card processor without CDSG's consent, or commits another default pursuant to this Agreement.

8    3rd Party Intermediary Fee - $4,000.00 deposit toward reasonable related expenses incurred by PURCHASER.  If PURCHASER receives a communication from a 3rd party debt relief/renegotiation entity or individual which has been retained by Merchant and which contacts PURCHASER on Merchant's behalf seeking to redirect communication (related to the obligations contained in this Agreement) to itself/themselves and away from Merchant.  This fee shall be used to cover Purchaser's reasonable expenses in retaining counsel or other parties to handle this additional administration required by this retention of the intermediary by PURCHASER.  Any portion of the fee that is not used by PURCHASER for this purpose shall be returned to Merchant at the conclusion of this Factoring Agreement or related legal action.

9.   Collections Expense – In the event of default, Seller / Merchant shall be responsible for all reasonable costs of collections, including, but not limited to, counsel fees, filing fees and any other fees which may be incurred.

10   Miscellaneous Service Fees – Merchant shall pay certain fees for services related to the origination and maintenance of accounts.  Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire.  The correct charge for the underwriting, UCC, ACH Program and origination of each Merchant will be paid from the funded amount.  Merchant will be charged $100.00 for every additional change of their operating bank account once they are active with CDSG.  Additional copies of prior monthly statements will incur a fee of $10.00 each.

11   Risk Assessment Fee - $10,000.00

12   UCC Fee - $10,000.00

Merchant Signature: _____  Name: _____

Merchant Signature: _____  Name: _____

CDSG/June 9/11 2018 Agreement

Page 115                                    Merchant Initials _____   Merchant Initial _____

DocuSign Envelope ID: 1F0B003A-4B6A-46B7-9CC9-7590EF03E084



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-2567

## MANDATORY JOINT AFFIDAVIT OF CONFESSION OF JUDGEMENT

INSTRUCTIONS:

SIGN AND NOTARIZE THIS SECTION OF THE AGREEMENT, SEND THE ORIGINAL COPY TO:

PAR FUNDING
22 N 3RD STREET
PHILADELPHIA, PA 19106

C/O UNDERWRITING

Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 1F600B3A-4B8A-49B7-80C9-7580EF03E004

CBSG

22 N 3ᵗʰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-2562

NEW YORK UNITY FACTOR, LLC

                       Plaintiff,

-against-

HMC INCORPORATED D/B/A
HMC INCORPORATED and
KARA DIPIETRO,

                       Defendant(s)

Index No.

**AFFIDAVIT OF
CONFESSION OF JUDGMENT**

STATE OF _____ )
                         ) ss.:
COUNTY OF _____ )

KARA DIPIETRO, being duly sworn, deposes and says:

        1.     I am a principal, owner, and an officer of HMC INCORPORATED D/B/A HMC INCORPORATED ("Merchant Defendant"), a CORPORATION located at 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046, in the County of _____, and as such, I have the authority to act on behalf of Merchant Defendant.

        2.     I reside at 1836 LANDRAKE RD, TOWSON, MD 21204, in the County of _____.

        3.     I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

        4.     Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the _____, Court of Common Jurisdiction for the County of _____ in the State of _____ the sum of $2,107,437.12 less any payments timely made pursuant to the secured Merchant Agreement dated AUGUST 24, 2018, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

Page 1 17                             Merchant Initials        Merchant Initials [KD]

Case ID: 190501349

DocuSign Envelope ID: 1F880B3A-406A-4G87-9CC9-7590EF03E054

22 N 3ᵀᴴ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2626        Fax: 888-305-7562

5.     In addition, I hereby confess judgment, individually and personally, jointly and severely, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the _____ Court of Common Jurisdiction for the County of _____ in the State of _____, against me personally in the sum of $2,107,437.12 less any payments timely made pursuant to the Merchant Agreement dated AUGUST 24, 2018, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.     This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated AUGUST 24, 2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated AUGUST 24, 2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.     Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

8.     If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.     I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this ____ day of _____, 2018.

Page | 18                                    Merchant Initials      Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 1F60083A-490A-4687-9CC9-7600EF00E054

CBSG

22 N 3ʳᵈ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636       Fax: 888-305-7562

By:_____
KARA DIPIETRO, individually, and on behalf of HMC
INCORPORATED D/B/A HMC INCORPORATED

Sworn to before me this
_____ day of _____, 2018.

_____
Notary Public

Merchant Initials            Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 1F680B3A-486A-4067-0CC9-7590BF03E054



22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-7636          Fax: 888-305-7562

AUGUST 24, 2018

Attn: Court Orders & Levies Dept.

Re:   *HMC INCORPORATED, et al.*
      Supreme Court of the State of New York, Richmond County  Index No.
      *Information Subpoena and Restraining Notice - RELEASE*

Complete Business Solutions Group, Inc. d/b/a Par Funding ("Funder"), Plaintiff/Judgment Creditor, and KARA DIPIETRO ("KARA") and HMC INCORPORATED ("HMC INCORPORATED"), Defendants/Judgment Debtors (collectively, "the Parties"), hereby authorize _____, N.A. and/or related entities (collectively, "_____ .N.A.") to release ($_____) (the "Release Amount") from the funds currently held in reserve per the Information Subpoena with Restraining Notice ("IS/RN"), payable as follows:

Via check                                        Via wire to:

HMC INCORPORATED and KARA agree to indemnify and hold harmless _____, N.A. and its officers, directors, agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from this release and/or the IS/RN. Upon tender of the Release Amount, Funder consents to the immediate RELEASE of the remainder and/or account(s) being held on reserve to HMC INCORPORATED, KARA, and/or its/their principals, agents, heirs and assigns.

10.    AGREED AND ACCEPTED:

By:_____                    By:_____
KARA DIPIETRO _____(Name)           Norman M. Valz, Esq.
Owner/Manager/Agent_____(Title)      *Attorney for Plaintiff/Judgment*
individually, and on behalf of *HMC*    *Creditor, NEW YORK UNITY*
*INCORPORATED*                          *FACTOR LLC and*
                                        Complete Business Solutions Group, Inc.
                                        205 Arch Street – 2nd Floor
                                        Philadelphia, PA  19106
                                        (215)          (tel.)

State of_____)
                          } ss:
County of_____)

Page | 26

Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 1F860B3A-4B6A-4607-8CC9-7580EF03E054

**CBSO**

22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

On the_____day of_____, in the year 2018, before me, the undersigned Notary Public in and for said state, personally appeared KARA DIPIETRO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

Page 121                              Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 1F80C05A-488A-46B7-9CCB-7690EFD3E054

**CBSG**

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

## ACKNOWLEDGEMENT

I, KARA DIPIETRO, hereby acknowledge:

> There has been no promise of additional capital in 30 days from funding by CBSG or any ISO (broker).
>> • Our policy is that merchants can seek additional capital from us when they have paid 55% of the Receipts Purchased Amount.
> That CBSG does not permit outside fees and that no one has discussed additional fees with me. The fee amount for this agreement is $36,000.00, which will be held back from the funding amount.
> There has not been and will not any contact from Third Party debt companies regarding this Factoring Agreement dated AUGUST 24, 2018.

I, the undersigned, acknowledge that I am in agreement with these items, which are also described in detail within the pages of this document.

Kara DiPietro
_____         8/27/2018 3:10:36 PM PDT
Signature                                     Date

Page 14

Merchant Initials [KD]

Case ID: 190501349

Filed and Attested by the
Office of Judicial Records
14 MAY 2019 11:36 am
A. SILIGRINI

# EXHIBIT "B"

Case ID: 190501349



- F U N D I N G -

## FUNDING PRE-QUALIFICATION

### CONGRATULATIONS!

*You Have Been Pre-Qualified for Business Funding*

To finalize your business funding, we need additional information and documents from you so we can fully assess how we can help you in growing your business. Along with this Funding Pre-Qualification, we are sending you a proposed Agreement for the Purchase and Sale of Future Receivables ("Agreement") and related documents. Please carefully review the Agreement and related documents in their entirety. If you find any errors, please contact your account specialist before signing and returning them.

You have been pre-qualified based on our preliminary review of the information you have given us so far. Your pre-qualification is not a guaranty of funding or a commitment to fund. You must provide the requested additional information and sign and return the Agreement and related documents being sent to you so our underwriting department can make a final determination regarding the terms of an agreement. Any misrepresentation relating to any information or documents you have provided to us so far or provide to us in the future or any adverse change in your financial condition or status may void this pre-qualification letter. Pre-qualification is subject to withdraw, change, and/or cancellation if you no longer meet the requirements for the requested funding.

We must receive your additional information and the signed Agreement and related documents within 10 days of the date of the Agreement, or we will consider your application to be withdrawn.







Please Initial

Case ID: 190501349



**FIRST ADVANCE**
- F U N D I N G -

<u>AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES</u>

This Agreement for the Purchase and Sale of Future Receivables ("Purchase Agreement") is made as of MAY 3, 2019 and is by and between First Advance Funding Inc and the business identified below. Capitalized terms in this Purchase Agreement and accompanying documents shall have the meanings set forth in the "Definitions" section of this Purchase Agreement unless otherwise defined herein.

*THIS PURCHASE AGREEMENT IS AN AGREEMENT WITH RECOURSE.*

| | | |
|---|---|---|
| Legal Business Name ("Merchant Seller") | HMC INCORPORATED | |
| D/B/A | HMC INCORPORATED | |
| Type of Business Entity | *Corporation (CORP)* | X |
| | *LLC (LLC)* | |
| | *Limited Partnership (LP)* | |
| | *Limited Liability Partnership (LLP)* | |
| | *Sole Proprietor (SP)* | |
| Physical Address | 77190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046 | |
| Mailing Address | 77190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046 | |
| Business Phone | | |
| Business E-mail | | |
| Federal EIN No. | 52-2005-167 | |
| "Owner" (authorized to execute this Purchase Agreement on behalf of Merchant Seller). | Name | KARA DIPIETRO |
| | Title | |
| | Home Address | 1836 LANDMARK RD, TOWSON, MD 21204 |
| | Home Phone | |
| | Cell Phone | |
| | E-mail | |
| | Social Security No. | 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 |

1. <u>PURCHASE AND SALE TERMS:</u>

| | |
|---|---|
| Payoff Existing | $185,178.00 |
| Purchase Price | $100,000.00 |
| Total Advance Amount | $285,178.00 |
| Specified Percentage | 10% |
| Daily Specified Amount | $2,536.71 |



Please Initial

Case ID: 190501349

DocuSign Envelope ID: 3ABB6F6E-7E3D-476F-BFAF-1D994C01E7FE

*FAST ADVANCE*

- F U N D I N G -

| Amount of Days | 140 |
| Receivables Purchased Amount | $356,422.50 |
| Estimated Final Receipt Date | 140 DAYS AFTER FUNDING |

## Acknowledgement of Purchase and Sale Terms

| FOR THE SELLER/MERCHANT   (PRINT NAME/TITLE) | DocuSigned by: | SIGNATURE | |
| KARA DIPIETRO | Kara DiPietro | | |
| | E7419866409DH7 | | |
| FOR THE SELLER/MERCHANT   (PRINT NAME/TITLE) | DocuSigned by: | SIGNATURE | |
| KARA DIPIETRO | Kara DiPietro | | |
| | E7419866409DH7 | | |

**Fast Advance Funding, Inc**

| |
| Company Officer |

**2.   DEFINITIONS:**

a.   **Account or Approved Account.** The deposit account designated by Merchant Seller and approved by Purchaser from which Payments will be remitted by Merchant Seller to Purchaser.

b.   **Approved Account Bank.** The bank or financial institution where the Account or Approved is maintained.

c.   **Additional Sums.** Any sum, other than the Receivables Purchased Amount, due or that may become due under this Purchase Agreement from Merchant Seller to Purchaser.

d.   **ACH.** Automated Clearing House.

e.   **FAF or Purchaser.** Fast Advance Funding, Inc.

f.   **Collateral.** Any and all collateral pledged to secure the obligations under this Purchase Agreement

g.   **Daily Specified Amount or Daily Retrieval Rate.** The amount Purchaser shall deduct from the Account on a daily basis (weekends and federal holidays excluded) until such time as the Receivables Purchased Amount is delivered (i.e., paid in full) to Purchaser. The Daily Specified Amount is an approximation of the base payment due under the Specified Percentage.

h.   **Debit.** Any debit made by Purchaser from the Account or Other Account as a Payment.

i.   **Expected Term.** The time from delivery of the Purchase Price until the Receivables are to be delivered in full by Merchant Seller to Purchaser.

j.   **Fee Schedule.** The schedule of fees attached hereto as Schedule A and made a part of this Purchase Agreement.

k.   **Guarantor.** Any individual or entity that guaranties Merchant Seller's obligations under this Purchase Agreement.

l.   **Guaranty.** Any guaranty signed by a Guarantor evidencing the Guarantor's agreement to guaranty Merchant Seller's obligations under this Purchase Agreement.

m.   **Independent Sales Organization.**

*Please Initial*

KD

Case ID: 190501349

**FAST ADVANCE FUNDING**

n. **NSF Fees.** Any fee or charge that results from an Account or Other Account not having sufficient funds to cover the amount of any Payment or Debit, including, without limitation, fees or charges for rejected Debits or Payments made (or attempted) via ACH.

o. **Other Account.** Any account from which Purchaser allows Merchant Seller to make a Payment that is not the Approved Account.

p. **Outside Fees.** Fees paid to any third party in connection with the execution or negotiation of this Purchase Agreement.

q. **Owner.** Individual(s) or entity(ies) executing this Purchase Agreement on behalf of the Merchant Seller.

r. **Parties.** Merchant Seller and FAF, collectively.

s. **Payments.** Payments made or to be made by Merchant Seller as the means for delivery of the Receivables by Merchant Seller to Purchaser.

t. **Processor.**

u. **Purchase Agreement.** This Agreement for the Purchase and Sale of Future Receivables, any and all documents executed in connection herewith as a condition precedent to its effectiveness, and any and all exhibits incorporated herein by reference.

v. **Purchase Price.** The total dollar amount FAF is paying to Merchant Seller in exchange for the Receivables and pursuant to the terms of this Purchase Agreement.

w. **Purchaser or FAF.** Fast Advance Funding, Inc.

x. **Receivables.** Any and all payments made to Merchant Seller by cash, check, credit or debit card, or electronic transfer or by any other form of monetary payment in the ordinary course of Merchant Seller's business, including, without limitation, any and all of Merchant Seller's future receivables, receipts, accounts, contract rights, royalties, and obligations due to Merchant Seller that arise from or relate to the payment of monies to Merchant Seller from Merchant Seller's customers and/or other third party payers until such time as the Receivables Purchased Amount has been delivered by Merchant Seller to FAF.

y. **Receivables Purchased Amount or RPA.** The total amount of Receivables Merchant Seller is selling to FAF in exchange for the Purchase Price and pursuant to the terms of this Purchase Agreement.

3. **ACKNOWLEDGEMENTS:**

a. **No Promise of Additional Capital.** Merchant Seller acknowledges that neither FAF nor any Independent Sales Organization or Broker has made a promise of additional capital in the form of future-receivables purchases.

b. **Sale of Additional Future Receivables.** Merchant Seller acknowledges that FAF's policy is that a merchant seller may seek to sell to FAF additional future receivables only after the merchant/seller has delivered to FAF 55% of the receivables purchased by FAF from the merchant/seller.

c. **Outside Fee Not Permitted.** Merchant Seller acknowledges that FAF does not allow Outside Fees and that no one has discussed additional fees (other than those set forth in the Fee Schedule) with Merchant Seller or any representative of Seller Merchant.

d. **No Third-Party Contact.** Merchant Seller acknowledges that it has not had and will not have or maintain any contact with any third-party debt company regarding the Purchase Agreement.

4. **GENERAL TERMS:**

a. **Execution of Documents.** As a condition precedent to the effectiveness of this Purchase Agreement, Merchant Seller shall execute the following documents, authorizations, and/or agreements in the form(s) acceptable to Purchaser and if requested by Purchaser:

Case ID: 190501348

*Please Initial*

DocuSign Envelope ID: 3A1B0F8E-7E3D-476F-BFAF-1D594C01E7FE

**FAST ADVANCE**

**- F U N D I N G -**

    i.   <u>Bank Authorization.</u> Merchant Seller shall execute a written authorization with the Acceptable Account Bank to obtain electronic funds transfer services and allowing Purchaser and/or its agent to debit the Daily Specified Amount of any other Payment from the Account. Merchant Seller shall provide Purchaser and/or its authorized agent with all the information, authorization(s), and/or password(s) necessary for Purchaser: (1) to verify Merchant Seller's receivables, receipts and deposits into the Account, payments and debits made from the Account, and balance in the Account; and (2) to withdraw the Specified Daily Amount and/or other Payments via ACH debit. The authorization given and executed pursuant this section shall be irrevocable; however, notwithstanding the foregoing, it may be revoked with, and only with, the written consent of Purchaser.

    ii.   <u>Assignment of Lease.</u> Merchant Seller shall execute and deliver to Purchaser an "Assignment of Lease" in favor of Purchaser for any premises leased by or for Merchant Seller and used in connection with the operation of Merchant Seller's business and its business operations. The Assignment of Lease shall be in a form acceptable to Purchaser.

  b.  <u>Term.</u> The Receivables Purchased Amount and any Additional Sums shall be delivered and/or paid in full by Merchant Seller to Purchaser during the Expected Term. To the extent Purchaser allows the Receivables Purchased Amount and/or any Additional Sums to be delivered and/or paid beyond the Expected Term, such allowance is not and shall not be deemed a waiver by Purchaser of any of it rights and/or remedies allowed under this Agreement. The provisions of this section shall survive expiration or termination of this Purchase Agreement.

  c.  <u>Future Purchases.</u> Purchaser is under no obligation to make future purchases from Merchant Seller. To the extent the Purchase Price is being paid by Purchaser in incremental payments to Merchant Seller, Purchaser reserves the right, following a breach of or default under this Purchase Agreement, to withhold any incremental payment(s) not yet made.

  d.  <u>Financial Condition.</u> Merchant Seller authorizes Purchaser and/or its agents to investigate its financial responsibility and history. Merchant Seller shall provide to Purchaser any bank or financial statements, tax returns, etc., as Purchaser deems necessary prior to or at any time after execution of this Purchase Agreement. A photocopy of this authorization will be deemed acceptable for release to Purchaser of such financial information. Purchaser is authorized to collected updated information and financial profiles form Merchant Seller from time to time as Purchaser deems appropriate.

  e.  <u>Transactional History.</u> Merchant Seller authorizes its banks or other financial institutions to provide Purchaser with Merchant Seller's banking or processing history to determine Merchant Seller's qualification to continue with business relationships with Purchasers.

  f.  <u>Monthly Assessment of Merchant Cash Flow.</u> Merchant hereby authorizes Purchaser to initiate one or more ACH debits at the specified Daily Retrieval Rate from the Account as an approximation of the base payment due under the Specified Percentage. It is the Merchant's responsibility to provide financial information (e.g. bank statements, credit card processing statements, general ledger) regarding its gross receivables and to reconcile the daily payments made against the Specified Percentage, permitting Purchaser to debit or credit the difference to Merchant on a monthly basis so that the Daily Retrieval Rate equals the Specified Percentage.

5.  <u>PURCHASE AND SALE OF RECEIVABLES.</u>

  a.  In exchange for the Purchase Price, Merchant Seller hereby sells, assigns, and transfers to FAF the Receivables, thereby making FAF the absolute owner of the Receivables, which include, but are not limited to, any and all payments made to Merchant Seller by cash, check, credit or debit card, or electronic transfer or by any other form of monetary payment in the ordinary course of Merchant Seller's business, including, without limitation, any and all of Merchant Seller's future receivables, receipts, accounts, contract rights, royalties, and obligations due to Merchant Seller that arise from or relate to the payment of monies to Merchant Seller from Seller/Merchant's customers and/or other third party payers until such time as the Receivables Purchased Amount has been delivered by Merchant Seller to FAF.

  b.  The Purchase Price is being paid in exchange for the purchase and sale of the Receivables and is not intended to be, nor shall it be construed as, a loan from Purchaser to Merchant Seller. Merchant Seller agrees and acknowledges that the Purchase Price represents the fair market value of the Receivables. Purchaser has purchased and shall own all the Receivables up to the total RPA as the Receivables are created. Payments made to Purchaser towards the total RPA shall be conditioned upon (i) Merchant Seller's sale of products and/or services and (ii) the payment of such goods and/or services to Merchant Seller by its customers pursuant to the terms of this Purchase Agreement.

*Please Initial*

Case ID: 190501349

e.  In no event shall any amounts paid to or received by Purchaser (or any portion of any such amount) be construed as or considered to be interest (with the exception of any interest awarded pursuant to any judgment entered against Merchant Seller for a breach of this Purchase Agreement). In the event that any court of competent jurisdiction determines that Purchaser has improperly charged or received interest under this Purchase Agreement and that said amount is in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and Purchaser shall promptly refund to Merchant Seller any interest Purchaser received in excess of the maximum lawful rate.  It is Merchant Seller's intent that it not pay or contract to pay and that Purchaser not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant Seller under applicable law.

6.  **PAYMENT OF PURCHASE PRICE BY RAF TO SELLER.**  Purchaser shall wire the Purchase Payment Amount into the designated bank account of Merchant Seller upon execution of this Purchase Agreement.

7.  **DELIVERY OF RECEIVABLES BY SELLER TO RAF.**

a.  Merchant Seller shall deliver the Receivables to Purchaser by making Payments to Purchaser pursuant to the terms of this Purchase Agreement.

b.  Merchant Seller hereby irrevocably authorizes Purchaser to debit on a daily basis the Daily Specified Amount from the Account.  Notwithstanding the foregoing, debits shall not be made on weekends or on federal holidays.

c.  Merchant Seller shall ensure that funds adequate to cover any and all amounts to be debited by Purchaser are in the Account or Other Account when the Debit is scheduled to be and is made.

d.  Upon Merchant Seller's request, Purchaser may, in its sole discretion and judgment, adjust the amount of any Payment or Debit to be made under this Purchase Agreement.  Any adjustment made by Purchaser pursuant to this section shall not be construed as a waiver of any of Purchaser's rights and/or remedies or of Merchant Seller's's other obligations under this Purchase Agreement.

e.  Merchant Seller shall be responsible for and pay to Purchaser any and all NSF Fees upon the assessment of any such fee against Purchaser.  Purchaser is not responsible for any overdrafts or rejected transactions that result to any Account or Other Account as a result of Purchaser making a schedule or otherwise agreed upon Debit from an Account or other Account.

f.  Merchant Seller shall provide to Purchaser Merchant Seller's bank statements for any and all bank accounts to allow Purchaser to reconcile the daily payments made against the Daily Specified Amount.  Failure to provide all such bank statements in a timely manner shall forfeit all rights to future reconciliations.

8.  **MERCHANT SELLER'S REPRESENTATIONS AND WARRANTIES.**  Merchant Seller represents and warrants that as of the date of this Purchase Agreement and throughout the term of the Purchase Agreement as follows:

a.  **Financial Condition and Financial Information.**  Current and future bank and financial statements Merchant Seller has furnished and/or will furnished to Purchaser do and shall fairly represent the financial condition of Merchant Seller as of the date of any such bank or financial statement.  Merchant Seller has a continuing, affirmative obligation to advise Purchaser of any material or adverse change in its financial condition, operation, or ownership.  Purchaser may request bank and financial statements from Merchant Seller at any time during the term of this Purchase Agreement.  Upon Purchaser's request of bank and/or financial statements from Merchant Seller, Merchant Seller shall provide the request statement to Purchaser within five (5) business days of the request.

**- FUNDING -**

b. **Business Purpose.** Merchant Seller is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates. Merchant Seller is entering into this Purchase Agreement *for business purposes only* and not as a consumer for personal, family, or household purposes.

c. **Governmental Approvals.** Merchant is in compliance and shall at all time remain in compliance with all laws and has all valid permits, authorizations, and licenses required and necessary to own, operate and lease its properties and to conduct the business in which it is presently engaged.

d. **No Conflicting Obligations/Unencumbered Receivables.** There are no other agreements, court orders, or any other legal obligations that would preclude or in any manner restrict such Merchant Seller from: (i) negotiating and entering into this Purchase Agreement; or (ii) fulfilling its responsibilities and obligations under this Purchase Agreement. Unless otherwise disclosed to Purchaser and such disclosure acknowledged by Purchaser prior to the execution of this Purchase Agreement, Merchant has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and/or encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated by this Purchase Agreement or adverse to the interests of Purchaser.

e. **No Bankruptcy.** As of the date of this Purchase Agreement, Merchant Seller does not contemplate filing and has not filed any petition for bankruptcy protection under Title 11 of the United States Code, no involuntary petition has been brought or is pending against Merchant Seller, and there is presently no basis for an involuntary petition to be brought against it.

f. **Authorization.** Merchant Seller and each of the individuals executing this Purchase Agreement and the Schedules and Exhibits hereto warrants and represents that he or she has full authority to execute this Purchase Agreement and the Schedules and Exhibits hereto and to bind the entity on whose behalf he or she is executing this Purchase Agreement and the Schedules and Exhibits hereto.

9. **ADDITIONAL OBLIGATIONS.**

a. **Insurance.** Merchant Seller shall maintain business-interruption insurance naming Purchaser as loss payee and additional insured in amounts and against risks as are satisfactory to Purchaser and shall provide Purchaser proof of such insurance upon request.

b. **Change of Name or Location/Reference to DBA.** Merchant Seller shall conduct its business only under its legal businesses name or under a "doing-business-as" or "d/b/a" name previously disclosed to Purchaser. In the event Purchaser, in connection with any matter relating to the transactions contemplated by this Purchase Agreement, uses a "doing-business-as" or "d/b/a" name used by Merchant Seller (whether or not previously disclosed to Purchaser) to refer to Merchant Seller, Merchant Seller consents to and agrees that such use shall be deemed an acceptable reference to Merchant Seller's legal name. Such use by Purchaser shall include, without limitation, use of a "doing-business-as" or "d/b/a" name in connection with the filing of any form under the Uniform Commercial Code and/or any other filing or notice.

c. **Daily Batch Out.** Merchant Seller will settle receipts with the Processor on a daily basis.

d. **Estoppel Certificate.** Upon the request of Purchaser, Merchant Seller shall execute and deliver to Purchaser (and/or to any other person, entity, firm, or corporation designated by Purchaser in its request) an "Estoppel Certificate" in the form Purchaser requires certifying that this Purchase Agreement is unmodified and in full force and effect and stating the dates on which Receivables Purchased Amount or any portion thereof has been repaid. Merchant Seller shall provide the requested Estoppel Certificate within one (1) business day of Purchaser's request. In the event this Purchase Agreement has been modified and/or amended pursuant to the terms of this Purchase Agreement, the Estoppel Certificate shall (or, if there have been modifications, that the same is in full force and effect as modified and/or amended and stating the modifications and/or amendments).



DocuSign Envelope ID: 5AB96FBE-7E3D-478F-BFAF-1D994C01E7FE

Page 8 of 24

**A F F L U A N C E**

**- F U N D I N G -**

e. **Working Capital Funding.** With the exception of agreements between Merchant Seller and Purchaser that may be executed in the future, Merchant Seller shall not enter into any arrangement, agreement, contract, or commitment that in any way encumbers the Receivables, whether in the form of a purchase or sale, loan against, collateralization of, or the sale or purchase of credits against, Receivables or future check sales.

f. **Third Party Negotiators.** Merchant Seller agrees that it shall not to retain any third-party negotiator, consolidator, or credit relief agency with regard to Merchant Seller's obligations under this Purchase Agreement or to attempt to renegotiate or settle Merchant Seller's obligations under this Purchase Agreement. Merchant Seller shall maintain and allow direct communication with Purchaser at all times during the course of this Purchase Agreement and shall not engage any third party to negotiate Merchant Seller's obligations as stated in this Purchase Agreement. Merchant Seller consents to the imposition of the "Third Party Negotiator Fee" set forth in the Fee Schedule upon Merchant Seller's breach of this section. The "Third Party Negotiator Fee" shall be included in and made part of Additional Payments due under this Purchase Agreement.

10. **EVENTS OF DEFAULT.** Any of the following (directly or indirectly) shall constitute an "Event of Default" under this Purchase Agreement.

   a. Merchant Seller taking any action to discourage the use of electronic check processing of payment for Merchant Seller's goods and/or services that are settled through a Processor or permitting any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase or payment of Merchant Seller's goods and/or including, but not limited to, direct deposit of any check into a bank account without scanning into the Purchaser electronic check processor.

   b. Merchant Seller changing its arrangement(s) with any Processor in any way that is adverse to Purchaser.

   c. Merchant Seller changing the Processor though which electronic checks are processed for settling the Receivables or permitting any event to occur that could cause diversion of any of Merchant Seller's check transactions to a new or different Processor other than the Processor being used as of the date of this Purchase Agreement.

   d. Merchant Seller interrupting the operation of its business (other than adverse weather, natural disasters, or acts of God).

   e. Merchant Seller transferring, moving, selling, disposing of, or otherwise conveying its business or assets or any ownership interest in Merchant/Seller without (i) Purchaser's express, prior written consent and (ii) the written agreement of any purchaser or transferee of any of the foregoing to assume all of Merchant Seller's obligations under this Purchase Agreement, which written agreement must be in a form satisfactory to Purchaser.

   f. Merchant Seller taking any action, failing to take any action, or offer any incentive (economic or otherwise), the result of which would be to induce any of Merchant Seller's customer(s) and/or client(s) to pay for Merchant Seller's goods and/or services with checks that are not settled through Processor.

   g. Merchant Seller's failure to comply with or violation of any duty, obligation, or provision contained in this Purchase Agreement.

   h. Merchant Seller's breach of any representation or warranty contained in this Purchase Agreement.

   i. The discovery that any representation or warranty contained in this Purchase Agreement was incorrect, false, or misleading in any material respect at the time the representation or warranty was made.

   j. Merchant Seller admitting in writing its inability to pay its debts or making a general assignment for the benefit of creditors; the institution of any proceeding by or against Merchant Seller seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts.

   k. Merchant Seller sending a notice to Purchaser terminating or attempting to terminate this Purchase Agreement

*~ FUNDING ~*

l.   Merchant Seller transporting, moving, interrupting, suspending, dissolving or terminating its business; transferring or selling all or substantially all of its assets; making or sending notice of any intended bulk sale or transfer.

m.   Merchant Seller's use of multiple depository accounts without Purchaser's prior written consent of Purchaser, changing its depositing account without Purchaser's prior written consent.

n.   Merchant Seller perform any act that reduces the value of any Collateral granted under this Purchase Agreement;

o.   Merchant Seller's breach of default under any of the terms, covenants, and conditions of any other agreement with Purchaser.

11.  **REMEDIES UPON AN EVENT OF DEFAULT.** Upon an Event of Default, Purchaser shall have the right, without limitation, to the following remedies (each a "Protection"), which are cumulative and not exclusive and are in addition to any other rights and/or remedies available to Purchaser at law, in equity, or otherwise pursuant to this Purchase Agreement and/or applicable law and/or in equity. Merchant Seller agrees to pay all costs (including in-house attorney fees) incurred by Purchaser in collecting any Payment or Additional Payments due under this Purchase Agreement and/or in enforcing the provisions of this Purchase Agreement.

a.   **Protection One.** Immediate payment of the full value of the Receivables Purchased Amount, Additional Payments, and any and all other fees due under this Purchase Agreement, less the amount of Receivables delivered and Additional Payments made under this Purchase Agreement.

b.   **Protection Two.** Confess judgment against Merchant Seller and/or any Guarantor pursuant to the Warrant of Attorney to Confess Judgment contained in this Purchase Agreement and/or in any Guaranty and execute upon any such confessed judgment.

c.   **Protection Three.** Enforce its security interest in the Collateral.

d.   **Protection Four.** Immediate refund by Merchant Seller to Purchaser of the entire Purchase Price.

e.   **Protection Five.** Institute a legal proceeding against Merchant Seller and/or Guarantor to enforce Purchaser's rights at law, in equity, or otherwise pursuant to this Purchase Agreement and/or applicable law.

f.   **Protection Six.** Exercise its rights under any Assignment of Lease executed pursuant this Purchase Agreement.

g.   **Protection Seven.** Debit Merchant Seller's deposit accounts (wherever situated) by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant Seller's bank account.

h.   **Protection Eight.** In the event Merchant Seller changes or permits the change of the Processor approved by Purchaser or adds an additional Processor, Purchaser may notify the new or additional Processor of Merchant Seller's sale of the Receivables to Purchaser pursuant to this Purchase Agreement and direct such new or additional Processor to make payments directly to Purchaser of all or any portion of any amount received by such Processor.

i.   **Protection Nine.** Notify any customer, client, account creditor, or other third party that owes or may owe payments to Merchant Seller for Merchant Seller's goods and/or services of Merchant Seller's sale of the Receivables to Purchaser pursuant to this Purchase Agreement and direct such customer, client, account creditor, or other third party to make payments directly to Purchaser of all or any portion of any amount due to Merchant Seller.

12.  **WARRANT OF ATTORNEY TO CONFESS JUDGMENT.**

UPON THE OCCURRENCE OF AN EVENT OF DEFAULT BY MERCHANT SELLER UNDER THIS PURCHASE AGREEMENT, MERCHANT SELLER IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT SELLER FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE UNDER THIS PURCHASE

- FUNDING -

AGREEMENT OR ANY ACCOMPANYING DOCUMENTS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT EQUAL TO TEN PERCENT (10%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEY FEES TO THE EXTENT PERMITTED BY LAW, MERCHANT SELLER: (1) WAIVES THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVES AND RELEASES ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION, OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREINAFTER ENACTED; AND (3) RELEASES ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS PURCHASE AGREEMENT, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF PURCHASER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL MERCHANT PURCHASE AGREEMENT AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS PURCHASER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS PURCHASE AGREEMENT SHALL BE A SUFFICIENT WARRANT THEREFOR. PURCHASER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE AMOUNTS OWING HEREUNDER, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR ALL OR ANY PART OF THE SAME AMOUNTS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST THE MERCHANT SELLER HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON MERCHANT SELLER'S BEHALF FOR ANY REASON, PURCHASER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT SELLER FOR ANY PART OR ALL OF THE AMOUNTS OWED HEREUNDER, AS PROVIDED FOR HEREIN, IF DOING SO WILL CURE ANY ERRORS AND DEFECTS IN SUCH PRIOR PROCEEDINGS.

Merchant Seller's Initials                                        Merchant Seller's Initials

13. **PROTECTION OF INFORMATION.** Merchant Seller and each Owner or Guarantor authorizes Purchaser to disclose information concerning its, his, her credit standing (including, without limitations, credit bureau reports Purchaser obtains) and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner or Guarantor waives to the maximum extent permitted by law any claim for damages against Purchaser and/or Purchaser's officers, directors, agents, attorneys, employees and affiliates relating to: (i) any investigation undertaken by or on behalf of Purchaser permitted by this Purchase Agreement; or (ii) any disclosure of information as permitted by this Purchase Agreement.

14. **CONFIDENTIALITY.** Merchant Seller understands, agrees, and acknowledges that the terms and conditions of the products and services offered by Purchaser, including, without limitation, this Purchase Agreement and any other Purchaser documents (collectively, "Confidential Information"), are proprietary and confidential information of Purchaser. Unless disclosure is required by law or court order, Merchant Seller shall not disclose Confidential Information to any person other than an attorney, accountant, financial advisor, or employee of Merchant who needs to know such information for the purpose of advising Merchant Seller ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant Seller and first agrees in writing to be bound by the terms of this section.

15. **POWER OF ATTORNEY.** Merchant Seller irrevocably appoints Purchaser as its agent and attorney-in-fact with full authority to take any action or to execute any instrument or document to settle all obligations due to Purchaser from any Processor or from Merchant Seller in the event of Merchant Seller's violation of this Purchase Agreement or the occurrence of an Event of Default under this Purchase Agreement, including, without limitation, the right to: (i) obtain and/or adjust insurance; (ii) collect monies due or to become due under or in respect of any of the Collateral (where applicable); (iii) receive, endorse, and/or collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) sign Merchant Seller's name on any invoice, bill of lading, or assignment directing Merchant Seller's customers and/or account debtors to make payments directly to Purchaser; and/or (v) file any claims or take any action or institute any proceeding that Purchaser deems necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral (where applicable) or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

16. **ATTORNEY FEES AND COSTS.** Merchant Seller shall be responsible for and pay to Purchaser all costs Purchaser incurs in enforcing this Purchase Agreement and its rights and remedies under this Purchase Agreement, including attorney fees (for in-



house counsel or outside counsel Purchaser retains to represent it), court costs and/or fees, and costs of collection. Notwithstanding the foregoing, attorney fees and costs to which Purchaser is entitled where judgment is confessed against Merchant Seller shall be governed the section of this Purchase Agreement entitled "Warrant of Confession of Judgment."

17. **INDEMNIFICATION.** Merchant Seller agrees to defend, hold harmless, and indemnify Purchaser and its officers, directors, agents, attorneys, and employees (collectively, "Indemnitee") from and against any and all losses, damages, liabilities, claims, costs, expenses, judgments, and attorney's fees resulting from (i) claims asserted by Purchaser for monies owed by Merchant Seller to Purchaser and/or (ii) actions taken by Processor in reliance upon information or instructions provided by Purchaser. Merchant Seller's obligation to defend, hold harmless, and indemnify as aforesaid shall in no manner be affected by the existence or non-existence of insurance. The rights to indemnity under this Purchase Agreement shall arise notwithstanding that joint or concurrent liability may be imposed on Indemnitee by statute, ordinance, regulation, or otherwise.

18. **NO LIABILITY.** In no event will Purchaser be liable for any claims asserted by Merchant Seller under any legal or equitable theory for lost profits, lost revenues, lost business opportunities, or exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant Seller.

19. **RELIANCE ON TERMS.** Applicable portions of this Purchase Agreement are agreed to for the benefit of Merchant Seller, Purchaser, and Processor, and, notwithstanding the fact that Processor is not a party of this Purchase Agreement, Processor may rely upon the terms of those section and raise them as a defense in any action.

20. **VOLUNTARY EXECUTION.** Each of the Parties states that it has carefully read this Purchase Agreement, knows its contents, freely and voluntarily agrees to all of its terms and conditions, and has freely and voluntarily affixed its signatures hereto with full and complete authority to do so. Each Party acknowledges that the terms of this Purchase Agreement are fully understood and voluntarily accepted by each Party, after having a reasonable opportunity to retain and confer with counsel. This Purchase Agreement is entered into after a full investigation by the each of the Parties, and neither of the Parties is relying upon any statements or representations not embodied in this Purchase Agreement.

21. **BENEFIT; RIGHT OF ASSIGNMENT.** This Purchase Agreement shall be binding upon and inure to the benefit of Merchant Seller, Purchaser and their respective successors and assigns. Notwithstanding the foregoing, Merchant Seller may not assign any of its rights and/or obligations under this Purchase Agreement without the express, written consent of Purchaser, which consent may be given or withheld at the sole discretion of Purchaser. Purchaser may assign, transfer, or sell its rights to receive the Perished Amount and may assign, transfer, sell, and/or delegate its duties under this Purchase Agreement either in whole or in part.

22. **SURVIVAL OF REPRESENTATIONS.** All agreements, representations, warranties, terms, conditions, and covenants set forth in this Purchase Agreement shall survive the execution and delivery of this Purchase Agreement and the consummation of the transactions provided for herein and shall continue in full force until all obligations under this Purchase Agreement shall have been satisfied in full and this Purchase Agreement shall have terminated.

23. **INTEGRATION AND MODIFICATIONS.** This Purchase Agreement constitutes the entire integrated agreement of the Parties with respect to the subject matter contained in this Agreement. This Purchase Agreement cannot be modified except by a writing signed by the Party to be bound. The Parties can be contacted at the following respective addresses set forth in this Purchase Agreement for purposes of this Purchase Agreement unless a Party provides the other Party with a different address in writing in the event the address for such Party contained herein changes.

24. **NOTICES.** All notices, requests, consent, demands and other communications hereunder shall be delivered to the addresses for each Party set forth in this Purchase Agreement.

25. **NO WAIVER OF REMEDIES.** No failure on the part of Purchaser to exercise, and no delay in exercising, any right under this Purchase Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Purchase Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

20 N 3ʳᵈ Street, Philadelphia, PA 19106
Office: 215-922-2636 | Fax: 888-305-7562

*Please Initial*



Case ID: 190501349

# FIRST RELIANCE

## - FUNDING -

26. **CHOICE OF LAW: JURISDICTION: VENUE.** This Purchase Agreement shall be construed under the laws of the Commonwealth of Pennsylvania, which laws shall control in the event of any conflict of law. With the exception of Purchaser's right to seek injunctive relief in any appropriate jurisdiction, Any suit, action or proceeding arising hereunder, or the interpretation, performance, or breach hereof, or otherwise alleging claims related to or arising out of the Parties' business relationship shall be instituted in the Philadelphia County Court of Common Pleas, in the Federal District Court for the Eastern District of Pennsylvania, or in the Philadelphia County Municipal Court (collectively, the "Acceptable Forums"). Merchant Seller agrees that each of the Acceptable Forums is convenient to it, submits to the jurisdiction of any of the Acceptable Forums, and waives any and all objections to jurisdiction or venue in any of the Acceptable Forums. Should such proceeding be initiated in any other forum, Merchant Seller waives any right to oppose any motion or application made by Purchaser to transfer such proceeding to an Acceptable Forum. The parties each agree to (a) waive the right to punitive damages and (b) waive the right to trial by jury in any lawsuit brought pursuant to this paragraph.

27. **SEVERABILITY.** If any material provision or restriction contained in this Purchase Agreement shall be declared void or unenforceable under applicable law, the parties agree that such provision or restriction will be stricken, and this Purchase Agreement will continue in full force and effect.

28. **HEADINGS.** The headings in this Purchase Agreement are for convenience of reference only, are not deemed to constitute part of this Purchase Agreement and shall not limit or otherwise affect the construction of this Purchase Agreement. All references to the singular shall also include the plural, and references to the plural shall include the singular.

29. **EXECUTION IN COUNTERPARTS; ORIGINALS.** This Purchase Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and all of which together shall be deemed one and the same instrument. Facsimile and email signatures shall be deemed to be originals for all purposes.

30. **JURY TRIAL WAIVER.** THE PARTIES WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION, OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS PURCHASE AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF OR OTHERWISE ALLEGING CLAIMS RELATED TO OR ARISING OUT OF THE PARTIES' BUSINESS RELATIONSHIP. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY, VOLUNTARILY, AND WITHOUT DURESS AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

31. **CLASS ACTION WAIVER.** THE HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS BEING AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEY FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS PURCHASE AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

32. **NO PRESUMPTION AGAINST DRAFTER.** Merchant Seller hereby waives any rule of construction law that requires that ambiguities be construed against the drafter of this Purchase Agreement.

| FOR THE SELLER/MERCHANT   (PRINT NAME/TITLE) | | SIGNATURE |
|---|---|---|
| KARA DIPIETRO | DocuSigned by: *Kara DiPietro* F242 0665452BB4EF... | |
| FOR THE SELLER/MERCHANT   (PRINT NAME/TITLE) | | SIGNATURE |
| KARA DIPIETRO | DocuSigned by: *Kara DiPietro* F242 0665452BB4EF... | |

20 N 3rd Street, Philadelphia, PA 19106
Office: 215-922-2636 | Fax: 888-305-7562

_Please Initial_       Case ID: 190501349

DocuSign Envelope ID: 3ABDXF6E-7E3D-476F-BFAF-1D994C01E7FE

## FAST ADVANCE FUNDING -

### FAST ADVANCE FUNDING, INC.

_Company Officer_

## SECURITY AGREEMENT

**Security Interest.** To secure Merchant Seller's performance obligations to Purchaser under the Agreement for the Purchase and Sale of Future Receivables (the "Purchase Agreement", Merchant Seller hereby grants to Purchaser a security interest in: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, royalties, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant Seller; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral").

**Cross-Collateral.** To secure Merchant's payment and performance obligations to Purchaser under this Security Agreement (the "Security Agreement"), Merchant hereby grants Purchaser a security interest in any and all personal property in any form now or hereafter owned by Merchant-Seller as is or may be more fully described in any UCC filing made in connection with or relating to any agreement(s) between the Purchaser and Merchant-Seller relating to the purchase of future receivables (the "Additional Collateral"). Merchant understands that Purchaser will have a security interest in the aforesaid Additional Collateral upon execution of this Security Agreement.

Merchant Seller acknowledges and agrees that any security interest granted to Purchaser under any other agreement between Merchant Seller and Purchaser (the "Cross-Collateral") will secure the obligations hereunder and under the Purchase Agreement.

Merchant Seller agrees to execute any documents or take any action in connection with this Security Agreement that Purchaser deems necessary to perfect or maintain Purchaser's security interest in the Collateral, the Additional Collateral, and/or the Cross-Collateral, including, without limitation, the execution of any account control agreements. Merchant Seller hereby authorizes Purchaser to file any financing statement(s) deemed necessary to perfect or maintain Purchaser's security interest, which financing statement(s) may contain notification that merchant Seller has granted a negative pledge to Purchaser with respect to the Collateral, the Additional Collateral and/or the Cross-Collateral and that any subsequent lien or may be tortuously interfering with Purchaser's rights. Merchant Seller shall be liable for and Purchaser may charge and collect all costs and expenses, including, but not limited to, attorney fees, that Purchaser may incur in protecting, preserving, and/or enforcing Purchaser's security interest and rights.

**Negative Pledge.** Merchant Seller agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral and/or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** Purchaser shall have the right to cure Merchant Seller's default in the payment of rent on the following terms. In the event Merchant Seller is served with papers in an action against Merchant Seller for nonpayment of rent or for summary eviction, Purchaser may execute its rights and remedies under the Assignment of Lease. Merchant Seller also agrees that Purchaser may enter into an agreement with Merchant Seller's landlord giving Purchaser the right: (a) to enter Merchant Seller's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant Seller's lease to another qualified Merchant Seller capable of operating a business comparable to Merchant Seller's at such premises.

**Remedies.** Upon any Event of Default under the Purchase Agreement, Purchaser may pursue any remedy available at law (including those available under the provisions of the UCC) or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

| FOR THE SELLER/MERCHANT    (PRINT NAME/TITLE) | Docusigned by:    SIGNATURE | |
|---|---|---|
| KARA DIPIETRO | _kara DiPietro_ | |

| FOR THE SELLER/MERCHANT    (PRINT NAME/TITLE) | Docusigned by:    SIGNATURE | |
|---|---|---|
| KARA DIPIETRO | _kara DiPietro_ | |

20 N 3RD Street, Philadelphia, PA 19106
Office: 215-922-2636 | Fax: 888-305-7562

_Please Initial_

Case ID: 190801349



## ACKNOWLEDGEMENT OF RIGHT TO CONFESS JUDGMENT

AFFIANT(S):    KARA DIPIETRO, individually and on behalf of the Merchant

OBLIGEE:    Fast Advance Funding, Inc.

The undersigned has(have) executed, and/or is executing, one or more of the following instruments under which the Merchant is obligated to deliver Receivables (in the form of monetary payments) to Obligee and under which Affiant(s) has(have) agreed to personally guaranty Merchant's obligations to Obligee:

           i           Agreement for the Purchase and Sale of Future Receivables dated MAY 3, 2019, including, without limitations, Affiant's (or Affiants') Personal Guaranty(ies); and

A.    AFFIANT(S) ACKNOWLEDGE(S) AND AGREE(S) THAT THE ABOVE DOCUMENT(S) CONTAIN(S) PROVISIONS UNDER WHICH OBLIGEE MAY CONFESS JUDGMENT AGAINST THE MERCHANT AND AGAINST AFFIANT(S), AS GUARANTOR(S).  BEING FULLY AWARE OF THE MERCHANT'S AND AFFIANT'S (AFFIANTS') RIGHTS TO PRIOR NOTICE AND A HEARING ON THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT MAY BE ASSERTED AGAINST THE MERCHANT AND/OR AGAINST AFFIANT(S) BY OBLIGEE THEREUNDER BEFORE JUDGMENT IS ENTERED, THE UNDERSIGNED HEREBY FREELY, KNOWINGLY, AND INTELLIGENTLY WAIVE(S) THESE RIGHTS AND EXPRESSLY AGREE(S) AND CONSENT(S) TO OBLIGEE'S ENTERING JUDGMENT AGAINST THE MERCHANT AND/OR AGAINST AFFIANT(S) BY CONFESSION PURSUANT TO THE TERMS THEREOF.

B.    AFFIANT(S) ALSO ACKNOWLEDGE(S) AND AGREE(S) THAT THE ABOVE DOCUMENT(S) CONTAIN(S) PROVISIONS UNDER WHICH OBLIGEE MAY, AFTER ENTRY OF JUDGMENT, FORECLOSE UPON, ATTACH, LEVY, OR OTHERWISE SEIZE PROPERTY OR PROCEED AGAINST THE INTERESTS OF THE MERCHANT AND OF AFFIANT(S), IN PROPERTY (REAL OR PERSONAL) IN FULL OR PARTIAL PAYMENT OR SATISFACTION OF THE JUDGMENT OR JUDGMENTS AS PERMITTED BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA OR OTHER APPLICABLE JURISDICTION.

C.    Affiant(s) hereby certify(ies) that the financial accommodations being provided by the Obligee are for a commercial transaction and not for personal, family, or household use, not in connection with a consumer credit transaction, and not part of a retail sales agreement or contract.

D.    Affiant(s) acknowledge(s) that attached to this Acknowledgement of Right to Confess Judgment is a Praecipe to Enter Confession of Judgment and Assessment of Damages, the form of which Obligee may use in connection with confessing judgment against Merchant and/or Affiant(s) pursuant to the terms of the Purchase Agreement.  Obligee may use the attached form or any form permitted or required (along with other documents permitted or required) by applicable law.

E.    The statements made in this Acknowledgement of Right to Confess Judgment are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

| | |
|---|---|
| INDIVIDUALLY KARA DIPIETRO | *Kara DiPietro*  SIGNATURE |
| FOR MERCHANT SELLER KARA DIPIETRO | *Kara DiPietro*  SIGNATURE |

*Please Initial*

Doc ID: 190501349

DocuSign Envelope ID: 3AB90F0E-7E3D-470F-BFAF-1D504C01E7FE          Page 15 of 24

# FAST ADVANCE
## – FUNDING –

Fast Advance Funding, Inc.
20 N. 3rd Street
Philadelphia, PA 19106
(215) 922-2636

Attorneys for Plaintiff

| | |
|---|---|
| FAST ADVANCE FUNDING, INC. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiff, | CIVIL ACTION |
| v. | No.: |
| HMC INCORPORATED, and | |
| KARA DIPIETRO, GUARANTOR, | |
| Defendant. | |

### PRAECIPE TO ENTER CONFESSION OF JUDGMENT AND ASSESSMENT OF DAMAGES

TO THE CLERK, OFFICE OF JUDICIAL RECORDS:

Please enter judgment in favor of Plaintiff Fast Advance Funding, Inc and against Defendant HMC INCORPORATED and Defendant KARA DIPIETRO, Guarantor, in the amount of $356,472.50 less timely payments plus attorney fees, costs, expenses, and interest allowed under the Agreement for the Purchase and Sale of Future Receivables.

Date: _____          By: _____
                              Attorneys for Plaintiff

Assessment of Damages:

| | |
|---|---|
| Undelivered Receivables | $356,472.50 less timely payments made |
| Fees, Costs, Expenses | Calculated per the Agreement |
| Interest (at the rate of 6% per annum from date of default through date of filing, and continuing) | 6% per annum |
| Attorney Fees (5% of Unpaid Receivables) | To be determined |
| TOTAL | TO BE DETERMINED AT TIME OF FILING FOLLOWING DEFAULT |

Date: _____          By: _____
                              Attorneys for Plaintiff

I hereby assess damages:

_____



- FUNDING -

Clerk, Officer of Judicial Records
Lara DiPietro
ACKNOWLEDGED

## GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to Purchaser, Merchant Seller's performance of all of the representations, and warranties made by Merchant Seller in the Agreement for the Purchase and Sale of Future Receivables (the "Purchase Agreement"), as may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation or warranty, or covenant made by Merchant in this Guaranty and the Purchase Agreement.

**Guarantor Waivers.** In the event Merchant Seller violates its representations and warranties under or breaches the Purchase Agreement, Purchaser may enforce its rights under this Guaranty without first seeking to obtain payment from Merchant Seller, any/or other guarantor, or any Collateral, Additional Collateral, and/or Cross-Collateral Purchaser may hold pursuant to this Guaranty or any other guaranty.

Purchaser does not have to notify Guarantor of any of the following events, and Guarantor will not be released from its obligations under this Guaranty if he, she, or it is not notified of: (i) Merchant Seller's violation of the representations and warranties of the Purchase Agreement or any renewal, extension or other modification of the Purchase Agreement. In addition, Purchaser may take any of the following actions without releasing Guarantor from any of his, her, or its obligations under this Guaranty: (i) renew, extend, or otherwise modify the Purchase Agreement or Merchant Seller's other obligations to Purchaser; (ii) release Merchant Seller from its obligations to Purchaser; (iii) sell, release, impair, waive, or otherwise execute upon any collateral securing the Guaranteed Obligations; and/or (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Guaranty. Until all obligations are fulfilled under the Purchase Agreement and Merchant Seller's other obligations to Purchaser under the Purchase Agreement and this Guaranty are paid in full, Guarantor shall not seek reimbursement from Merchant Seller or any other guarantor for any amounts paid by it under this Guaranty. Guarantor permanently waives and shall not seek to exercise any of the following rights that he, she, or it may have against Merchant Seller, any other guarantor, or any collateral provided by Merchant Seller or any other guarantor, for any amounts paid by it, or acts performed by it, under this Guaranty: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event Purchaser must return any amount paid by Merchant Seller or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Guaranty shall include that amount.

**GUARANTOR ACKNOWLEDGEMENT.** Guarantor acknowledges that: (i) He/She/It understands the seriousness of the provisions of this Guaranty; (ii) He/She/It has had a full opportunity to consult with counsel of his/her/its choice; and (iii) He/She/It has consulted with counsel of his/her/its choice or has decided not to avail himself/herself/it of that opportunity.

**JOINT AND SEVERAL LIABILITY.** The obligations hereunder of the persons or entities constituting Guarantor under this Guaranty are joint and several.

## WARRANT OF ATTORNEY TO CONFESS JUDGMENT

UPON THE OCCURRENCE OF AN EVENT OF DEFAULT BY GUARANTOR UNDER THIS GUARANTY, GUARANTOR IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE UNDER THIS GUARANTY OR ANY ACCOMPANYING DOCUMENTS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT EQUAL TO TEN PERCENT (10%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEY FEES TO THE EXTENT PERMITTED BY LAW, GUARANTOR: (I) WAIVES THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVES AND RELEASES ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION, OR APPEAL LAWS OF ANY STATE

DocuSign Envelope ID: 5A9B8F6E-7E3D-476F-BFAF-1D99AC01E7FE

FIRST FUND *SQUANCE*

- FUNDING -

NOW IN FORCE OR HEREINAFTER ENACTED; AND (3) RELEASES ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS GUARANTY, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF PURCHASER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL GUARANTY AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS PURCHASER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS GUARANTY SHALL BE A SUFFICIENT WARRANT THEREFOR. PURCHASER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE AMOUNTS OWING HEREUNDER, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR ALL OR ANY PART OF THE SAME AMOUNTS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST GUARANTOR HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON GUARANTOR'S BEHALF FOR ANY REASON, PURCHASER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST GUARANTOR FOR ANY PART OR ALL OF THE AMOUNTS OWED HEREUNDER, AS PROVIDED FOR HEREIN, IF DOING SO WILL CURE ANY ERRORS AND DEFECTS IN SUCH PRIOR PROCEEDINGS

Guarantor's Initials: _____          Guarantor's Initials: _____

Guarantor agrees and acknowledges that he/she/it has and had a relationship with Purchaser at its offices in Pennsylvania and that, with the exception of Purchaser's right to seek injunctive relief in any appropriate jurisdiction, any action by or against Purchaser arising out of or relating to this Guaranty or its business relationship with Guarantor shall be commenced and concluded in the Commonwealth of Pennsylvania under the venue and jurisdiction provisions of the Purchase Agreement.

If Guarantor is an entity, the individual executing this Guaranty on behalf of such entity guarantor represents and warrants that her or she has full authority to execute this Guaranty and to bind the entity on whose behalf he or she is executing this Guaranty.

| GUARANTOR | | SIGNATURE | |
|---|---|---|---|
| KARA DIPIETRO | Kara DiPietro | | |
| | E237492949264007... | | |
| GUARANTOR | | SIGNATURE | |
| KARA DIPIETRO | Kara DiPietro | | |
| | E737492949264007... | | |



## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) ("Authorization Agreement") is part of (and incorporated by reference into) the Agreement for the Purchase and Sale of Future Receivables ("Purchase Agreement"). You should keep this important legal document for your records.

DISBURSEMENT OF BUSINESS CASH ADVANCE PROCEEDS: By signing below, Seller/Merchant authorizes Purchaser to disburse the Cash Advance Proceeds less the amount of any applicable fees upon approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Merchant Seller later identifies and is acceptable to Purchaser) (the "Designated Checking Account") in the disbursal amount set forth in the accompanying documents. This authorization is to remain in full force and effect until Purchaser has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford Purchaser and Merchant Seller's depository bank a reasonable opportunity to act on it.

AUTOMATIC PAYMENT PLAN: Enrollment in Purchaser's Automatic Payment Plan is required for approval. By signing below, Merchant Seller agrees to enroll in the Automatic Payment Plan and authorizes Purchaser to collect payments required under the terms of Purchase Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the payment schedule set forth in the Purchase Agreement. Merchant Seller authorizes Purchaser to increase the amount of any scheduled ACH debit entry or asses multiple ACH debits for the amount of any previously scheduled payment(s) that was(were) not paid as provided in the payment schedule and any unpaid Fees. This authorization is to remain in full force and effect until Purchaser has received written notification from Merchant of its termination in such time and in such manner as to afford Purchaser and Merchant Seller's depository bank a reasonable opportunity to act on it. Purchaser may suspend or terminate Merchant Seller's enrollment in the Automatic Payment Plan immediately if Merchant Seller fails to keep Merchant Seller's designated checking account in good standing or if there are insufficient funds in Merchant Seller's checking account to process any payment.

If Merchant Seller revokes the authorization or if Purchaser suspends or terminates Merchant Seller's enrollment in the Automatic Payment Plan, Merchant Seller still will be responsible for making timely payments pursuant to the alternative payment methods described in the Purchase Agreement.

BUSINESS PURPOSE ACCOUNT: By signing below, Merchant Seller attests that the Designated Checking Account was established and is maintained for business purposes and not primarily for personal, family, or household purposes.

ACCOUNT CHANGES: Merchant Seller agrees promptly to notify Purchaser if there are any changes to the account and/or routing numbers of the Designated Checking Account.

MISCELLANEOUS: Purchaser is not responsible for any fees charged by Merchant Seller's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH transactions to Merchant's account must comply with the provisions of U.S. law.

| Signature/Date | *tara DiPietro* | Date | 5/3/2019 |
|---|---|---|---|
| Bank Name | ON FILE | | |
| City/State/Zip | | | |
| Routing Number | ON FILE | | |
| Account Number | ON FILE | | |
| Business Name on Account | ON FILE | | |
| Address on Account | | | |
| Seller/Merchant Phone # | | | |
| Tax ID Number | | | |
| Email | | | |

20 N 3rd Street, Philadelphia, PA 19106
Office: 215-922-2636 | Fax: 888-305-7562

Case ID: 190501349

*Please initial*

DocuSign Envelope ID: 9A9B6FAE-7E3D-470F-BFAF-1D994C01E7FE

**NMS FINANCE ADVANCE**
– F U N D I N G –

Page 19 of 24

## BANK ACCOUNT DISCLOSURE AFFIDAVIT

For the purpose of obtaining the Business Cash Advance (the "Business Cash Advance") evidence by the Agreement for the Purchase and Sale of Future Receivables of this same date, the undersigned Merchant Seller makes the following statement under penalty of law:

### PLEASE SIGN OPTION ONE OR TWO

OPTION 1 – DISCLOSURE AND AUTHORIZATION FOR ADDITIONAL ACCOUNTS:

The Seller/Merchant hereby declares that in addition to the designated for ACH debit, the Seller/Merchant also has the following additional account(s) which he authorizes us to use in the event we are unable to debit from the designated account:

| | |
|---|---|
| Bank Name | |
| Name on Account | |
| Account Number | |
| Routing Number | |
| Fed ID number associated with this account | |
| Name associated with this account | |
| Phone number of person whose name is associated with this account | |
| | |
| Bank Name | |
| Name on Account | |
| Account Number | |
| Routing Number | |
| Fed ID number associated with this account | |
| Name associated with this account | |
| Phone number of person whose name is associated with this account | |
| | |
| Bank Name | |
| Name on Account | |
| Account Number | |
| Routing Number | |
| Fed ID number associated with this account | |
| Name associated with this account | |
| Phone number of person whose name is associated with this account | |
| | |
| Bank Name | |
| Name on Account | |
| Account Number | |
| Routing Number | |
| Fed ID number associated with this account | |
| Name associated with this account | |
| Phone number of person whose name is associated with this account | |

**attach additional pages if necessary thereby:

| Sara DiPietro | 5/3/2019 |
|---|---|
| Signature | Date |
| Sara DiPietro | 5/3/2019 |
| Signature | Date |

OPTION 2 - By signing below, the merchant swears, under penalty of law, that he has no accounts in any lending institution in addition to the one provided for ACH debit

| | |
|---|---|
| Signature | Date |
| Signature | Date |

20 N 3rd Street, Philadelphia, PA 19106
Office: 215-922-2636 | Fax: 888-305-7562

Case ID: 190501349



Please Initial



Page 20 of 24

- F U N D I N G -

### TRADE REFERENCES

Please provide a list of 3-5 professional references

| Name | |
|---|---|
| Phone Number | |
| Email Address | |

| Name | |
|---|---|
| Phone Number | |
| Email Address | |

| Name | |
|---|---|
| Phone Number | |
| Email Address | |

| Name | |
|---|---|
| Phone Number | |
| Email Address | |

| Name | |
|---|---|
| Phone Number | |
| Email Address | |





### – F U N D I N G –

## AUTHORIZATION TO RESUME ACH DEBITING FORM

| NAME OF SELLER/MERCHANT: | |
|---|---|

INFORMATION *(To be filled out by the customer)*

*I authorize Company (as shown above) to resume electronically debiting my bank account as detailed below, including a non-sufficient fund fee if applicable, until the debt to the company is paid in full.*

Full Name on Account: _____

Account #: _____          Routing #: _____

Account Type (select one):    Checking          Savings          ☐

Account Class (select one):   Consumer Account   ☐    Business Account   ☐

Payment amount: _____          Number of Payments: _____

Date of next payment: _____     Frequency of payments: _____

*I understand that I may cancel this authorization by contacting the company at least five (5) business days prior to the payment due date. I further understand that canceling my ACH authorizations does not relieve me of the responsibility of paying my account in full, and that if I cancel or revoke this authorization before the debt is paid in full, the Company may take additional actions including legal actions to secure the debt.*

| NAME OF BANK: | | DATE: | 5/3/2019 |
|---|---|---|---|
| CUSTOMER PRINTED NAME: | *Tara DiPietro* | | |
| CUSTOMER CONTACT TELEPHONE # | | | |


Case ID: 190501349

Please Initial _____

DocuSign Envelope ID: 6FE66BFF-9947-4BC2-992D-C3F0261A0179

**CBSG**
FINANCIAL SERVICES
& FUNDING GROUP

22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

On the_____day of_____, in the year 2018, before me, the undersigned Notary Public in and for said state, personally appeared KARA DIPIETRO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

Merchant Initials ____          Merchant Initials ____

Case ID: 190501349



- F U N D I N G -

Dear Client:

Thank you for accepting this offer from Fast Advance Funding, Inc. We look forward to being your factoring partner for as long as you need.

Daily ACH Program:

Fast Advance Funding will require viewing access to your bank account prior to funding as part of our underwriting process, as well as during the time you have a balance with our company.

Please be assured that we carefully safeguard your confidential information and only essential personnel will have access to it.

Please fill out the form below with the information necessary to access your account.

**Be sure to indicate capital or lower-case letters.*

| NAME OF BANK: |
|---|
| TD |
| BANK PORTAL WEBSITE: |
| |
| USERNAME: |
| ON FILE |
| PASSWORD: |
| ON FILE |
| SECURITY QUESTION/ANSWER 1 |
| |
| SECURITY QUESTION/ANSWER 2 |
| |
| SECURITY QUESTION/ANSWER 3 |
| |
| ANY OTHER INFORMATION NECESSARY TO ACCESS YOUR ACCOUNTS: |
| |



Case ID: 190501349

Please Initial

DocuSign Envelope ID: 3A0B0F8E-7E3D-476F-BFAF-10904C01E7EE



Page 23 of 24

- F U N D I N G -

### SCHEDULE A: FEE STRUCTURE

1.  Origination Fee: $2,995.00 to cover underwriting and related expenses

2.  ACH Program Fee – WAIVED – The ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs;

3.  NSF Fee - $75.00 (each) - Up to FOUR TIMES ONLY before a default is declared;

4.  Rejected ACH - $100.00 – If a merchant directs the bank to reject our debit ACH;

5.  Bank Change Fee - $50.00 – If a merchant requires a change of account to be debited requiring us to adjust our system;

6.  Blocked Account - $250.00 – If a merchant blocks FAF's ACH debit of the Account, bounces more than 4 debits of the Account or simultaneously uses multiple bank accounts or credit-card processors to process its receipts;

7.  Default Fee - $500.00 default fee – If a merchant changes bank accounts or switches to another credit card processor without FAF's consent, or commits another default pursuant to the Purchase Agreement;

8.  Collections Expense – In the event of default, Merchant Seller shall be responsible for all reasonable costs of collections, including, but not limited to, counsel fees, filing fees and any other fees which may be incurred.

9.  Miscellaneous Service Fees – Merchant Seller shall pay certain fees for services related to the origination and maintenance of accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be WAIVED for a Fed Wire. The current charge for the underwriting, UCC, ACH Program and origination of each Merchant will be paid from the funded amount. Merchant will be charged $100.00 for every additional change of their operating bank account once they are active with FAF. Additional copies of prior monthly statements will incur a fee of $10.00 each.

10  Risk Assessment Fee - WAIVED

11  UCC Fee – WAIVED

| NAME: | MERCHANT SIGNATURE: | |
|---|---|---|
| KARA DIPIETRO | *Kara DiPietro* | |
| NAME: | MERCHANT SIGNATURE: | |
| KARA DIPIETRO | *Kara DiPietro* | |

HMC INCORPORATED and KARA DIPIETRO

20 N 3rd Street, Philadelphia, PA 19106
Office: 215-922-2636 | Fax: 888-305-7562



Please Initial   Case ID: 190501349

DocuSign Envelope ID: 3A6B6F8E-7E3D-470F-BFAF-1D904C01E7FE

77190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046

MAY 3, 2019

<u>NOTICE OF SALE, ASSIGNMENT, and TRANSFER</u>

Dear Account Debtor of HMC INCORPORATED:

This letter is to notify you that on MAY 3, 2019, HMC INCORPORATED entered into an Agreement for the Purchase and Sale of Future Receivables (the "Purchase Agreement") with Fast Advance Funding ("FAF"). Under the terms of the Purchase Agreement, HMC INCORPORATED sold, assigned, and transferred to FAF all of HMC INCORPORATED's right, title, and interest in and to HMC INCORPORATED's future receipts, accounts, and contract rights arising from or relating to the payment of monies payable from you to HMC INCORPORATED (collectively, the "Receivables"). As such, FAF is the absolute owner of the Receivables, and HMC INCORPORATED no longer has any right, title, or interest in or to the Receivables.

FAF's is the absolute owner of the Receivables regardless of any Uniform Commercial Code financing statement that may have been filed by FAF or any other entity with respect to the Receivables.

FAF may provide you with a copy of this signed letter as proof of HMC INCORPORATED's sale, assignment, and transfer of the Receivables to FAF and of FAF's absolute ownership of the Receivables. Upon your receipt of a copy of this letter from FAF, you are authorized to deliver to FAF Receivables due from you to HMC INCORPORATED (absent the sale, assignment, and transfer made under the Purchase Agreement) in the amount indicated by FAF.

The undersigned represents that he/she is authorized to sign this letter on behalf of HMC INCORPORATED and to bind HMC INCORPORATED.

Very truly yours,

*Kara DiPietro*

By: KARA DIPIETRO

_____

Printed Name

_____

Title

cc:    Fast Advance Funding.

Please Initial___          Please Initial___

Case ID: 190501349



Filed and Attested by the
Office of Judicial Records
14 MAY 2019 11:36 am
A. SILIGRINI

# EXHIBIT "C"

DocuSign Envelope ID: F36A3AAC-468F-44C1-8004-B197B05BBA53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-7036        Fax: 888-503-4886

## ACKNOWLEDGEMENT

I, KARA DIPIETRO, hereby acknowledge:

> There has been no promise of additional capital in 30 days from funding by CBSG or any ISO (broker).
>> Our policy is that merchants can seek additional capital from us when they have paid 55% of the Receipts Purchased Amount.
> That CBSG does not permit outside fees and that no one has discussed additional fees with me. The fee amount for this agreement is STO BE DETERMINED, which will be held back from the funding amount.
> There has not been and will not any contact from Third Party debt companies regarding this Factoring Agreement dated FEBRUARY 27, 2019.

I, the undersigned, acknowledge that I am in agreement with these items, which are also described in detail within the pages of this document.

Kara DiPietro _____     2/27/2019
Signature                                              Date

I, KARA DIPIETRO, hereby acknowledge:

> Additional Funding/"Stacking" Fee: 15% of Advance Amount – If the MERCHANT/GUARANTOR takes additional funding at any point after being funded by CBSG, without prior notice to and consent by CBSG, a fee amounting to 15% of the amount of the advance shall automatically be added to the payback amount of the advance. CBSG reserves the right to declare the account in default, at any point after learning such "stacking" has occurred; regardless of the payments made by the MERCHANT/GUARANTOR, with the filing of the Confession of Judgement in a court of competent jurisdiction.

I, the undersigned, acknowledge that I am in agreement with these items, which are also described in detail within the pages of this document.

Kara DiPietro _____     2/27/2019
Signature                                              Date

EMAIL ADDRESS: k.dipietro@hmrincorporated.com

PRIMARY PHONE NUMBER: 410-340-1523

SECONDARY PHONE NUMBER: 410-300-0729

Page | 1                Merchant Initials _____    Merchant Initials _____    Case ID: 190501349

DocuSign Envelope ID: E36A0AAC-498F-44C1-8804-B187B05BBA60



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-803-4886

## FACTORING AGREEMENT

Dated the 27TH day of FEBRUARY, 2019 by and between Complete Business Solutions Group, Inc. ("CBSG" and/or "PURCHASER") and the "SELLER/MERCHANT" listed below (as "Seller/Merchant" or "the Merchant")
Business Legal Name: HMC INCORPORATED
DBA: HMC INCORPORATED
Type of entity (check one) [X] Corporation  [] LLC  [] Limited Partnership  [] Limited Liability Partnership  [] Sole Proprietor
Physical Address: 77190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Mailing Address: 77190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Fed ID#: 52-2005467

### PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights, and obligations due to Seller/Merchant that arise from or relate to the payment of monies to Seller/Merchant from Seller/Merchant's customers and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of Inventory payment in the ordinary course of Seller/Merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.

THIS IS A FACTORING AGREEMENT WITH RECOURSE.
The Purchased Amount shall be paid to CBSG by Seller/Merchant's irrevocably authorizing only one depositing account acceptable to CBSG (the "Account") to remit the Daily Specified Amount from the Seller/Merchant's receipts until such time as CBSG receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Seller/Merchant hereby authorizes CBSG to ACH debit the "Specified Daily Amount" from the merchant's bank account, as an approximation of the base payment due under the Specified Percentage. It is the Seller/Merchant's responsibility to provide bank statements for any and all bank accounts by the Merchant to reconcile the daily payments made against the Daily Specified Amount. Failure to provide all of their bank statements in a timely manner or missing a month shall forfeit all rights to future reconciliations. CBSG may, upon Seller/Merchant's request, adjust the amount of any payment due under this Agreement at CBSG's sole discretion and as it deems appropriate in servicing this Agreement. Seller/Merchant warrants that it will cause that funds adequate to cover the amount to be debited by CBSG remains in the account. Seller/Merchant will be held responsible for any fees incurred by CBSG resulting from a rejected ACH attempt or an event of default. (See Appendix A). CBSG is not responsible for any overdrafts or rejected transactions in the Seller/Merchant account which may result from CBSG's scheduled ACH debit under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between CBSG and Seller/Merchant, upon the violation of any provision contained in Sections 1 and 11 of the FACTORING AGREEMENT, shall be deemed a breach of the representations and warranties contained herein . A list of all fees applicable under this FACTORING AGREEMENT is contained in Appendix A

Purchase Price: $1,350,000.00 Specified Percentage: 10% Daily Specified Amount (begins at) $4,583.00 per day, and increases based on percentage of future Receipts Purchased Amount: $1,620,000.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGES 2 THROUGH 12 HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS FACTORING AGREEMENT.

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER              X [Kara DiPietro]
Name and Title                                (Seller/Merchant Signature)

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER              X [Kara DiPietro]
Name and Title                                (Seller/Merchant Signature)

COMPLETE BUSINESS SOLUTIONS GROUP, INC.

By _____
        Company Officer

To the extent set forth herein, each of the parties is obligated upon his/ her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each individual executing this Agreement represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to honor the terms of this obligation and that the information provided herein and to all of CBSG documents  forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements and the representations and warranties contained herein between Merchant and CBSG and CBSG shall be entitled to all remedies available under law  Merchant and each of the above-signed Officers/ Owners authorizes CBSG, its agents and representatives and any credit reporting agency engaged by CBSG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and Owner(s) continue to have any obligation owed to CBSG.

ANY MISREPRESENTATION MADE BY SELLER/MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION

Page | 2                      Merchant Initials _____   Merchant Initials _____      Case ID: 190501349

DocuSign Envelope ID: E08A3AAC-488F-44C1-8804-B1B7B05BBA53

**CBSG**

20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-403-4886

### FACTORING AGREEMENT TERMS AND CONDITIONS

**1. GENERAL TERMS OF AGREEMENT (MUTUAL REPRESENTATIONS AND WARRANTIES)**

**1.1 Electronic Fund Transfer.** Upon request from PURCHASER ("hereinafter CBSG or Purchaser") Seller/Merchant ("hereinafter Merchant") shall execute such forms or agreements acceptable to PURCHASER, with Bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER, and/or its authorized agent with all the information, authorizations and passwords necessary for verifying Merchant's receivable, receipts and deposits into the account Merchant shall authorize PURCHASER and/or it's agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the SPECIFIED DAILY AMOUNT by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER.

**1.2 Deposit Agreement.** Seller/Merchant shall execute an agreement (the "Deposit Agreement") acceptable to PURCHASER, with a Bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER and/or its authorized agent with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts and deposits into the account. Merchant shall authorize PURCHASER and/or it's agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the specified percentage by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER.

**1.3 Term of Agreement.** This Agreement shall have a term as set forth above. Upon the expiration of the term, this Agreement shall automatically renew for successive similar terms, provided, however, that during the renewal term(s) Merchant may terminate this Agreement upon ninety days' prior written notice [effective upon receipt] to PURCHASER. The termination of this Agreement shall not affect Merchant's responsibility to satisfy all outstanding obligations to PURCHASER at the time of termination.

**1.4 Future Purchases.** PURCHASER reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

**1.5 Financial Condition.** Merchant authorizes PURCHASER and its agents to investigate their financial responsibility and history, and will provide to PURCHASER any bank or financial statements, tax returns, etc., as PURCHASER deems necessary, prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. PURCHASER is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.6 Transactional History.** Merchant authorizes their bank to provide PURCHASER with Merchant's banking or processing history to determine qualification or continuation in this program.

**1.7 Indemnification.** Merchant jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from any claims asserted by PURCHASER for monies owed to PURCHASER from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by PURCHASER.

**1.8 No Liability.** In no event will CBSG be liable for any damages accrued by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant.

**1.9 Reliance on Terms.** Section 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, PURCHASER and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.10 Sale of Receipts.** Merchant and CBSG agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PURCHASER to Merchant. Merchant agrees that this Purchase Price is in exchange for Future Receipts pursuant to this Agreement equals the fair market value of such Receipts. PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to PURCHASER with respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. IN NO EVENT SHALL THE AGGREGATE OF THE AMOUNTS RECEIVED BE DEEMED AS INTEREST HEREUNDER. In the event that a court determines that PURCHASER has charged or received interest hereunder, and that said amount is in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PURCHASER shall promptly refund to Merchant any interest received by PURCHASER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PURCHASER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. MERCHANT ACKNOWLEDGES THAT PENNSYLVANIA LAW APPLIES TO THE WITHIN AGREEMENT.

**1.11 Monthly Assessment of Merchant Cash Flow.** Merchant hereby authorizes PURCHASER to initiate one or more ACH debits at the specified "Daily Retrieval Rate" from the Account as an approximation of the base payment due under the Specified Percentage. It is the Merchant's responsibility to provide financial information (e.g bank statements, credit card processing statements, general ledger) depending on great occurrences, to reconcile the daily payments made against the Specified Percentage, permitting PURCHASER to debit or credit the difference to Merchant on a monthly basis so that the Daily Retrieval Rate equals the Specified Percentage.

**1.12 Power of Attorney.** Merchant irrevocably appoints PURCHASER as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to PURCHASER from Processor, or in the case of a violation by Merchant of Section 1.12 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to PURCHASER; and (v) to file any claims or take any action or institute any proceeding which PURCHASER may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.13 Protection Against Default.** Merchant represents and warrants that it will not violate Conditions (a) through (c) below and in the event of default thereunder the following Protection 1 through 8 may be invoked by PURCHASER, immediately and without notice in Merchant in any event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the PURCHASER electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to PURCHASER; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor, (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of any purchaser or transferee in the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to PURCHASER at law, in equity or otherwise pursuant to this Agreement

**Protection 1.** The full established Purchase Amount plus all fees due under this Agreement and the standard Security Agreement become due and payable in full immediately

**Protection 2.** Upon breach of ANY MATERIAL PROVISION OR BREACH OF REPRESENTATIONS OR WARRANTIES in this Agreement, PURCHASER may enter that confession of judgment (judgment) with the Clerk of the Court and execute thereon.

**Protection 3.** Purchaser may enforce its security interest in the Collateral identified in Article III hereof

**Protection 4.** The entire Unpaid Purchase Amount shall become immediately refundable to PURCHASER from Merchant

**Protection 5.** Purchaser may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which Purchaser shall recover judgment against Merchant, Merchant shall be liable for the full

DocuSign Envelope ID: E3BA3AAC-486F-44C1-0004-B1B780SBBA63



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-803-4886

costs of PURCHASER's legal action, including all reasonable attorneys' fees and court costs.

**Protection 6.** Merchant shall, upon execution of this Agreement, deliver to PURCHASER an executed assignment of lease of Merchant's premises in favor of CBSG. Upon breach of any provision in this paragraph 1.13, PURCHASER may exercise its rights under such assignment of lease.

**Protection 7.** PURCHASER may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account

**Protection 8.** In the event Merchant changes or permits the change of the Processor approved by CBSG, or adds an additional Processor, in violation of Section 1.14 above, CBSG shall have the right, without waiving any of its rights and remedies and without notice to Merchant, to notify the new or additional Processor of the sale of the Receipts hereunder and to direct such new or additional Processor to make payment directly to CBSG of all or any portion of the amount received by such Processor.

**1.14** Protection of Information. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes PURCHASER to disclose information concerning Merchant's and each Owner's credit standing (including credit bureau reports that PURCHASER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against PURCHASER or any of its affiliates relating to any (i) investigation undertaken by or on behalf of PURCHASER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.15** Confidentiality. Merchant understands and agrees that the terms and conditions of the products and services offered by PURCHASER, including this Agreement and any other PURCHASER documentations (collectively, "Confidential Information") are proprietary and confidential information of PURCHASER. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PURCHASER to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.15.

**1.16** IMPA's. Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "dba" names in connection with various matters relating to the transaction between PURCHASER and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**II.    MERCHANT    REPRESENTATIONS, WARRANTIES AND COVENANTS** Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:

**2.1** Financial Condition and Financial Information. Bank and financial statements, and future statements furnished to PURCHASER, fairly represents the financial condition of Merchant at such dates. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material or adverse

change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

**2.2** Governmental Approvals. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged

**2.3** Authorization. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4** Insurance. Merchant will maintain business-interruption insurance naming CBSG as loss payee and additional insured in amounts and against risks as are satisfactory to PURCHASER and shall provide PURCHASER proof of such insurance upon request.

**2.5** Electronic Check Processing Agreement. Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without PURCHASER's prior written consent. Any such change shall be a material breach of this Agreement.

**2.6** Change of Name or Location. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PURCHASER or change any of its places of business

**2.7** Daily Batch Out. Merchant will batch out receipts with the Processor on a daily basis.

**2.8** Estoppel Certificate. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, person firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9** No Bankruptcy. As of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing, Protections 2 and 3 are immediately invoked.

**2.10** Working Capital Funding. Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credit against, Receipts or future check sales with any party other than PURCHASER

**2.11** Unencumbered Receipts. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledge and encumbrances

of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

**2.12** Business Purpose. Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement FOR BUSINESS PURPOSES ONLY and not as a consumer for personal, family or household purposes.

**2.13** Default under Other Contracts. Merchant's execution of and entrance into and of/default by Merchant will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.14** 3rd Party Negotiators with Regard to This Agreement and the Obligations Herein. Merchant hereby agrees not to retain any 3rd party negotiators, consolidators, or credit relief agencies with regard to its obligations under the terms of this Agreement. Merchant will maintain and allow direct communication with PURCHASER at all times during the course of this Agreement and shall not engage any 3rd party to negotiate its obligations as stated in this Agreement. Should Merchant violate this subsection 2.14, Merchant will be liable for the additional fees as specific in the attached Appendix A.

**III.    EVENTS    OF    BREACH    OF REPRESENTATIONS, WARRANTIES, AND COVENANTS AND REMEDIES**

**3.1** Events of Breach of Representations, Warranties and Covenants. The occurrence of any of the following events shall constitute a "Breach of a Breach of Representations, Warranties, and Covenants" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts, (d) the sending of notice of termination by MERCHANT; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (g) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (h) Merchant shall use multiple depository accounts without the prior written consent of PURCHASER; (i) Merchant shall change its depositing account without the prior written consent of PURCHASER, (j) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (k) Merchant shall engage a third party to renegotiate the terms of this Agreement on Merchant's behalf; (m) Merchant shall engage a third party in an attempt to cease direct communication with PURCHASER; or (n) Merchant shall default under any of the terms, covenants and conditions of any other agreement with PURCHASER.

**3.2** Remedies. In case any Event of a Breach of Representations, Warranties and Covenants, Default occurs and is not waived pursuant to Section 4.4 hereof, PURCHASER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained

Page | 6          Merchant Initials ____     Merchant Initials [ ___ ]

Case ID: 190501349

DocuSign Envelope ID: E36A0AAC-160F-44C1-8604-B1B7B05BBA53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-883-4886

herein, or to enforce the discharge of Merchant's obligations hereunder in any other legal or equitable right or remedy. IN THE EVENT OF VIOLATION OF THE REPRESENTATIONS AND WARRANTIES BY MERCHANT, PURCHASER may also file a Complaint in Confession of Judgment pursuant to the Warrant of Attorney contained herein. All rights, powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by PURCHASER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 Consent to Sale/Transfer of Interest: In event of MERCHANT breach of warranties, covenants and representations under this Agreement, Merchant consents to PURCHASER'S sale or transfer of its remaining interests in MERCHANT'S receivables to a third party buyer of defaulted financial obligations and instruments. More specifically, MERCHANT reemploys PURCHASER'S authority to sell its interests in said receivables to New York Study Factor, LLC ("NYUF") which MERCHANT authorizes to pursue legal remedies in NYUF's home State of New York in the event of a breach of this warranties, covenants, and representations stated under this Agreement.

3.4 WARRANT OF ATTORNEY TO CONFESS JUDGMENT: UPON THE OCCURRENCE OF A VIOLATION OF THE REPRESENTATIONS AND WARRANTIES MADE HERETOFORE BY MERCHANT, MERCHANT IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE UNDER THIS MERCHANT AGREEMENT OR ANY ACCOMPANYING DOCUMENTS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO TEN PERCENT (10%) OF THE AMOUNT OF SUCH REPRESENTATIONS, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEYS' COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEY'S FEES AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS MERCHANT AGREEMENT "ATTORNEY'S FEES AND COLLECTION COSTS." TO THE EXTENT PERMITTED BY LAW, MERCHANT: (I) WAIVE THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVE AND RELEASE ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREINAFTER ENACTED; AND (3) RELEASE ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS MERCHANT AGREEMENT, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF

PURCHASER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL MERCHANT AGREEMENT AS A WARRANT OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS PURCHASER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS BUSINESS CASH ADVANCE AND SECURITY AGREEMENT SHALL BE A SUFFICIENT WARRANT THEREFOR. PURCHASER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE AMOUNTS OWING HEREUNDER, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME AMOUNTS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST THE MERCHANT HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON MERCHANT'S BEHALF FOR ANY REASON, PURCHASER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR ANY PART OF ALL OF THE AMOUNTS OWED HEREUNDER, AS PROVIDED FOR HEREIN, IF DOING SO WILL CURE ANY ERRORS AND DEFECTS IN SUCH PRIOR PROCEEDINGS.

3.41 NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY MERCHANT IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT TO REQUIRE TO THE MERCHANT AND THE MERCHANT'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

3.5 Costs: Merchant shall pay to PURCHASER all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of PURCHASER'S remedies set forth in Section 3.2 above, including but not limited to court costs and attorneys' fees.

3.6 Required Notifications. Merchant is required to give PURCHASER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PURCHASER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

IV. MISCELLANEOUS

4.1 Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PURCHASER.

4.2 Assignment. PURCHASER may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3 Notices. All notices, requests, consent, demands and other communications hereunder shall be delivered

by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 Waiver Remedies. No failure on the part of PURCHASER to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 Merchant/Guarantor(s) barred from transfer. This Agreement shall be binding upon and inure to the benefit of Merchant, PURCHASER and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER which consent may be withheld in PURCHASER's sole discretion. PURCHASER reserves the right to assign this Agreement with or without prior written notice to Merchant or Guarantor(s).

4.6 Governing Law/Jurisdiction/Venue for disputes. All signatories to this Agreement consent that this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PURCHASER so elects, be instituted in the Court of Common Pleas, Philadelphia County, Federal Court for the Eastern District of Pennsylvania, or the Philadelphia County Municipal Court, (the "Acceptable Forums") Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum.

4.7 Survival of Representation, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force and effect. Obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.8 Severability in case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9 Entire Agreement. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereby embody the entire agreement between Merchant and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING OR ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE

Merchant Initials _____        Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: E3BA3AAC-488F-44C1-0004-B1B7805B0A53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-803-4886

ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12 Counterparts & Facsimile/Email Signatures. This Agreement may be executed in any number of counterparts each of which shall be deemed to be an original, all of which together shall be deemed one and the same instrument. Further, facsimile and email signatures shall be deemed to be originals for all purposes.

Merchant Initials _____   Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: E38A3AAC-486F-44C1-8004-B1B7B05BBA53



20 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-823-4886

Seller/Merchant's Legal Name: HMC INCORPORATED DBA HMC INCORPORATED

Physical Address: 77190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046

FED ID # (Merchant): 52-2005467

## SECURITY AGREEMENT

Security Interest. To secure SELLER/MERCHANT'S performance obligations to PURCHASER under the "Factoring Agreement", SELLER/MERCHANT hereby grants to PURCHASER a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by SELLER/MERCHANT; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral")

Cross-Collateral. To secure MERCHANT's payment and performance obligations to PURCHASER under this Security Agreement (the "Agreement"), MERCHANT hereby grants PURCHASER a security interest in __ (the "Additional Collateral"). MERCHANT understands that PURCHASER will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

SELLER/MERCHANT acknowledge and agree that any security interest granted to PURCHASER under any other agreement between SELLER/MERCHANT and PURCHASER (the "Cross-Collateral") will secure the obligations hereunder and under the FACTORING Agreement

SELLER/MERCHANT agrees to execute any documents or take any action in connection with this Agreement as PURCHASER deems necessary to perfect or maintain PURCHASER'S first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. SELLER/MERCHANT hereby authorizes PURCHASER to file any financing statements deems necessary by PURCHASER to perfect or maintain PURCHASER's security interest, which financing statement may contain notification that SELLER/MERCHANT have granted a negative pledge to PURCHASER with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien or may be tortiously interfering with PURCHASER's rights. SELLER/MERCHANT shall be liable for and PURCHASER may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by PURCHASER in protecting, preserving and enforcing PURCHASER'S security interest and rights.

Negative Pledge. SELLER/MERCHANT agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

Consent to Enter Premises and Assign Lease. PURCHASER shall have the right to cure SELLER/MERCHANT default in the payment of rent on the following terms. In the event SELLER/MERCHANT is served with papers in an action against SELLER/MERCHANT for nonpayment of rent or for summary eviction, PURCHASER may execute its rights and remedies under the Assignment of Lease. SELLER/MERCHANT also agrees that PURCHASER may enter into an agreement with SELLER/MERCHANT landlord giving PURCHASER the right: (a) to enter SELLER/MERCHANT's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign SELLER/MERCHANT'S lease to another qualified SELLER/MERCHANT capable of operating a business comparable to SELLER/MERCHANT at such premises

Remedies. Upon any Event of Default, PURCHASER may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

SELLER/MERCHANT
BY: KARA DIPIETRO, OWNER

Kara DiPietro
Name/Title/Signature

Merchant Initials [ ]   Merchant Initials _____   Case ID: 190501349

DocuSign Envelope ID: E36A3AAC-486F-44C1-8804-B1B7B05BBA53



20 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-7636          Fax: 866-803-4686

DISCLOSURE FOR CONFESSION OF JUDGMENT

AFFIANT:        KARA DIPIETRO

OBLIGEE:        Complete Business Solutions Group, Inc. d/b/a Par Funding

The undersigned have executed, and/or is executing, on even date herewith, one or more of the following instruments under which the Merchant is obligated to repay monies to Obligee:

1.      Factoring Agreement dated FEBRUARY 27, 2019; and

A.      THE MERCHANT ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY ENTER JUDGMENT BY CONFESSION AGAINST THE MERCHANT. BEING FULLY AWARE OF THE MERCHANT'S RIGHTS TO PRIOR NOTICE AND A HEARING ON THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT MAY BE ASSERTED AGAINST THE MERCHANT BY OBLIGEE THEREUNDER BEFORE JUDGMENT IS ENTERED, THE UNDERSIGNED HEREBY FREELY, KNOWINGLY, AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S ENTERING JUDGMENT AGAINST THE MERCHANT BY CONFESSION PURSUANT TO THE TERMS THEREOF.

B.      THE UNDERSIGNED ALSO ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY, AFTER ENTRY OF JUDGMENT AND WITHOUT EITHER NOTICE OR A HEARING, FORECLOSE UPON, ATTACH, LEVY, OR OTHERWISE SEIZE PROPERTY OR PROCEED AGAINST THE INTERESTS OF THE MERCHANT IN PROPERTY (REAL OR PERSONAL) IN FULL OR PARTIAL PAYMENT OR SATISFACTION OF THE JUDGMENT OR JUDGMENTS. BEING FULLY AWARE OF THE MERCHANT'S RIGHTS AFTER JUDGMENT IS ENTERED (INCLUDING THE RIGHT TO MOVE TO OPEN OR STRIKE THE JUDGMENT OR JUDGMENTS), THE UNDERSIGNED HEREBY FREELY, KNOWINGLY AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S TAKING SUCH ACTIONS AS MAY BE PERMITTED UNDER APPLICABLE STATE AND FEDERAL LAW WITHOUT PRIOR NOTICE TO THE MERCHANT.

C.      The Merchant hereby certifies that the financial accommodations being provided by the Obligee are for a business purpose, and not for personal, family or household use.

D.      The statements made in this Disclosure for Confession of Judgment are made subject to the penalties of 18 Pa C.S.A. § 4904 relating to unsworn falsification to authorities.

SELLER/MERCHANT
By: KARA DIPIETRO

EIN# 52-2005467

KARA DIPIETRO

SS# 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

DocuSigned by:
*Kara DiPietro*
(Signatory Executing)

DocuSigned by:
*Kara DiPietro*
(Signatory Executing)

Page 18

Merchant Initials [KD]   Merchant Initials          Case ID: 190501349

DocuSign Envelope ID: E38A9AAC-466F-44C1-8804-B1B7B69BBA53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-803-4886

GUARANTY

Personal Guaranty of Performance. The undersigned Guarantor(s) hereby guarantees to PURCHASER, SELLER/MERCHANT'S performance of all of the representations, and warranties made by SELLER/MERCHANT in this Agreement and the Factoring Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations") Guarantor's obligations are due at the time of any breach by Merchant of any representation or warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement

Guarantor Waivers. In the event that SELLER/MERCHANT violates its representations and warranties under the FACTORING AGREEMENT, PURCHASER may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral PURCHASER may hold pursuant to this Agreement or any other guaranty

PURCHASER does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) SELLER/MERCHANT'S violation of the representations and warranties of the FACTORING AGREEMENT or any renewal, extension or other modifications of the FACTORING AGREEMENT. In addition, PURCHASER may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the FACTORING AGREEMENT or SELLER/MERCHANT'S other obligations to PURCHASER; (ii) release SELLER/MERCHANT from its obligations to PURCHASER; (iii) sell, release, impair, waive or otherwise execute upon any collateral securing the Guaranteed Obligations ; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until all obligations are fulfilled and Guarantor's obligations under the FACTORING AGREEMENT and SELLER/MERCHANT'S other obligations to PURCHASER under the FACTORING AGREEMENT and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantee for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against SELLER/MERCHANT, any other guarantor, or any collateral provided by SELLER/MERCHANT or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that PURCHASER must return any amount paid by SELLER/MERCHANT or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THE GUARANTY, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY GUARANTOR IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT RECOURSE TO THE GUARANTOR AND THE GUARANTOR'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

GUARANTOR ACKNOWLEDGEMENT  Guarantor acknowledges that: (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of its/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of this opportunity.

JOINT AND SEVERAL LIABILITY. The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

By: KARA DIPIETRO, Individual Guarantor          _kara DiPietro_
                                                 (Signature)

By: KARA DIPIETRO, Individual Guarantor          _kara DiPietro_
                                                 (Signature)

SS# 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

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY.

CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

DocuSign Envelope ID: E38A3AAC-468F-44C1-8604-B1B7B05HBA53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-803-4886

## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the FACTORING AGREEMENT. You should keep this important legal document for your records

**DISBURSEMENT OF BUSINESS CASH ADVANCE PROCEEDS:** By signing below, Seller/Merchant authorizes PURCHASER to disburse the Cash Advance Proceeds less the amount of any applicable fees upon approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller/Merchant later identifies and is acceptable to PURCHASER) (hereinafter referred to as the "Designated Checking Account") in the disbursal amount set forth in the accompanying documents. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Merchant's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN:** Enrollment in PURCHASER's Automatic Payment Plan is required for approval. By signing below, Seller/Merchant agrees to enroll in the Automatic Payment Plan and authorizes PURCHASER to collect payments required under the terms of Seller/Merchant Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the payment schedule set forth in the accompanying Seller/Merchant Agreement. Seller/Merchant authorizes PURCHASER to increase the amount of any scheduled ACH debit entry or access multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the payment schedule and any unpaid Fees. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Seller/Merchant's depository bank a reasonable opportunity to act on it. PURCHASER may suspend or terminate Seller/Merchant's enrollment in the Automatic Payment Plan immediately if Seller/Merchant fails to keep Seller/Merchant's designated checking account in good standing or if there are insufficient funds in Merchant's checking account to process any payment

If Seller/Merchant revokes the authorization or PURCHASER suspends or terminates Seller/Merchant's enrollment in the Automatic Payment Plan, Seller/Merchant still will be responsible for making timely payments pursuant to the alternative payment methods described in the Seller/Merchant Agreement.

**BUSINESS PURPOSE ACCOUNT:** By signing below, Seller/Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

**ACCOUNT CHANGES:** Seller/Merchant agrees to notify PURCHASER promptly if there are any changes to the account and routing numbers of the Designated Checking Account

**MISCELLANEOUS:** PURCHASER is not responsible for any fees charged by Seller/Merchant's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Merchant's account must comply with the provisions of U.S. law

Signature: _Kara Whirko_            Date: 2/27/2019

Bank Name: _____ ON FILE _____

City: ____ ON FILE ____ State: __ ON FILE __ Zip: __ ON FILE __

Routing Number: _____ ON FILE _____

Account Number: _____ ONFILE _____

Business Name on Account: ____ ONFILEON FILE ____

Address on Account: ____ ON FILE _____ ON FILE ____

Seller/Merchant Phone #: _____ Tax ID Number: _____

Email: k.dipietro@hmcincorporated.com

Signature: _Kara Whirko_

Title: PRESIDENT & CEO

DocuSign Envelope ID: E39A3AAC-498F-44C1-8064-B1B7B050DA53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-801-4886

## BANK ACCOUNT DISCLOSURE AFFIDAVIT

For the purpose of obtaining the Business Cash Advance evidence by the Merchant Agreement of this same date herewith (the "Business Cash Advance") from Complete Business Solutions Group, Inc., the undersigned Seller/Merchant hereby makes the following statement under penalty of law.

**PLEASE SIGN OPTION ONE OR TWO**

**OPTION 1 - DISCLOSURE AND AUTHORIZATION FOR ADDITIONAL ACCOUNTS:**

The Seller/Merchant hereby declares that in addition to the designated for ACH debit, the Seller/Merchant also has the following additional account(s) which he authorizes us to use in the event we are unable to debit from the designated account:

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account
**attach additional pages if necessary**

Seller/Merchant Signature _____ Dated  2/27/2019
Seller/Merchant Signature _____ Dated  2/27/2019

**OPTION 2** - By signing below, the merchant swears, under penalty of law, that he has no accounts in any lending institution in addition to the one provided for ACH debit.

Seller/Merchant Signature _____ Dated _____

Seller/Merchant Signature _____ Dated _____

DocuSign Envelope ID: E38A3AAC-488F-44C1-8804-B1B7B06DBA53



20 N. 3rd Street Philadelphia, Pennsylvania 19105
Phone: 215-922-2636      Fax: 868-803-4886

## TRADE REFERENCES

Please provide a list of 3-5 professional references

1. Name: _____

   Phone number: _____ Email Address: _____

2. Name: _____

   Phone number: _____ Email Address: _____

3. Name: _____

   Phone number: _____ Email Address: _____

4. Name: _____

   Phone number: _____ Email Address: _____

5. Name: _____

   Phone number: _____ Email Address: _____

Merchant Initials _____   Merchant Initials _____        Case ID: 190501349

DocuSign Envelope ID: E30A3AAC-480F-44C1-8804-01B7B05D8A58



**CBSG**

20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-803-4886

### AUTHORIZATION TO RESUME ACH DEBITING FORM

NAME OF SELLER/MERCHANT: _____

INFORMATION (To be filled out by the customer)

I authorize Company (as shown above) to resume electronically debiting my bank account as detailed below, including a non-sufficient fund fee if applicable, until the debt to the company is paid in full.

Full Name on Account: _____

Account #: _____     Routing #: _____

Account Type (select one):     Checking     ☐     Savings     ☐

Account Class (select one):     Consumer Account     ☐     Business Account     ☐

Payment amount: _____     Number of Payments: _____

Date of next payment: _____     Frequency of payments: _____

I understand that I may cancel this authorization by contacting the company at least five (5) business days prior to the payment due date. I further understand that canceling my ACH authorizations does not relieve me of the responsibility of paying my account in full, and that if I cancel or revoke this authorization before the debt is paid in full, the Company may take additional actions including legal actions to secure the debt.

Customer signature: _____     Date: _____     2/27/2019

    Ralph DiPietro

Customer Printed Name: _____

Customer contact Telephone #: _____

Merchant Initials _____     Merchant Initials _____     Case ID: 190501349

DocuSign Envelope ID: E38A3AAC-400F-44C1-0804-B1D7B05B9A53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-803-4686

Dear Client,

Thank you for accepting this offer from Complete Business Solutions Group DBA Par Funding.  We look forward to being your factoring partner for as long as you need

Daily ACH Program:

Complete Business Solutions Group will require viewing access to your bank account prior to funding as part of our underwriting process, as well as during the time you have a balance with our company.

Please be assured that we carefully safeguard your confidential information and only essential top level personnel will have access to it.

Please fill out the form below with the information necessary to access your account.

**Be sure to indicate capital or lower case letters

NAME OF BANK:   TD  BANK

BANK PORTAL WEBSITE:   ON FILE

USERNAME:   ON FILE

PASSWORD:   ON FILE

SECURITY QUESTION/ANSWER 1:   ON FILE

SECURITY QUESTION/ANSWER 2:   ON FILE

SECURITY QUESTION/ANSWER 3:   ON FILE

ANY OTHER INFORMATION NECESSARY TO ACCESS YOUR ACCOUNTS:

DocuSign Envelope ID: E98A3AAC-4B0F-44C1-B804-B1B7B05BBA53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-803-4886

## APPENDIX A: THE FEE STRUCTURE

1   Origination Fee - $TO BE DETERMINED to cover underwriting and related expenses

2.   ACH Program Fee - $WAIVED—The ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs;

3.   NSF Fee - $75.00 (each) – Up to FOUR TIMES ONLY before a default is declared;

4.   Rejected ACH - $100.00 – If a merchant directs the bank to reject our debit ACH;

5.   Bank Change Fee - $50.00 – If a merchant requires a change of account to be debited requiring us to adjust our system;

6.   Blocked Account - $250.00 – If a merchant blocks CBSG's ACH debit of the Account, bounces more than 4 debits of the Account or simultaneously uses multiple bank accounts or credit-card processors in process its receipts;

7.   Default Fee - $500.00 default fee – If a merchant changes bank accounts or switches to another credit card processor without CBSG's consent, or commits another default pursuant to the Agreement;

8.   Collections Expense – In the event of default, Seller / Merchant shall be responsible for all reasonable costs of collections, including, but not limited to, counsel fees, filing fees and any other fees which may be incurred.

9   Miscellaneous Service Fees – Merchant shall pay certain fees for services related to the origination and maintenance of accounts. Each Merchant shall receive their funding electronically to their designated bank account and will be charged $WAIVED for a Fed Wire. The current charge for the underwriting, UCC, ACH program and origination of each Merchant will be paid from the funded amount. Merchant will be charged $100.00 for every additional change of their operating bank account once they are active with CBSG. Additional copies of prior monthly statements will incur a fee of $10.00 each.

10   Notary Fee - $99.00 to cover online notary expenses

11.   Risk Assessment Fee - $WAIVED

12   UCC Fee - $WAIVED

Merchant Signature: _Kara DiPietro_          Name: __Kara DiPietro__          

Merchant Signature: _Kara DiPietro_          Name: __Kara DiPietro__          

CBSG/Issue 9/14.2019 Agreement

Merchant Initials _____ Merchant Initials          Case ID: 190501549

DocuSign Envelope ID: E38A3AAC-408F-44C1-8604-B1B7B058DA50



50 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-803-4886

MANDATORY JOINT AFFIDAVIT OF CONFESSION OF JUDGEMENT

INSTRUCTIONS:

SIGN AND NOTARIZE THIS SECTION OF THE AGREEMENT, SEND THE ORIGINAL COPY TO:

PAR FUNDING
22 N 3RD STREET
PHILADELPHIA, PA 19106

C/O UNDERWRITING

Merchant Initials _____     Merchant Initials _____     Case ID: 190501349

DocuSign Envelope ID: E36A2AAC-488F-44C1-8804-B1B7B058BA63



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636       Fax: 888-803-48x6

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF ONEIDA**

| | |
|---|---|
| NEW YORK UNITY FACTOR, LLC | Index No. |
| Plaintiff, | **AFFIDAVIT OF** |
| | **CONFESSION OF JUDGMENT** |
| -against- | |
| HMC INCORPORATED D/B/A | |
| HMC INCORPORATED and | |
| KARA DIPIETRO, | |
| Defendant(s) | |

STATE OF MARYLAND      )
                                              )    ss.:
COUNTY OF HOWARD     )

KARA DIPIETRO, being duly sworn, deposes and says:

1.      I am a principal, owner, and an officer of HMC INCORPORATED D/B/A HMC

INCORPORATED ("Merchant Defendant"), a CORPORATION located at 77190 OAKLAND MILLS RD #10,

COLUMBIA, MD 21046, in the County of HOWARD, and as such, I have the authority to act on behalf of Merchant

Defendant.

2.      I reside at 1836 LANDRAKE RD, TOWSON, MD 21204, in the County of BALTIMORE.

3.      I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4.      Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of

Plaintiff and against Defendants in the Federal District Court for the Northern District of New York, Supreme Court

of the State of New York, Court of Common Jurisdiction for the County of Oneida, in the sum of $4,690,000.00

less any payments timely made pursuant to the secured Merchant Agreement dated FEBRUARY 27, 2019, plus

costs, expenses, and disbursements, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the

aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default,

or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be

Page | 17                                      Merchant Initials _____   Merchant Initials _____      Case ID: 190501349

DocuSign Envelope ID: E08A3AAC-408F-44C1-8004-B1B7005BBA53



20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-972-2636    Fax: 888-803-4886

executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5.    In addition, I hereby confess judgment, individually and personally, jointly and severely, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the Northern District of New York, Supreme Court of the State of New York, Court of Common Jurisdiction for the County of Oneida, and/or Civil Court, against me personally in the sum of $4,690,000.00 less any payments timely made pursuant to the Merchant Agreement dated FEBRUARY 27, 2019, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.    This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated FEBRUARY 27, 2019, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated FEBRUARY 27, 2019, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.    Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

8.    If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

Merchant Initials _____ Merchant Initials _____        Case ID: 190501349

DocuSign Envelope ID: E38A3AAC-488F-44C1-9804-B1B7B05GBA60

CBSG
CAPITAL GROUP
ATTORNEYGROUP

20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-803-4886

9.    I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this ____ day of _____, 2019.

By: _____
KARA DiPIETRO, individually, and on behalf of HMC
INCORPORATED D/B/A HMC INCORPORATED

Sworn to before me this
____ day of _____, 2019.

_____
Notary Public

Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: E36A3AAC-408F-44C1-8804-B1B7605DBA53



70 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-883-4886

FEBRUARY 27, 2019

Attn: Court Orders & Levies Dept.

Re:    *HMC INCORPORATED, et al.*
       Supreme Court of the State of New York, Richmond County  Index No.
       *Information Subpoena and Restraining Notice - RELEASE*

Complete Business Solutions Group, Inc. d/b/a Par Funding ("Funder"), Plaintiff/Judgment
Creditor, and KARA DIPIETRO ("KARA") and HMC INCORPORATED ("HMC INCORPORATED"),
Defendants/Judgment Debtors (collectively, "the Parties"), hereby authorize
_____, N.A. and/or related entities (collectively, "_____, N.A.") to release
($_____) (the "Release Amount") from the funds currently held in reserve per the Information
Subpoena with Restraining Notice ("IS/RN"), payable as follows:

Via check                                          Via wire to:

HMC INCORPORATED and KARA agree to indemnify and hold harmless
_____, N.A. and its officers, directors, agents and employees from and against claims, damages,
losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from this release
and/or the IS/RN. Upon tender of the Release Amount, Funder consents to the immediate RELEASE of the
remainder and/or account(s) being held on reserve to HMC INCORPORATED, KARA, and/or its/their
principals, agents, heirs and assigns.

AGREED AND ACCEPTED:

Merchant Initials   ( LW )   Merchant Initials        Case ID: 190501349

DocuSign Envelope ID: E38A3AAC-488F-44C1-8804-B1B7B05BDA50

CBSG
COMPLETE BUSINESS
SOLUTIONS GROUP

20 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-603-4886

By: _____
Norman M. Valz, Esq.
*Attorney for Plaintiff/Judgment*
*Creditor, NEW YORK UNITY*
*FACTOR LLC and*
Complete Business Solutions Group, Inc.
205 Arch Street – 2nd Floor
Philadelphia, PA  19106

By: _____
KARA DIPIETRO_____(Name)
Owner/Manager/Agent_____(Title)
individually, and on behalf of *HMC*
*INCORPORATED*

(215)        (tel.)

State of_____} County of(____)

) ss:

On the_____day of_____, in the year 2019, before me, the undersigned Notary Public in and for said state, personally
appeared KARA DIPIETRO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed
to the within instrument and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the instrument, the
individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

Merchant Initials  { kD }   Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: E38A3AAC-488F-44C1-8804-B1G7B09BBA63

HMC INCORPORATED and KARA DIPIETRO

77190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046

FEBRUARY 27, 2019

<u>NOTICE OF SALE, ASSIGNMENT, and TRANSFER</u>

Dear Account Debtor of HMC INCORPORATED:

This letter is to notify you that on FEBRUARY 27, 2019, HMC INCORPORATED entered into a Factoring Agreement (the "Agreement") with Complete Business Solutions Group, Inc. d/b/a Par Funding ("CBSG"). Under the terms of the Agreement, HMC INCORPORATED sold, assigned, and transferred to CBSG all of HMC INCORPORATED's right, title, and interest in and to HMC INCORPORATED's future receipts, accounts, and contract rights arising from or relating to the payment of monies payable from you to HMC INCORPORATED (collectively, the "Receivables"). As such, CBSG is the absolute owner of the Receivables, and HMC INCORPORATED no longer has any right, title, or interest in or to The Receivables.

CBSG's is the absolute owner of the Receivables regardless of any Uniform Commercial Code financing statement that may have been filed by CBSG or any other entity with respect to the Receivables.

CBSG may provide you with a copy of this signed letter as proof of HMC INCORPORATED's sale, assignment, and transfer of the Receivables to CBSG and of CBSG's absolute ownership of the Receivables. Upon your receipt of a copy of this letter from CBSG, you are authorized to deliver to CBSG Receivables due from you to Merchant Name (absent the sale, assignment, and transfer made under the Agreement) in the amount indicated by CBSG.

The undersigned represents that he/she is authorized to sign this letter on behalf of HMC INCORPORATED and to bind HMC INCORPORATED.

Very truly yours,

Sworn and subscribed to before me

this _____ day of _____, _____.

_____

KARA DIPIETRO

_____

Printed Name

_____

Notary Public

_____

Title

cc:    Complete Business Solutions Group, Inc

DocuSign Envelope ID: E36A3AAC-408F-44C1-8804-B1D7B05B0A53

Filed and Attested by the
Office of Judicial Records
14 MAY 2019 10:38 am
A. SILIGRINI

# EXHIBIT "D"

Case ID: 190501349

DocuSign Envelope ID: 4EDB3A8C-C20C-4D63-9CFC-0717560BCEA6

CL

22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-305-7562

### ACKNOWLEDGEMENT

I, KARA DIPIETRO, hereby acknowledge:

> There has been no promise of additional capital in 30 days from funding by CBSG or any ISO (broker).
>   - Our policy is that merchants can seek additional capital from us when they have paid 55% of the Receipts Purchased Amount.
> That CBSG does not permit outside fees and that no one has discussed additional fees with me. The fee amount for this agreement is TO BE DETERMINED, which will be held back from the funding amount.
> There has not been and will not any contact from Third Party debt companies regarding this Factoring Agreement dated DECEMBER 19, 2018.

I, the undersigned, acknowledge that I am in agreement with these items, which are also described in detail within the pages of this document.

_____          12/19/2018
Signature                                               Date


I, KARA DIPIETRO, hereby acknowledge:

> Additional Funding/"Stacking" Fee: 15% of Advance Amount – If the MERCHANT/GUARANTOR takes additional funding at any point after being funded by CBSG, without prior notice to and consent by CBSG, a fee amounting to 15% of the amount of the advance shall automatically be added to the payback amount of the advance. CBSG reserves the right to declare the account in default, at any point after learning such "stacking" has occurred; regardless of the payments made by the MERCHANT/GUARANTOR, with the filing of the Confession of Judgement in a court of competent jurisdiction.

I, the undersigned, acknowledge that I am in agreement with these items, which are also described in detail within the pages of this document.

_____          12/19/2018
Signature                                               Date

EMAIL ADDRESS: k.dipietro@hacincorporated.com

PRIMARY PHONE NUMBER: 430-309-0729

SECONDARY PHONE NUMBER: 430-340-1523


Page 1                                                      Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: 45D83A8C-C20C-4D80-8CFC-07173BCBCEA6


CBS...

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-305-7562

## FACTORING AGREEMENT

Dated the 19TH day of DECEMBER, 2018 by and between Complete Business Solutions Group, Inc. ("CBSG" and/or "PURCHASER") and the "SELLER/MERCHANT" listed below (as "Seller/Merchant" or "the Merchant").

**Business Legal Name:** HMC INCORPORATED
**D/B/A:** HMC INCORPORATED
**Type of entity** (check one) [X] Corporation  [ ] LLC  [ ] Limited Partnership  [ ]  Limited Liability Partnership  [ ] Sole Proprietor
**Physical Address:** 7/190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
**Mailing Address:** 7/190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
**Fed ID#:** 52-2085467

### PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Seller/Merchant's customers' and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.

### THIS IS A FACTORING AGREEMENT WITH RECOURSE

The Purchased Amount shall be paid to CBSG by Seller/Merchant's irrevocably authorizing only one depositing account acceptable to CBSG (the "Account") to remit the Daily Specified Amount from the Seller/Merchant's receipts until such time as CBSG receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Seller/Merchant hereby authorizes CBSG to ACH debit the "Specified Daily Amount" from the merchant's bank account, as an approximation of the then payment due under the Specified Percentage. It is the Seller/Merchant's responsibility to provide bank statements for any and all bank accounts by the Merchant to reconcile the daily payments made against the Daily Specified Amount.  Failure to provide all of their bank statements in a timely manner or missing a month shall forfeit all rights in future reconciliations   CBSG may, upon Seller/Merchant's request, adjust the amount of any payment due under this Agreement at CBSG's sole discretion and as it deems appropriate in servicing this Agreement. Seller/Merchant warrants that it will ensure that funds adequate to cover the amount to be debited by CBSG remains in the account. Seller/Merchant will be held responsible for any fees incurred by CBSG resulting from a rejected ACH attempt or an event of default (See Appendix A)   CBSG is not responsible for any overdrafts or rejected transactions in the Seller/Merchants account which may result from CBSG's scheduled ACH debit under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between CBSG and Seller/Merchant, upon the violation of any provision contained in Sections 1 and ii of the FACTORING AGREEMENT, shall be deemed a breach of the representations and warranties contained herein   A list of all fees applicable under this FACTORING AGREEMENT is contained in Appendix A.

**Purchase Price:** $3,490,000.00 **Specified Percentage:** 14% **Daily Specified Amount to be determined on percentage of Income     Receipts Purchased Amount:** $5,446,000.00
*Merchant will be funded in weekly installments

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGES 2 THROUGH 12 HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS FACTORING AGREEMENT.

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER                    X [ Kara DiPietro ]
Name and Title                                        (Seller/Merchant Signature)

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER                    X [ Kara DiPietro ]
Name and Title                                        (Seller/Merchant Signature)

COMPLETE BUSINESS SOLUTIONS GROUP, INC.

By _____
        Company Officer

To the extent set forth herein, each of the parties is obligated upon his/ her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below.  Each individual executing this Agreement represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to honor the terms of this obligation and that the information provided herein and in all of CBSG documents, forms and recorded interviews is true, accurate and complete in all respects.  If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements and the representations and warranties contained herein between Merchant and CBSG and CBSG shall be entitled to all remedies available under law   Merchant and each of the above-signed Officers/ Owners authorizes CBSG, its agents and representatives and any credit reporting agency engaged by CBSG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for as long as Merchant and/Owner(s) continue to have any obligation owed to CBSG.

ANY MISREPRESENTATION MADE BY SELLER/MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION

Merchant Initials [ ]

Case ID: 190501349

DocuSign Envelope ID: 4E0B3A8C-C20C-4D45-9CFC-071759CBCEA6

**CBSG**
SMALL BUSINESS
ADVANCE LLP

22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7552

## FACTORING AGREEMENT TERMS AND CONDITIONS

1.  GENERAL TERMS OF AGREEMENT (MUTUAL REPRESENTATIONS AND WARRANTIES)

1.1 Electronic Fund Transfer. Upon request from PURCHASER ("hereinafter CBSG or Purchaser") Seller/Merchant ("hereinafter Merchant") shall execute such forms or agreements acceptable to PURCHASER, with Bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER, and/or its authorized agent with all the information, authorization and passwords necessary for verifying Merchant's receivable, receipts and deposits into the account. Merchant shall authorize PURCHASER and/or it's agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amount which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the SPECIFIED DAILY AMOUNT by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER.

1.2 Deposit Agreement. Seller/Merchant shall execute an agreement (the "Deposit Agreement") acceptable to PURCHASER, with a bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER and/or its authorized agent with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts and deposits into the account. Merchant shall authorize PURCHASER and/or it's agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER

1.3 Term of Agreement. This Agreement shall have a term as set forth above. Upon the expiration of the term, this Agreement shall automatically renew for successive similar terms, provided, however, that during the renewal term(s) Merchant may terminate this Agreement upon ninety days' prior written notice (effective upon receipt) to PURCHASER The termination of this Agreement shall not affect Merchant's responsibility to satisfy all outstanding obligations to PURCHASER at the time of termination.

1.4 Future Purchases. PURCHASER reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

1.5 Financial Condition. Merchant authorized PURCHASER and its agents to investigate their financial responsibility and history, and will provide to PURCHASER any bank or financial statements, tax returns, etc., as PURCHASER deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. PURCHASER is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.6 Transactional History. Merchant authorizes their bank to provide PURCHASER with Merchant's banking or processing history to determine qualification or continuation in this program

1.7 Indemnification. Merchant jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees)

incurred by Processor resulting from (a) claims asserted by PURCHASER for monies owed to PURCHASER from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by PURCHASER.

1.8 No Liability. In no event will CBSG be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant.

1.9 Reliance on Terms. Section 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, PURCHASER and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.10 Sale of Receipts. Merchant and CBSG agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from Merchant to PURCHASER. Merchant agrees that the Purchase Price is in exchange for Future Receipts pursuant to this Agreement equals the fair market value of such Receipts. PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to PURCHASER with respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. IN NO EVENT SHALL THE AGGREGATE OF THE AMOUNTS RECEIVED BE DEEMED AS INTEREST HEREUNDER In the event that a court determines that PURCHASER has charged or received interest hereunder, and that said amount is in excess of the highest applicable rate, the rate of the effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PURCHASER shall promptly refund to Merchant any interest received by PURCHASER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PURCHASER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law MERCHANT ACKNOWLEDGES THAT PENNSYLVANIA LAW APPLIES TO THE WITHIN AGREEMENT

1.11 Monthly Assessment of Merchant Cash Flow Merchant hereby authorizes PURCHASER to initiate sale or more ACH debits at the specified "Daily Retrieval Rate" from the Account as an approximation of the best payment due under the Specified Percentage. It is the Merchant's responsibility to provide financial information (e.g. bank statements, credit card processing statements, general ledger) regarding its gross receivables, to reconcile the daily payments made against the Specified Percentage, pending. PURCHASER to debit or credit the difference to Merchant on a monthly basis so that the Daily Retrieval Rate equals the Specified Percentage.

1.12 Power of Attorney. Merchant irrevocably appoints PURCHASER as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to PURCHASER from Processor, or in the case of a violation by Merchant of Section 1.12 in the occurrence of an Event of Default under Section 4.12 from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or become due under or in respect of any of the Collateral; (iii) to receive, endorse and

collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii); (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing entrances or account debtors to make payment directly to PURCHASER; and (v) to file any claims to take any action or institute any proceeding which PURCHASER may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

1.13 Protections Against Default. Merchant represents and warrants that it will not violate Conditions (a) through (e) below and in the event of default thereunder the following Protections 1 through 8 may be invoked by PURCHASER, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the PURCHASER electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to Merchant in the event; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of PURCHASER, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER; or (e) Merchant takes any action, fails to take any action, or offers any incentive- economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to PURCHASER in law, in equity or otherwise pursuant to this Agreement.

Protection 1: The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately

Protection 2: Upon breach of ANY MATERIAL PROVISION OR BREACH OF REPRESENTATIONS OR WARRANTIES in this Agreement, PURCHASER may enter that confession of judgment (judgment) with the Clerk of the Court and execute thereon

Protection 3: Purchaser may enforce its security interest in the Collateral identified in Article III hereof.

Protection 4: The entire Unpaid Purchase Amount shall become immediately refundable to PURCHASER from Merchant

Protection 5: Purchaser may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which Purchaser shall recover judgment against Merchant, Merchant shall be liable for the full costs of PURCHASER'S legal action, including all reasonable attorneys' fees and court costs

Protection 6: Merchant shall, upon execution of this Agreement, deliver to PURCHASER an executed assignment of lease of Merchant's premises in favor of CBSG. Upon breach of any provision in this

Merchant Initials _____

Page 11                                          Case ID: 190501349

DocuSign Envelope ID: 4EDB3A8C-C20C-4DB3-9CFC-071750CBCEA8

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

paragraph 1.13, PURCHASER may exercise its rights under such assignment of lease.

**Protection 7.** PURCHASER may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account.

**Protection 8.** In the event Merchant changes or permits the change of the Processor approved by CBSG, or adds an additional Processor, in violation of Section 1.11 above, CUSG shall have the right, without waiving any of its rights and remedies and without notice to Merchant, to notify the new or additional Processor of the sale of the Receipts hereunder and to direct such new or additional Processor to make payment directly to CBSG of all or any portion of the amount received by such Processor.

**1.14 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes PURCHASER to disclose information concerning Merchant's and each Owner's credit standing (including credit bureau reports that PURCHASER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against PURCHASER or any of its affiliates relating to any (i) investigation undertaken by or on behalf of PURCHASER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.15 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by PURCHASER, including this Agreement and any other PURCHASER documentation (collectively, "Confidential Information") are proprietary and confidential information of PURCHASER. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PURCHASER to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.13.

**1.16 D/B/A's** Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transactions between PURCHASER and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**II. MERCHANT REPRESENTATIONS, WARRANTIES AND COVENANTS** Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Bank and financial statements, and future statements furnished to PURCHASER, fairly represent the financial condition of Merchant at such dates, Merchant has a continuing, affirmative obligation to advise PURCHASER of any material or adverse change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own,

operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to enter and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant will maintain business-interruption insurance naming CBSG as loss payee and additional insured in amounts and against risks as are satisfactory to PURCHASER and shall provide PURCHASER proof of such insurance upon request.

**2.5 Electronic Check Processing Agreement.** Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without PURCHASER's prior written consent. Any such change shall be a material breach of this Agreement.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PURCHASER or change any of its places of business.

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, person firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.** As of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has not been an involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 2 and 3 are immediately invoked.

**2.10 Working Capital Funding.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than PURCHASER.

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement FOR BUSINESS PURPOSES ONLY and not as a consumer for personal, family or household purposes.

**2.13 Default under Other Contracts.** Merchant's execution and/or performance under this Agreement

will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.14 3rd Party Negotiators with Regard to This Agreement and the Obligations Herein.** Merchant hereby agrees not to retain any 3rd party negotiators, consolidators, or credit relief agencies with regard to its obligations under the terms of this Agreement. Merchant will maintain and allow direct communication with PURCHASER at all times during the course of this Agreement and shall not engage any 3rd party to negotiate its obligations as stated in this Agreement. Should Merchant violate this subsection 2.14, Merchant will be liable for the additional fee as specified in the attached Appendix A.

**III. EVENTS OF BREACH OF REPRESENTATIONS, WARRANTIES, AND COVENANTS AND REMEDIES**

**3.1 Event of Breach of Representations, Warranties and Covenants** The occurrence of any of the following events shall constitute an "Event of a Breach of Representations, Warranties, and Covenants" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made, (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors, or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by MERCHANT; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (h) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of PURCHASER; (j) Merchant shall change its depositing account without the prior written consent of PURCHASER; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (l) Merchant shall engage a third party to renegotiate the terms of this Agreement on Merchant's behalf, (m) Merchant shall engage a third party in an attempt to cease direct communication and/or contact with PURCHASER; or (n) Merchant shall default under any of the terms, covenants and conditions of any other agreement with PURCHASER.

**3.2 Remedies.** In case any Event of a Breach of Representations, Warranties and Covenants, Default occurs and is not waived pursuant to Section 6 hereof, PURCHASER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder or any other legal or equitable right or remedy. IN THE EVENT OF VIOLATION OF THE REPRESENTATIONS AND WARRANTIES BY MERCHANT, PURCHASER may also file a Complaint or Confession of Judgment pursuant to the Warrant of Attorney contained herein. All rights, powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by PURCHASER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3 Consent to Sale/Transfer of Interest.** In event of MERCHANT breach of warranties, covenants and

Page 4

Merchant Initials _____

CBSG

22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

representations under this Agreement, Merchant consents to PURCHASER's sale or transfer of its remaining interests in MERCHANT's receivables to a third party buyer of defaulted financial obligations and instruments.     More specifically, MERCHANT recognizes PURCHASER's authority to sell its interests in said receivables to New York Unity Factor, LLC ("NYUF") which MERCHANT authorizes to pursue legal remedies in NYUF's home State of New York in the event of a breach of the warranties, covenants, and representations stated under this Agreement.

3.4 WARRANT OF ATTORNEY TO CONFESS JUDGMENT. UPON THE OCCURRENCE OF A VIOLATION OF THE REPRESENTATIONS AND WARRANTIES MADE HERETOFORE BY MERCHANT, MERCHANT IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE UNDER THIS MERCHANT AGREEMENT OR ANY ACCOMPANYING DOCUMENTS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO TEN PERCENT (10%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEYS' COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEY'S FEES AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS MERCHANT AGREEMENT "ATTORNEYS' FEES AND COLLECTION COSTS." TO THE EXTENT PERMITTED BY LAW, MERCHANT: (1) WAIVE THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THE VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVE AND RELEASE ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREINAFTER ENACTED; AND (3) RELEASE ALL ERRORS IN SUCH PROCEEDINGS.   IF A COPY OF THIS MERCHANT AGREEMENT, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF PURCHASER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL MERCHANT AGREEMENT AS A WARRANT OF ATTORNEY.  THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS PURCHASER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS BUSINESS CASH ADVANCE AND SECURITY AGREEMENT SHALL BE A SUFFICIENT WARRANT THEREFORE, PURCHASER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE AMOUNTS OWING HEREUNDER,

WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME AMOUNTS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST THE MERCHANT HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON MERCHANT'S BEHALF FOR ANY REASON, PURCHASER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR ANY PART OR ALL OF THE AMOUNTS OWED HEREUNDER, AS PROVIDED FOR HEREIN, IF DOING SO WILL CURE ANY ERRORS AND DEFECTS IN SUCH PRIOR PROCEEDINGS.

3.4.1 NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY MERCHANT IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT RECOURSE TO THE MERCHANT AND THE MERCHANT'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

3.5 Costs. Merchant shall pay to PURCHASER all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of PURCHASER's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees.

3.6 Required Notifications. Merchant is required to give PURCHASER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PURCHASER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

IV. MISCELLANEOUS

4.1 Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PURCHASER.

4.2 Assignment. PURCHASER may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3 Notices. All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 Waiver Remedies. No failure on the part of PURCHASER to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 Merchant/Guarantor(s) hereof from transfer. This Agreement shall be binding upon and inure to the benefit of Merchant, PURCHASER and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER which consent may be withheld in PURCHASER's sole discretion. PURCHASER

reserves the rights to assign this Agreement with or without prior written notice to Merchant or Guarantor(s)

4.6 Governing Law/Jurisdiction/Venue for disputes. All signatories to this Agreement consent that this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PURCHASER so elects, be instituted in the Court of Common Pleas, Philadelphia County, Federal Court for the Eastern District of Pennsylvania, or the Philadelphia County Municipal Court, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum.

4.7 Survival of Representation, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated

4.8 Severability in case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9 Entire Agreement. Any purports hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement herein embody the entire agreement between Merchant and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENT-ATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION

Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: 4EDBMA8C-C20C-4D83-9CFC-071759C6CEA6



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-305-7562

(NOT WITHSTANDING ANY OTHER PROV-
ISION IN THIS AGREEMENT); AND (2) THE
PARTY WHO INITIATES OR PARTICIPATES
AS A MEMBER OF THE CLASS WILL NOT
SUBMIT A CLAIM OR OTHERWISE PART-
ICIPATE IN ANY RECOVERY SECURED
THROUGH THE CLASS OR REPRESENT-
ATIVE ACTION.

4.12 Counterparts & Facsimile/Email Signatures.
This Agreement may be executed in any number of
counterparts each of which shall be deemed to be an
original, all of which together shall be deemed one and
the same instrument Further, facsimile and email
signatures shall be deemed to be originals for all
purposes.

Merchant Initials [ W ]

Case ID: 190501349

DocuSign Envelope ID: 4E0B3A8C-C20C-4083-9CFC-071769CBCEA6



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7362

Seller/Merchant's Legal Name: HMC INCORPORATED DBA HMC INCORPORATED

Physical Address: 77190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046

FED ID # (Merchant): 52-2085467

## SECURITY AGREEMENT

**Security Interest.** To secure SELLER/MERCHANT'S performance obligations to PURCHASER under the "Factoring Agreement", SELLER/MERCHANT hereby grants to PURCHASER a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by SELLER/MERCHANT; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral")

**Cross-Collateral.** To secure MERCHANT's payment and performance obligations to PURCHASER under this Security Agreement (the "Agreement"), MERCHANT hereby grants PURCHASER a security interest in ___ (the "Additional Collateral"). MERCHANT understands that PURCHASER will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement.

SELLER/MERCHANT acknowledge and agree that any security interest granted to PURCHASER under any other agreement between SELLER/MERCHANT and PURCHASER (the "Cross-Collateral") will secure the obligations hereunder and under the FACTORING Agreement.

SELLER/MERCHANT agrees to execute any documents or take any action in connection with this Agreement as PURCHASER deems necessary to perfect or maintain PURCHASER'S first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. SELLER/MERCHANT hereby authorizes PURCHASER to file any financing statements deemed necessary by PURCHASER to perfect or maintain PURCHASER's security interest, which financing statement may contain notification that SELLER/MERCHANT have granted a negative pledge to PURCHASER with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien or may be tortuously interfering with PURCHASER's rights. SELLER/MERCHANT shall be liable for and PURCHASER may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by PURCHASER in protecting, preserving and enforcing PURCHASER's security interest and rights.

**Negative Pledge.** SELLER/MERCHANT agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** PURCHASER shall have the right to cure SELLER/MERCHANT default in its payment of rent on the following terms. In the event SELLER/MERCHANT is served with papers in an action against SELLER/MERCHANT for nonpayment of rent or for summary eviction, PURCHASER may execute its rights and remedies under the Assignment of Lease. SELLER/MERCHANT also agrees that PURCHASER may enter into an agreement with SELLER/MERCHANT landlord giving PURCHASER the right: (a) to cure SELLER/MERCHANT'S premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign SELLER/MERCHANT'S lease to another qualified SELLER/MERCHANT capable of operating a business comparable to SELLER/MERCHANT'S at such premises.

**Remedies.** Upon any Event of Default, PURCHASER may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise

SELLER/MERCHANT
BY: KARA DIPIETRO, OWNER

Name/Title(Signature)

Merchant Initials ____        Merchant Initials ____

Case ID: 190501349

DocuSign Envelope ID: 4E0B3A0C-C29C-4D83-9CFC-071759CBCEA6



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-303-7362

DISCLOSURE FOR CONFESSION OF JUDGMENT

AFFIANT:        KARA DIPIETRO

OBLIGEE:        Complete Business Solutions Group, Inc. d/b/a Par Funding

The undersigned have executed, and/or is executing, on even date herewith, one or more of the following, instruments under which the Merchant is obligated to repay monies to Obligee:

1.    Factoring Agreement dated DECEMBER 19, 2018; and

A.    THE MERCHANT ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY ENTER JUDGMENT BY CONFESSION AGAINST THE MERCHANT, BEING FULLY AWARE OF THE MERCHANT'S RIGHTS TO PRIOR NOTICE AND A HEARING ON THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT MAY BE ASSERTED AGAINST THE MERCHANT BY OBLIGEE THEREUNDER BEFORE JUDGMENT IS ENTERED, THE UNDERSIGNED HEREBY FREELY, KNOWINGLY, AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S ENTERING JUDGMENT AGAINST THE MERCHANT BY CONFESSION PURSUANT TO THE TERMS THEREOF.

B.    THE UNDERSIGNED ALSO ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY, AFTER ENTRY OF JUDGMENT AND WITHOUT EITHER NOTICE OR A HEARING, FORECLOSE UPON, ATTACH, LEVY, OR OTHERWISE SEIZE PROPERTY OR PROCEED AGAINST THE INTERESTS OF THE MERCHANT IN PROPERTY (REAL OR PERSONAL) IN FULL OR PARTIAL PAYMENT OR SATISFACTION OF THE JUDGMENT OR JUDGMENTS. BEING FULLY AWARE OF THE MERCHANT'S RIGHTS AFTER JUDGMENT IS ENTERED (INCLUDING THE RIGHT TO MOVE TO OPEN OR STRIKE THE JUDGMENT OR JUDGMENTS), THE UNDERSIGNED HEREBY FREELY, KNOWINGLY AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S TAKING SUCH ACTIONS AS MAY BE PERMITTED UNDER APPLICABLE STATE AND FEDERAL LAW WITHOUT PRIOR NOTICE TO THE MERCHANT.

C.    The Merchant hereby certifies that the financial accommodations being provided by the Obligee are for a business purpose, and not for personal, family or household use.

D.    The statements made in this Disclosure for Confession of Judgment are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

SELLER/MERCHANT
By: KARA DIPIETRO                           [Kara DiPietro]
                                            [Signature]

EIN# 52-2005467

SELLER/MERCHANT
By: KARA DIPIETRO                           [Kara DiPietro]
                                            [Signature]

SS# 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

Page 18                                Merchant Initials [KD] Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 4ED03A8C-C28C-4D83-9CFC-071769CBCEA6



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 866-505-7562

## GUARANTY

Personal Guaranty of Performance. The undersigned Guarantor(s) hereby guaranties to PURCHASER, SELLER/MERCHANT'S performance of all of the representations, and warranties made by SELLER/MERCHANT in this Agreement and the Factoring Agreement, as each Agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations") Guarantor's obligations are due at the time of any breach by Merchant of any representation or warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement.

Guarantor Waivers. In the event that SELLER/MERCHANT violates its representations and warranties under the FACTORING AGREEMENT, PURCHASER may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral PURCHASER may hold pursuant to this Agreement or any other guaranty

PURCHASER does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of (i) SELLER/MERCHANT'S violation of the representations and warranties of the FACTORING AGREEMENT at any renewal, extension or other modification of the FACTORING AGREEMENT, In addition, PURCHASER may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the FACTORING AGREEMENT or SELLER/MERCHANT's other obligations to PURCHASER; (ii) release SELLER/MERCHANT from its obligations to PURCHASER; (iii) sell, release, impair, waive or otherwise execute upon any collateral securing the Guaranteed Obligations ; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until all obligations are fulfilled under the FACTORING AGREEMENT and SELLER/MERCHANT'S other obligations to PURCHASER under the FACTORING AGREEMENT and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against SELLER/MERCHANT, any other guarantor, or any collateral provided by SELLER/MERCHANT or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation, (ii) reimbursement, (iii) performance, (iv) indemnification, or (v) contribution. In the event that PURCHASER must return any amount paid by SELLER/MERCHANT or any other guarantor of the Guaranteed Obligations because that person has become subject to a protecting under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THIS GUARANTY, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY GUARANTOR IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT RECOURSE TO THE GUARANTOR AND THE GUARANTOR'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

GUARANTOR ACKNOWLEDGEMENT. Guarantor acknowledges that; (i) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of his choice or has decided not to avail himself/herself of that opportunity.

JOINT AND SEVERAL LIABILITY. The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

By: KARA DIPIETRO, Individual Guarantor

SSN# 52-2005467

By: KARA DIPIETRO, Individual Guarantor

SS# 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

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY.

CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

Merchant Initials            Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 4EDB3A8C-C20C-4D83-9CFC-071759CBCEA6



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the FACTORING AGREEMENT. You should keep this important legal document for your records.

DISBURSEMENT OF BUSINESS CASH ADVANCE PROCEEDS: By signing below, Seller/Merchant authorizes PURCHASER to disburse the Cash Advance Proceeds less the amount of any applicable fees upon approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller/Merchant later identifies and is acceptable to PURCHASER) (hereinafter referred to as the "Designated Checking Account") in the disbursed amount set forth in the accompanying documents. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Merchant's depository bank a reasonable opportunity to act on it.

AUTOMATIC PAYMENT PLAN: Enrollment in PURCHASER's Automatic Payment Plan is required for approval. By signing below, Seller/Merchant agrees to enroll in the Automatic Payment Plan and authorizes PURCHASER to collect payments required under the terms of Seller/Merchant Agreement by initiating ACH debit entries in the Designated Checking Account in the amounts and on the dates provided in the payment schedule set forth in the accompanying Seller/Merchant Agreement. Seller/Merchant authorizes PURCHASER to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the payment schedule and any unpaid Fees. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Seller/Merchant's depository bank a reasonable opportunity to act on it. PURCHASER may suspend or terminate Seller/Merchant's enrollment in the Automatic Payment Plan immediately if Seller/Merchant fails to keep Seller/Merchant's designated checking account in good standing or if there are insufficient funds in Merchant's checking account to process any payment.

If Seller/Merchant revokes the authorization or PURCHASER suspends or terminates Seller/Merchant's enrollment in the Automatic Payment Plan, Seller/Merchant still will be responsible for making timely payments pursuant to the alternative payment methods described in the Seller/Merchant Agreement.

BUSINESS PURPOSE ACCOUNT: By signing below, Seller/Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

ACCOUNT CHANGES: Seller/Merchant agrees to notify PURCHASER promptly if there are any changes to the account and routing numbers of the Designated Checking Account.

MISCELLANEOUS: PURCHASER is not responsible for any fees charged by Seller/Merchant's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Merchant's account must comply with the provisions of U.S. law.

Signature: _____   Date: 12/19/2018   _____

Bank Name: _____

City: ON FILE   State: ON FILE   Zip: ON FILE

Routing Number: ON FILE

Account Number: ON FILE

Business Name on Account: ON FILE

Address on Account: ON FILE

Seller/Merchant Phone #: ON FILE   Tax ID Number: ON FILE

Email: k.dipietro@hmtincorporated.com

Signature: _____

Title: PRESIDENT & CEO

Page | 10

Merchant Initials _____   Merchant Initials _____

Case ID: 190801349

DocuSign Envelope ID: 4EUB3A8C-C20C-4D63-9CFC-071769CDCEA6



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

BANK ACCOUNT DISCLOSURE AFFIDAVIT

For the purpose of obtaining the Business Cash Advance evidence by the Merchant Agreement of this same date herewith (the "Business Cash Advance") from Complete Business Solutions Group, Inc., the undersigned Seller/Merchant hereby makes the following statement under penalty of law.

PLEASE SIGN OPTION ONE OR TWO

OPTION 1 – DISCLOSURE AND AUTHORIZATION FOR ADDITIONAL ACCOUNTS:

The Seller/Merchant hereby declares that in addition to the designated for ACH debit, the Seller/Merchant also has the following additional account(s) which he authorizes us to use in the event we are unable to debit from the designated account:

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account
**attach additional pages if necessary**

Seller/Merchant Signature _____ Dated _12/19/2018_

Seller/Merchant Signature _____ Dated _12/19/2018_

OPTION 2 – By signing below, the merchant swears, under penalty of law, that he has no account in any lending institution in addition to the one provided for ACH debit.

Seller/Merchant Signature _____ Dated _____

Seller/Merchant Signature _____ Dated _____

Page | 11                              Merchant Initials [ ]      Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 4EDB9A6C-C20C-4D63-9CFC-071758CUCEA6



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-1616        Fax: 888-305-7562

## TRADE REFERENCES

*Please provide a list of 3-5 professional references*

1. Name: _____
   Phone number:_____  Email Address: _____

2. Name: _____
   Phone number:_____  Email Address: _____

3. Name: _____
   Phone number:_____  Email Address: _____

4. Name: _____
   Phone number:_____  Email Address: _____

5. Name: _____
   Phone number:_____  Email Address: _____

*Merchant Initials*    *Merchant Initials*

Case ID: 190501349

DocuSign Envelope ID: 4EDB3A8C-C20C-4D83-8CFC-071759CBCEA8



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-303-7362

AUTHORIZATION TO RESUME ACH DEBITING FORM

NAME OF SELLER/MERCHANT:   Kara DiPietro

INFORMATION (To be filled out by the customer)

I authorize Company (as shown above) to resume electronically debiting my bank account as detailed below, including a non-sufficient fund fee if applicable, until the debt to the company is paid in full.

Full Name on Account:   Kara DiPietro

Account #:   ON FILE                        Routing #:   ON FILE

Account Type (select one):    Checking  ☐        Savings  ☐

Account Class (select one):    Consumer Account  ☐        Business Account  ☐

Payment amount: _____        Number of Payments: _____

Date of next payment: _____        Frequency of payment: _____

I understand that I may cancel this authorization by contacting the company at least five (5) business days prior to the payment due date. I further understand that canceling my ACH authorizations does not relieve me of the responsibility of paying my account in full, and that if I cancel or revoke this authorization before the debt is paid in full, the Company may take additional actions including legal actions to secure the debt.

Customer signature:   _Kara DiPietro_                        Date:   12/19/2018

Customer Printed Name:   Kara DiPietro

Customer contact Telephone #: _____

Customer signature: _____                        Date: _____

Customer Printed Name: _____

Customer contact Telephone #: _____

Merchant Initials   [KD]   Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 4E0B3AAC-C28C-4D83-8CFC-071759CBCEA6



22 N. 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-305-7562

Dear Client,

Thank you for accepting this offer from Complete Business Solutions Group D/b/a Par Funding   We look forward to being your factoring partner for as long as you need

Daily ACH Program;

Complete Business Solutions Group will require viewing access to your bank account prior to funding as part of our underwriting process, as well as during the time you have a balance with our company.

Please be assured that we carefully safeguard your confidential information and only essential top level personnel will have access to it.

Please fill out the form below with the information necessary to access your account.

**Be sure to indicate capital or lower case letters.

NAME OF BANK: _____ ON FILE _____

BANK PORTAL WEBSITE: _____ ON FILE _____

USERNAME: _____ ON FILE _____

PASSWORD: _____ ON FILE _____

SECURITY QUESTION/ANSWER 1: _____ ON FILE _____

SECURITY QUESTION/ANSWER 2: _____ ON FILE _____

SECURITY QUESTION/ANSWER 3: _____ ON FILE _____

ANY OTHER INFORMATION NECESSARY TO ACCESS YOUR ACCOUNTS:

Merchant Initials _____     Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 4EDB3A8C-C20C-4D03-8CFC-071769CBCEA6



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 213-922-2636          Fax: 888-305-7562

## APPENDIX A: THE FEE STRUCTURE

1.  Origination Fee: $TO BE DETERMINED to cover underwriting and related expenses

2.  ACH Program Fee - $WAIVED -- The ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs;

3.  NSF Fee - $35.00 (each) - Up to FOUR TIMES ONLY before a default is declared;

4.  Rejected ACH - $100.00 - If a merchant directs the bank to reject our debit ACH;

5.  Bank Change Fee - $50.00 - If a merchant requires a change of account to be debited requiring us to adjust our system;

6.  Blocked Account - $250.00 - If a merchant blocks CBSG's ACH debit of the Account, bounces more than 4 debits of the Account or simultaneously uses multiple bank accounts or credit card processors in process its receipts;

7.  Default Fee - $500.00 default fee - If a merchant changes bank accounts or switches to another credit card processor without CBSG's consent, or commits another default pursuant to the Agreement;

8.  3rd Party Intermediary Fee -- $5,000.00 deposit toward reasonable related expenses incurred by PURCHASER.  If PURCHASER receives a communication from a 3rd party debt relief reorganizer entity or individual which has been retained by Merchant and which contacts PURCHASER on Merchant's behalf seeking to redirect communications (related to the obligation contained in this Agreement) to itself/themselves and away from Merchant. This fee shall be used to cover Purchaser's reasonable expenses in retaining counsel or other parties to handle this additional administration required by this retention of the intermediary by PURCHASER. Any portion of the fee that is not used by PURCHASER for this purpose shall be returned to Merchant at the conclusion of this Factoring Agreement or related legal action.

9.  Collections Expense -- In the event of default, Seller / Merchant shall be responsible for all reasonable costs of collections, including, but not limited to, counsel fees, filing fees and any other fees which may be incurred

10. Miscellaneous Service Fees -- Merchant shall pay certain fees for services related to the origination and maintenance of accounts.  Each Merchant shall receive their funding electronically to their designated bank account and will be charged $WAIVED for a Fed Wire.  The current charge for the underwriting, UCC, ACH Program and origination of each Merchant will be paid from the funded account.  Merchant will be charged $100.00 for every additional change of their operating bank account once they are active with CBSG.  Additional copies of prior monthly statements will incur a fee of $10.00 each.

11. Notary Fee - $99.00 to cover online notary expenses

12. Risk Assessment Fee - $WAIVED

13. UCC Fee - $WAIVED

Merchant Signature _____    Name: Kara DiPietro    ⟵

Merchant Signature _____    Name: Kara DiPietro    ⟵

*CBSG June 9.13.2018 Agreement*

Page | 15                                     Merchant Initials _____  Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: 4EDB3A8C-C2DC-4D03-9CFC-071769CBCEA6



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

### MANDATORY JOINT AFFIDAVIT OF CONFESSION OF JUDGEMENT

INSTRUCTIONS:

SIGN AND NOTARIZE THIS SECTION OF THE AGREEMENT, SEND THE ORIGINAL COPY TO:

PAR FUNDING
22 N 3RD STREET
PHILADELPHIA, PA 19106

C/O UNDERWRITING

*Merchant Initials* _____ *Merchant Initials* _____ .

Case ID: 190501349

DocuSign Envelope ID: 4BDB3ABC-C20C-4DB3-9CFC-071750CBCEA6



22 N 5TH Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2036        Fax: 888-305-7353

| NEW YORK UNITY FACTOR, LLC | Index No. |
|---|---|
| Plaintiff, | AFFIDAVIT OF CONFESSION OF JUDGMENT |
| -against- | |
| HMC INCORPORATED D/B/A HMC INCORPORATED and KARA DIPIETRO, | |
| Defendant(s) | |

STATE OF _____ )
                                                    )    ss.:
COUNTY OF _____ )

KARA DIPIETRO, being duly sworn, deposes and says:

1.    I am a principal, owner, and an officer of HMC INCORPORATED D/B/A HMC

INCORPORATED ("Merchant Defendant"), a CORPORATION located at 77190 OAKLAND MILLS RD #10,

COLUMBIA, MD 21046, in the County of _____, and as such, I have the authority to act on behalf of

Merchant Defendant.

2.    I reside at 1836 LANDRAKE RD, TOWSON, MD 21204, in the County of _____.

3.    I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4.    Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of

Plaintiff and against Defendants in the Federal District Court for the _____, Court of Common Jurisdiction for

the County of _____ in the State of _____ the sum of $5,446,000.00 less any payments timely

made pursuant to the secured Merchant Agreement dated DECEMBER 19, 2018, plus legal fees to Plaintiff

calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at

the rate of 9% per annum from the date of default, or the highest amount allowed by law, whichever is greater. Such

Merchant Initials _____    Merchant Initials _____

DocuSign Envelope ID: 4EDB3A8C-C20C-4D05-9CFC-071759CBCEA0



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-3636         Fax: 888-305-7362

amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

5.       In addition, I hereby confess judgment, individually and personally, jointly and severely, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the _____ Court of Common Jurisdiction for the County of _____ in the State of _____, against me personally in the sum of $5,446,000.00 less any payments timely made pursuant to the Merchant Agreement dated DECEMBER 19, 2018, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.       This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated DECEMBER 19, 2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated DECEMBER 19, 2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.       Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

DocuSign Envelope ID: 4E0B3A8C-C20C-4D83-0CFC-071759CBCEA0



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-305-7362

8.      If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.      I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this ____ day of ____ ____, 2018.

By:_____
KARA DIPIETRO, individually, and on behalf of HMC INCORPORATED D/B/A HMC INCORPORATED

Sworn to before me this
____ day of _____, 2018.

_____
Notary Public

Page | 19                                           Merchant Initials ____ ____ Merchant Initials ____ ____

Case ID: 190501349

DocuSign Envelope ID: 4EDB3ABC-C20C-4083-9CFC-071769CBCEA5



22 N 3ʳᵈ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7362

DECEMBER 19, 2018

Attn: Court Orders & Levies Dept.

Re: *HMC INCORPORATED, et al.*
Supreme Court of the State of New York, Richmond County  Index No.
*Information Subpoena and Restraining Notice - RELEASE*

Complete Business Solutions Group, Inc. d/b/a Par Funding ("Funder"), Plaintiff/Judgment
Creditor, and KARA DIPIETRO ("KARA") and HMC INCORPORATED ("HMC INCORPORATED"),
Defendants/Judgment Debtors (collectively, "the Parties"), hereby authorize
_____, N.A. and/or related entities (collectively, "_____, N.A.") to release
($_____) (the "Release Amount") from the funds currently held in reserve per the Information
Subpoena with Restraining Notice ("IS/RN"), payable as follows:

Via check                                          Via wire to:

|  |  |
|---|---|
|  |  |

HMC INCORPORATED and KARA agree to indemnify and hold harmless
_____, N.A. and its officers, directors, agents and employees from and against claims, damages,
losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from this release
and/or the IS/RN. Upon tender of the Release Amount, Funder consents to the immediate RELEASE of the
remainder and/or account(s) being held on reserve to HMC INCORPORATED, KARA, and/or its/their
principals, agents, heirs and assigns.

10.    AGREED AND ACCEPTED:

By: [signature]
     Kara White
KARA DIPIETRO_____(Name)
Owner/Manager/Agent_____(Title)
individually, and on behalf of *HMC*
*INCORPORATED*

By:_____
Norman M. Valz, Esq.
*Attorney for Plaintiff/Judgment*
*Creditor, NEW YORK UNITY*
*FACTOR LLC and*
Complete Business Solutions Group, Inc.
205 Arch Street – 2ⁿᵈ Floor
Philadelphia, PA 19106
(215)          (tel.)

Page | 20

Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 4EDB3A6C-C20C-4D03-9CFC-07176GCBOEA6

CBSG
CAPITAL BUSINESS
SOLUTIONS GROUP

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

State of_____)
                                    ) ss:
County of_____)

On the_____day of_____, in the year 2018, before me, the undersigned
Notary Public in and for said state, personally appeared KARA DIPIETRO, personally known to me or
proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the
within instrument and acknowledged to me that she/he executed the same in her/his capacity, and that by
her/his signature on the instrument, the individual, or the person upon behalf of which the individual
acted, executed the instrument.

_____
NOTARY PUBLIC

Merchant Initials [KD]          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 4E0B3A4C-C20C-4D83-8CFC-071765CBCEA6

22 N 3ʳᵈ Steet Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

Merchant Initials          Merchant Initials

Filed and Attested by the
Office of Judicial Records
14 MAY 2019 01:16 am
A. SILIGRINI

# EXHIBIT "E"

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4599-BAD0-041827979AA9



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-3636                 Fax: 888-305-7562

## ACKNOWLEDGEMENT

I, KARA DIPIETRO, hereby acknowledge:

> There has been no promise of additional capital in 30 days from funding by CBSG or any ISO (broker).
>    - Our policy is that merchants can seek additional capital from us when they have paid 55% of the Receipts Purchased Amount.
> That CBSG does not permit outside fees and that no one has discussed additional fees with me. The fee amount for this agreement is $30,500.00, which will be held back from the funding amount.
> There has not been and will not any contact from Third Party debt companies regarding this Factoring Agreement dated OCTOBER 3, 2018.

I, the undersigned, acknowledge that I am in agreement with these items, which are also described in detail within the pages of this document.

Signature: *Kara DiPietro*          Date: 10/3/2018 11:49:09 AM PDT

I, KARA DIPIETRO, hereby acknowledge:

> Additional Funding/"Stacking" Fee: 15% of Advance Amount – If the MERCHANT/GUARANTOR takes additional funding at any point after being funded by CBSG, without prior notice to and consent by CBSG, a fee amounting to 15% of the amount of the advance shall automatically be added to the payback amount of the advance. CBSG reserves the right to declare the account in default, at any point after learning such "stacking" has occurred; regardless of the payments made by the MERCHANT/GUARANTOR, with the filing of the Confession of Judgement in a court of competent jurisdiction.

I, the undersigned, acknowledge that I am in agreement with these items, which are also described in detail within the pages of this document.

Signature: *Kara DiPietro*          Date: 10/3/2018 11:49:09 AM PDT

Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4500-BA00-041B27670AA9



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-2262

## FACTORING AGREEMENT

Dated the 3RD day of OCTOBER, 2018 by and between Complete Business Solutions Group, Inc. ("CBSG" and/or "PURCHASER") and the "SELLER/MERCHANT" listed below (as "Seller/Merchant" or "the Merchant").
Business Legal Name: HMC INCORPORATED
DBA: HMC INCORPORATED
Type of entity (check one) [] Corporation  [] LLC  [] Limited Partnership []  Limited Liability Partnership  [] Sole Proprietor
Physical Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Mailing Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Fed ID#: 52-2005467

### PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Seller/Merchant's customers' and/or other third party payers (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.

THIS IS A FACTORING AGREEMENT WITH RECOURSE.
The Purchased Amount shall be paid to CBSG by Seller/Merchant's irrevocably authorizing only one depositing account acceptable to CBSG (the "Account") to remit the Daily Specified Amount from the Seller/Merchant's receipts until such time as CBSG receives payment in full of the Receipts Purchased Amount. In consideration of servicing this account, the Seller/Merchant hereby authorizes CBSG to ACH debit the "Specified Daily Amount" from the merchant's bank account, as an approximation of the base payment due under the Specified Percentage. It is the Seller/Merchant's responsibility to provide bank statements for any and all bank accounts for the Merchant to reconcile the daily payments made against the Daily Specified Amount. Failure to provide all of their bank statements in a timely manner or missing in a month shall forfeit all rights to future reconciliations. CBSG may, upon Seller/Merchant's request, adjust the amount of any payment due under this Agreement at CBSG's sole discretion and as it deems appropriate in servicing this Agreement. Seller/Merchant warrants that it will ensure that funds adequate to cover the amount to be debited by CBSG remain in the account. Seller/Merchant will be held responsible for any fees incurred by CBSG resulting from a rejected ACH attempt or an event of default (See Appendix A). CBSG is not responsible for any overdrafts or rejected transactions in the Seller/Merchant's account which may result from CBSG's scheduled ACH debit under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between CBSG and Seller/Merchant, upon the violation of any provision contained in Sections I and II of the FACTORING AGREEMENT, shall be deemed a breach of the representations and warranties contained herein. A list of all fees applicable under this FACTORING AGREEMENT is contained in Appendix A

Purchase Price: $1,527,023.13 Specified Percentage: 18% Daily Specified Amount: $5,852.81 for 44 days    Receipts Purchased Amount: $1,271,146.81
*Deal #43 / Invoices: 2602-01-04, 2946-05, 3010-01, 2965-16, 2886-16, 3012-01, 3917-04, 7602-01-05, 3031-01, 1020-01, 3024-01, 3020-01, 3026-01, 3033-01, 3040-01, 3032-01, 3033-01, 3000-02, 2505-15, 2946-03, 3846-06, 1020-01, 3037-01, 3029-01, 3033-01
*After 44 Days, Principal to be returned or we will resume factor rate

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGES 2 THROUGH 12 HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS FACTORING AGREEMENT.

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER              *Kara DiPietro*                    →
Name and Title                        (Seller/Merchant Signature)

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER              *Kara DiPietro*                    →
Name and Title                        (Seller/Merchant Signature)

COMPLETE BUSINESS SOLUTIONS GROUP, INC.

By: _____
        Company Officer

To the extent set forth herein, each of the parties is obligated upon his/her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below.  Each individual executing this Agreement represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to honor the terms of this obligation and that the information provided herein and in all of CBSG documents, forms and recorded interviews is true, accurate and complete in all respects.  If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements and the representations and warranties contained herein between Merchant and CBSG and CBSG shall be entitled to all remedies available under law.  Merchant and each of the above-signed Officers/Owners authorizes CBSG, its agents and representatives and any credit-reporting agency engaged by CBSG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/Owner(s) continue to have any obligation owed to CBSG.

ANY MISREPRESENTATION MADE BY SELLER/MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

*[initials]*

Page | 2                                                        Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F9C1-4509-9AD0-34152707BAA9

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

| | | | | |
|---|---|---|---|---|
| 08/27/2018 | 2662-01-04 | | 2662-01-MD-PG Co Courthouse-Rich Moe | 24,703.41 |
| 08/27/2018 | 2946-06 | | 2946-SC-MUSC - Robins & Morton | 40,219.94 |
| 08/31/2018 | 3030-01 | | 3030-DC-DC Court | 277.59 |
| 08/31/2018 | 2965-18 | | 2965-Capitol One - DPR Const | 21,505.00 |
| 09/01/2018 | 2806-16 | | 2806-MD-Point St Apts - Armada Hoffler | 170,697.34 |
| 09/13/2018 | 3017-03 | | 3017-MD-JHU Silell | 7,654.45 |
| 09/13/2018 | 3017-04 | | 3017-MD-JHU Silell | 1,900.94 |
| 09/18/2018 | 2662-01-05 | | 2662-01-MD-PG Co Courthouse-Rich Moe | 31,853.68 |
| 09/19/2018 | 3031-01 | 2050 NE 207 St, Aventura | 3031-FL-Solidcore Aventura FL-PWC | 12,137.79 |
| 09/19/2018 | 3020-01 | | 3020-MD-Residence Inn BWIHB | 2,655.00 |
| 09/19/2018 | 3024-02 | | 3024-VA-PRCS HQ 742 Miller Dr | 40,953.13 |
| 09/19/2018 | 3020-01 | | 3020-MD-Residence Inn BWIHB | 2,655.00 |
| 09/20/2018 | 3026-01 | | 3026-VA-Booz Allen HITT | 630.00 |
| 09/21/2018 | 3033-01 | | 3033-MD-NFCU Fort Meade-Morgan Keller | 1,129.43 |
| 09/21/2018 | 3000-07 | | 3000-MD-M & T Bank Stadium Phase 2 | 40,421.22 |
| 09/21/2018 | 3032-01 | | 3032-MD-HCGH Cath Lab Reno-Mazzuca | 3,077.02 |
| 09/21/2018 | 3033-01 | | 3033-MD-NFCU Fort Meade-Morgan Keller | 1,129.43 |
| 09/21/2018 | 3000-07 | | 3000-MD-M & T Bank Stadium Phase 2 | 40,421.22 |
| 09/25/2018 | 2806-16 | | 2806-MD-Point St Apts - Armada Hoffler | 52,269.49 |
| 09/27/2018 | 2946-06 | | 2946-SC-MUSC - Robins & Morton | 175,042.60 |
| 10/01/2018 | 2946-06 | | 2946-SC-MUSC - Robins & Morton | 140,972.01 |
| 10/02/2018 | 3020-02 | | Residence Inn BWI Airport | 136,060.00 |
| 10/02/2018 | 3022-01 | | Mitchell Courthouse Building | 233,000.00 |
| 10/02/2018 | 3029-01 | | Harford County Courthouse | 275,000.00 |
| 10/02/2018 | 3033-01 | | NFCU-Fort Meade | 53,069.52 |
| | | | | 1,627,023.11 |

Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4606-BA00-541027970AA9

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-305-7562

## FACTORING AGREEMENT TERMS AND CONDITIONS

**1. GENERAL TERMS OF AGREEMENT (MUTUAL REPRESENTATIONS AND WARRANTIES)**

**1.1 Electronic Fund Transfer.** Upon request from PURCHASER ("Freemarket CBSG or Purchaser") Seller/Merchant ("hereinafter Merchant") shall execute such forms or agreements acceptable to PURCHASER, with forms acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER, and/or its authorized agent with all the information, authorizations and passwords necessary for verifying Merchant's receivable, receipts and deposits into the account Merchant shall authorize PURCHASER and/or it's agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the SPECIFIED DAILY AMOUNT by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER.

**1.2 Deposit Agreement.** Seller/Merchant shall execute an agreement (the "Deposit Agreement") acceptable to PURCHASER, with a Bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER and/or its authorized agent with all of the information, authorizations and passwords necessary for Merchant's receivables, receipts and deposits into the account. Merchant shall authorize PURCHASER and/or it's agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER.

**1.3 Term of Agreement.** This Agreement shall have a term as set forth above. Upon the expiration of the term, this Agreement shall automatically renew for successive similar terms, provided, however, that during the renewal term(s) Merchant may terminate this Agreement upon ninety days' prior written notice (effective upon receipt) to PURCHASER. The termination of this Agreement shall not affect Merchant's responsibility to satisfy all outstanding obligations to PURCHASER at the time of termination.

**1.4 Future Purchases.** PURCHASER reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

**1.5 Financial Condition.** Merchant authorizes PURCHASER and its agents to investigate their financial responsibility and history, and will provide to PURCHASER any financial or bank statements, tax returns, etc., as PURCHASER deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. PURCHASER is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.6 Transactional History.** Merchant authorizes their bank to provide PURCHASER with Merchant's banking or processing history to determine qualification or continuation in this program.

**1.7 Indemnification.** Merchant jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by PURCHASER for monies owed to PURCHASER from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by PURCHASER.

**1.8 No Liability.** In no event will CBSG be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant.

**1.9 Reliance on Terms.** Section 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, PURCHASER and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and serve them as a defense in any action.

**1.10 Sale of Receipts, Merchant and CBSG agree** that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PURCHASER to Merchant. Merchant agrees that the Purchase Price is in exchange for Future Receipts pursuant to this Agreement equals the fair market value of such Receipts. PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to PURCHASER with respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. IN NO EVENT SHALL THE AGGREGATE OF THE AMOUNTS RECEIVED BE DEEMED AS INTEREST HEREUNDER. In the event that a court determines that PURCHASER has charged or received interest hereunder, and that said amount is in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PURCHASER shall promptly refund to Merchant any interest received by PURCHASER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PURCHASER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. MERCHANT ACKNOWLEDGES THAT PENNSYLVANIA LAW APPLIES TO THE WITHIN AGREEMENT

**1.11 Monthly Statement of Merchant Cash Flow** Merchant hereby authorizes PURCHASER to initiate one or more ACH debits at the specified "Daily Retrieval Rate" from the Account as an approximation of the next payment due under the Specified Percentage. It is the Merchant's responsibility to provide financial information (e.g. bank statements, credit card processing statements, general ledger) regarding its gross receivables, to reconcile the daily payments made against the Specified Percentage, permitting PURCHASER to debit or credit the difference to Merchant on a monthly basis so that the Daily Retrieval Rate equals the Specified Percentage.

**1.12 Power of Attorney** Merchant irrevocably appoints PURCHASER as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to PURCHASER from Processor, or in the case of a violation by Merchant of Section 1.12 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading or assignment directing customers or account debtors to make payment directly to PURCHASER; and (v) to file any claims or take any action or institute any proceeding which PURCHASER may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.13 Protection Against Default.** Merchant represents and warrants that it will not violate Conditions (a) through (c) below and in the event of default thereunder the following Protections 1 through 3 may be invoked by PURCHASER, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the PURCHASER electronic check processor, (b) Merchant changes its arrangements with Processor in any way that is adverse to PURCHASER, (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor, (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of PURCHASER, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER, or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to PURCHASER at law, in equity or otherwise, pursuant to this Agreement.

**Protection 1** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2** Upon breach of ANY MATERIAL PROVISION OR BREACH OF REPRESENTATIONS AND WARRANTIES in this Agreement, PURCHASER may enter into confession of judgment (judgment) with the Clerk of the Court and execute thereon.

**Protection 3** Protection 2 relief collects a security interest in the Collateral as marked in Article III hereof

Merchant Initials ____

Page 14

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F8C1-4599-DAD0-34182707BAA9

**CBG**

22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

Protection 4. The entire Unpaid Purchase Amount shall become immediately refundable to PURCHASER from Merchant.

Protection 5. Purchaser may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which Purchaser shall recover judgment against Merchant, Merchant shall be liable for the full costs of PURCHASER'S legal action, including all reasonable attorneys' fees and court costs.

Protection 6. Merchant shall, upon execution of this Agreement, deliver to PURCHASER an executed assignment of lease at Merchant's premises in favor of CBSG. Upon breach of any provision in this paragraph 1.13, PURCHASER may exercise its rights under such assignment of lease.

Protection 7. PURCHASER may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account.

Protection 8. In the event Merchant changes or permits the change of the Processor approved by CBSG, or adds an additional Processor, in violation of Section 1.11 above, CBSG shall have the right, without waiving any of its rights and remedies and without notice to Merchant, to notify the new or additional Processor of the sale of the Receipts hereunder and to direct such new or additional Processor to make payment directly to CBSG of all or any portion of the amount received by such Processor.

1.14 Protection of Information. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes PURCHASER to disclose information concerning Merchant's and each Owner's credit standing (including bureau reports that PURCHASER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against PURCHASER or any of its affiliates relating to any (i) investigation undertaken by or on behalf of PURCHASER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.15 Confidentiality. Merchant understands and agrees that the terms and conditions of the products and services offered by PURCHASER, including this Agreement and any other PURCHASER documentation (collectively, "Confidential Information") are proprietary and confidential information of PURCHASER. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PURCHASER to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.15.

1.16 D/B/A's. Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PURCHASER and Merchant, including the filing of UCC-1 financing statements and other notices of filings.

II. MERCHANT REPRESENTATIONS, WARRANTIES AND COVENANTS Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:

2.1 Financial Condition and Financial Information. Bank and financial statements, and future statements

furnished to PURCHASER, fairly represent the financial condition of Merchant at such dates Merchant has a continuing, affirmative obligation to advise PURCHASER of any material or adverse change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.2 Governmental Approvals. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3 Authorization. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 Insurance. Merchant will maintain business-interruption insurance naming CBSG as loss payee and additional insured in amounts and against risks as are satisfactory to PURCHASER and shall provide PURCHASER proof of such insurance upon request.

2.5 Electronic Check Processing Agreement. Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without PURCHASER's prior written consent. Any such change shall be a material breach of this Agreement.

2.6 Change of Name or Location. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PURCHASER or change any of its places of business.

2.7 Daily Batch Out. Merchant will batch out receipts with the Processor on a daily basis.

2.8 Estoppel Certificate. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, person firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.9 No Bankruptcy. As of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 7 and 3 are immediately invoked.

2.10 Working Capital Funding. Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than PURCHASER.

2.11 Unencumbered Receipts. Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages,

security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

2.12 Business Purpose. Merchant is a valid business in good standing and is one of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement FOR BUSINESS PURPOSES ONLY and not as a consumer for personal, family or household purposes.

2.13 Default under Other Contracts. Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

2.14 3rd Party Negotiators with Regard to This Agreement and the Obligations Herein. Merchant hereby agrees not to retain any 3rd party negotiators, consolidators, or credit relief agencies with regard to its obligations under the terms of this Agreement. Merchant will maintain and allow direct communication with PURCHASER at all times during the course of this Agreement and shall not engage any 3rd party to negotiate its obligations as stated in this Agreement. Should Merchant violate this subsection 2.14, Merchant will be liable for the additional fees specific to the attached Appendix A.

III. EVENTS OF BREACH OF REPRESENTATIONS, WARRANTIES, AND COVENANTS AND REMEDIES

3.1 Events of Breach of Representations, Warranties and Covenants. The occurrence of any of the following events shall constitute an "Event of a Breach of Representations, Warranties, and Covenants" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by MERCHANT; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (g) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of PURCHASER; (j) Merchant shall change its depositing account without the prior written consent of PURCHASER; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (l) Merchant shall engage a third party to renegotiate the terms of this Agreement on Merchant's behalf; (m) Merchant shall engage a third party in an attempt to cease direct communication and/or contact with PURCHASER; or (n) Merchant shall default under any of the terms, covenants and conditions of any other agreement with PURCHASER.

3.2 Remedies. In case any Event of a Breach of Representations, Warranties and Covenants, Default occurs and is not waived pursuant to Section 4.4 hereof, PURCHASER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder or any other legal or equitable

Merchant Initials: _____

DocuSign Envelope ID: B1724E30-F0C1-4589-BA00-341B2797BAA9

CBSG

22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-3562

right or remedy. IN THE EVENT OF VIOLATION OF THE REPRESENTATIONS AND WARRANTIES BY MERCHANT, PURCHASER may also file a Complaint in Confession of Judgment pursuant to this Warrant of Attorney contained therein. All rights, powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by PURCHASER after the occurrence of an Event of Default, and cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 Control to Sale/Transfer of Interest. In event of MERCHANT breach of warranties, covenants and representations under this Agreement, Merchant consents to PURCHASER's sale or transfer of its remaining interest in MERCHANT's receivables to a third party buyer of defaulted financial obligations and instruments.   More specifically, MERCHANT recognizes PURCHASER's authority to sell its interests in said receivables to New York Unity Factors, LLC ("NYUF") which MERCHANT authorizes to pursue legal remedies in NYUF's home State of New York in the event of a breach of the warranties, covenants, and representations stated under this Agreement.

3.4 WARRANT OF ATTORNEY TO CONFESS JUDGMENT. UPON THE OCCURRENCE OF A VIOLATION OF THE REPRESENTATIONS AND WARRANTIES MADE HERETOFORE BY MERCHANT, MERCHANT IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE UNDER THIS MERCHANT AGREEMENT OR ANY ACCOMPANYING DOCUMENTS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO TEN PERCENT (10%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEY'S COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEY'S FEES AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS MERCHANT AGREEMENT "ATTORNEY'S FEES AND COLLECTION COSTS." TO THE EXTENT PERMITTED BY LAW, MERCHANT: (1) WAIVE THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVE AND RELEASE ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREINAFTER ENACTED; AND (3) RELEASE ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS MERCHANT AGREEMENT, VERIFIED BY AFFIDAVIT BY OR ON BEHALF OF PURCHASER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL MERCHANT AGREEMENT AS A WARRANT OF ATTORNEY.   THE AUTHORITY AND

POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS PURCHASER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS BUSINESS CASH ADVANCE AND SECURITY AGREEMENT SHALL BE A SUFFICIENT WARRANT THEREFOR. PURCHASER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE AMOUNTS OWING HEREUNDER, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME AMOUNTS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST THE MERCHANT HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON MERCHANT'S BEHALF FOR ANY REASON, PURCHASER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR ANY PART OR ALL OF THE AMOUNTS OWED HEREUNDER, AS PROVIDED FOR HEREIN, IF DOING SO WILL CURE ANY ERRORS AND DEFECTS IN SUCH PRIOR PROCEEDINGS.

3.41 NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY MERCHANT IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT RECOURSE TO THE MERCHANT AND THE MERCHANT'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

3.5 Costs. Merchant shall pay to PURCHASER all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of PURCHASER's remedies set forth in Section 4.2 above, including but not limited to court costs and attorneys' fees

3.6 Required Notifications. Merchant is required to give PURCHASER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PURCHASER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

IV. MISCELLANEOUS

4.1 Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PURCHASER.

4.2 Assignment. PURCHASER may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3 Notices. All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 Waiver Remedies. No failure on the part of PURCHASER to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise

of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 Merchant/Guarantor(s) barred from transfer. This Agreement shall be binding upon and inure to the benefit of Merchant, PURCHASER and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER which consent may be withheld in PURCHASER's sole discretion. PURCHASER reserves the rights to assign this Agreement with or without prior written notice to Merchant or Guarantor(s).

4.6 Governing Law/Jurisdiction/Venue for disputes. All signatories to this Agreement consent that this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regards to any applicable principals of conflicts of law Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PURCHASER so elects, be instituted in the Court of Common Pleas, Philadelphia County, Federal Court for the Eastern District of Pennsylvania, or the Philadelphia County Municipal Court, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum.

4.7 Survival of Representation, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.8 Severability. In case any of the provision in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9 Entire Agreement. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement herein embody the entire agreement between Merchant and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A

Page 16

Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4609-BAD0-341B2707BAA9



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-2562

REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12 Counterparts & Facsimile/Email Signatures. This Agreement may be executed in any number of counterparts each of which shall be deemed to be an original, all of which together shall be deemed one and the same instrument. Further, facsimile and email signatures shall be deemed to be originals for all purposes.

Merchant Initial

DocuSign Envelope ID: B1724E30-F0C1-4690-BAD0-341027970AA9



22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2616      Fax: 888-305-7562

Seller/Merchant's Legal Name: HMC INCORPORATED DBA HMC INCORPORATED

Physical Address: 3190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046

FED ID # (Merchant): 52-2005467

## SECURITY AGREEMENT

**Security Interest.** To secure SELLER/MERCHANT'S performance obligations to PURCHASER under the "Factoring Agreement", SELLER/MERCHANT hereby grants to PURCHASER a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by SELLER/MERCHANT; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral")

**Cross-Collateral.** To secure MERCHANT'S payment and performance obligations to PURCHASER under this Security Agreement (the "Agreement"), MERCHANT hereby grants PURCHASER a security interest in ___ (the "Additional Collateral") MERCHANT understands that PURCHASER will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement

SELLER/MERCHANT acknowledge and agree that any security interest granted to PURCHASER under any other agreement between SELLER/MERCHANT and PURCHASER (the "Cross-Collateral") will secure the obligations hereunder and under the FACTORING Agreement

SELLER/MERCHANT agrees to execute any documents or take any action in connection with this Agreement as PURCHASER deems necessary to perfect or maintain PURCHASER'S first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. SELLER/MERCHANT hereby authorizes PURCHASER to file any financing statements deemed necessary by PURCHASER to perfect or maintain PURCHASER'S security interest, which financing statement may contain notification that SELLER/MERCHANT have granted a negative pledge to PURCHASER with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien or may be unroundly interfering with PURCHASER'S rights. SELLER/MERCHANT shall be liable for and PURCHASER may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by PURCHASER in protecting, preserving and enforcing PURCHASER'S security interest and rights

**Negative Pledge.** SELLER/MERCHANT agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable

**Consent to Enter Premises and Assign Lease.** PURCHASER shall have the right to cure SELLER/MERCHANT default in the payment of rent on the following terms. In the event SELLER/MERCHANT is served with papers in an action against SELLER/MERCHANT for nonpayment of rent or for summary eviction, PURCHASER may execute its rights and remedies under the Assignment of Lease. SELLER/MERCHANT also agrees that PURCHASER may enter into an agreement with SELLER/MERCHANT landlord giving PURCHASER the right; (a) to enter SELLER/MERCHANT'S premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same, and (b) to assign SELLER/MERCHANT'S lease to another qualified SELLER/MERCHANT capable of operating a business comparable to SELLER/MERCHANT at such premises.

**Remedies.** Upon any Event of Default, PURCHASER may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise

SELLER/MERCHANT
BY: KARA DIPIETRO, OWNER

DocuSigned by:
_Kara DiPietro_
Name Title (Signature)

Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4599-BAD0-341627078AA9



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-383-7562

DISCLOSURE FOR CONFESSION OF JUDGMENT

AFFIANT:      KARA DIPIETRO

OBLIGEE:      Complete Business Solutions Group, Inc. d/b/a Par Funding

The undersigned have executed, and/or is executing, on even date herewith, one or more of the following instruments under which the Merchant is obligated to repay monies to Obligee:

1.      Factoring Agreement dated OCTOBER 3, 2018; and

A.      THE MERCHANT ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY ENTER JUDGMENT BY CONFESSION AGAINST THE MERCHANT   BEING FULLY AWARE OF THE MERCHANT'S RIGHTS TO PRIOR NOTICE AND A HEARING ON THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT MAY BE ASSERTED AGAINST THE MERCHANT BY OBLIGEE THEREUNDER BEFORE JUDGMENT IS ENTERED, THE UNDERSIGNED HEREBY FREELY, KNOWINGLY, AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S ENTERING JUDGMENT AGAINST THE MERCHANT BY CONFESSION PURSUANT TO THE TERMS THEREOF.

B.      THE UNDERSIGNED ALSO ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY, AFTER ENTRY OF JUDGMENT AND WITHOUT EITHER NOTICE OR A HEARING, FORECLOSE UPON, ATTACH, LEVY, OR OTHERWISE SEIZE PROPERTY OR PROCEED AGAINST THE INTERESTS OF THE MERCHANT IN PROPERTY (REAL OR PERSONAL) IN FULL OR PARTIAL PAYMENT OR SATISFACTION OF THE JUDGMENT OR JUDGMENTS. BEING FULLY AWARE OF THE MERCHANT'S RIGHTS AFTER JUDGMENT IS ENTERED (INCLUDING THE RIGHT TO MOVE TO OPEN OR STRIKE THE JUDGMENT OR JUDGMENTS), THE UNDERSIGNED HEREBY FREELY, KNOWINGLY AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S TAKING SUCH ACTIONS AS MAY BE PERMITTED UNDER APPLICABLE STATE AND FEDERAL LAW WITHOUT PRIOR NOTICE TO THE MERCHANT

C.      The Merchant hereby certifies that the financial accommodations being provided by the Obligee are for a business purpose, and not for personal, family or household use.

D.      The statements made in this Disclosure for Confession of Judgment are subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities

SELLER/MERCHANT
By KARA DIPIETRO                      _Kara DiPietro_
                                     (Signature)

EIN# 52-7005467

SELLER/MERCHANT
By: KARA DIPIETRO                     _Kara DiPietro_
                                     (Signature)

SS# 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

Page 19                  Merchant Initials _____   Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: 81724E30-F0C1-4569-BAD0-341627978AA9



22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-7636          Fax: 888-305-7562

## GUARANTY

Personal Guaranty of Performance. The undersigned Guarantor(s) hereby guarantees to PURCHASER, SELLER/MERCHANT'S performance of all of the representations, and warranties made by SELLER/MERCHANT in this Agreement and the Factoring Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations") Guarantor's obligations are due at the time of any breach by Merchant of any representation or warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement

Guarantor Waivers. In the event that SELLER/MERCHANT violates its representations and warranties under the FACTORING AGREEMENT, PURCHASER may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral PURCHASER may hold pursuant to this Agreement or any other guaranty.

PURCHASER does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of (i) SELLER/MERCHANT'S violation of the representations and warranties of the FACTORING AGREEMENT or any renewal, extension or other modification of the FACTORING AGREEMENT. In addition, PURCHASER may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the FACTORING AGREEMENT or SELLER/MERCHANT'S other obligations to PURCHASER; (ii) release SELLER/MERCHANT from its obligations to PURCHASER; (iii) sell, release, impair, waive or otherwise execute upon any collateral securing the Guaranteed Obligation ; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until all obligations are fulfilled under the FACTORING AGREEMENT and SELLER/MERCHANT'S other obligations to PURCHASER under the FACTORING AGREEMENT and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against SELLER/MERCHANT, any other guarantor, or any collateral provided by SELLER/MERCHANT or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that PURCHASER must return any amount paid by SELLER/MERCHANT or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THIS GUARANTY, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY GUARANTOR IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT RECOURSE TO THE GUARANTOR AND THE GUARANTOR'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

GUARANTOR ACKNOWLEDGEMENT. Guarantor acknowledges that: (i) He/She understands the seriousness of the provision of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

JOINT AND SEVERAL LIABILITY. The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

SELLER/MERCHANT
By: KARA DiPIETRO

_____
Kara DiPietro
(Signature)

EIN# 52-2005467

SELLER/MERCHANT
By: KARA DiPIETRO

_____
Kara DiPietro
(Signature)

SS# 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

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY.

CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

Merchant Initials _____    Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F9C1-4590-BAD0-3418279780AA9



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)**

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the FACTORING AGREEMENT. You should keep this important legal document for your records.

DISBURSEMENT OF BUSINESS CASH ADVANCE PROCEEDS: By signing below, Seller/Merchant authorizes PURCHASER to disburse the Cash Advance Proceeds less the amount of any applicable fees upon approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller/Merchant later identifies and is acceptable to PURCHASER) (hereinafter referred to as the "Designated Checking Account") in the disbursed amount set forth in the accompanying documents. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Merchant's depository bank a reasonable opportunity to act on it.

AUTOMATIC PAYMENT PLAN: Enrollment in PURCHASER's Automatic Payment Plan is required for approval. By signing below, Seller/Merchant agrees to enroll in the Automatic Payment Plan and authorizes PURCHASER to collect payments required under the terms of Seller/Merchant Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the payment schedule set forth in the accompanying Seller/Merchant Agreement. Seller/Merchant authorizes PURCHASER to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the payment schedule and any unpaid Fees. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Seller/Merchant's depository bank a reasonable opportunity to act on it. PURCHASER may suspend or terminate Seller/Merchant's enrollment in the Automatic Payment Plan immediately if Seller/Merchant fails to keep Seller/Merchant's designated checking account in good standing or if there are insufficient funds in Merchant's checking account to process any payment.

If Seller/Merchant revokes the authorization or PURCHASER suspends or terminates Seller/Merchant's enrollment in the Automatic Payment Plan, Seller/Merchant still will be responsible for making timely payments pursuant to the alternative payment methods described in the Seller/Merchant Agreement.

BUSINESS PURPOSE ACCOUNT: By signing below, Seller/Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

ACCOUNT CHANGES: Seller/Merchant agrees to notify PURCHASER promptly if there are any changes to the account and routing numbers of the Designated Checking Account

MISCELLANEOUS: PURCHASER is not responsible for any fees charged by Seller/Merchant's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to the Seller/Merchant's account must comply with the provision of U.S. law.

Signature: _____Cara DiPietro_____          Date: __10/3/2018 11:38:09 AM PDT__

Bank Name: _____TD Bank on File_____

City: _____ State: _____ Zip: _____
_____ON FILE_____

Routing Number: _____ON FILE_____

Account Number: _____ON FILE_____

Business Name on Account: _____ON FILE_____

Address on Account: _____

Seller/Merchant Phone #: _____ Tax ID Number: _____

Email: _____

Signature: _____Cara DiPietro_____

Title: _____

Merchant Initials _____     Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: B1724E3D-F0C1-4599-8AD0-34102707BAA9

**CBSG**

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

BANK ACCOUNT DISCLOSURE AFFIDAVIT

For the purpose of obtaining the Business Cash Advance evidence by the Merchant Agreement of this same date herewith (the "Business Cash Advance") from Complete Business Solutions Group, Inc., the undersigned Seller/Merchant hereby makes the following statement under penalty of law:

**PLEASE SIGN OPTION ONE OR TWO**

**OPTION 1 – DISCLOSURE AND AUTHORIZATION FOR ADDITIONAL ACCOUNTS:**

The Seller/Merchant hereby declares that in addition to the designated for ACH debit, the Seller/Merchant also has the following additional account(s) which he authorizes us to use in the event we are unable to debit from the designated account:

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account
**attach additional pages if necessary**



Seller/Merchant Signature _____   Dated   10/3/2018 11:49:09 AM PDT

Seller/Merchant Signature _____   Dated   10/3/2018 11:49:09 AM PDT

**OPTION 2** - By signing below, the merchant swears, under penalty of law, that he has no accounts in any lending institution in addition to the one provided for ACH debit.

Seller/Merchant Signature _____   Dated _____

Seller/Merchant Signature _____   Dated _____

Merchant Initials              Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4599-BAD0-34162707BAA9



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-7636          Fax: 888-305-7562

### AUTHORIZATION TO RESUME ACH DEBITING FORM

NAME OF SELLER/MERCHANT _____

INFORMATION (To be filled out by the customer)

I authorize Company (as shown above) to resume electronically debiting my bank account as detailed below, including a non-sufficient fund fee if applicable, until the debt to the company is paid in full.

Full Name on Account: _____

Account #: _____    Routing #: _____

Account Type (select one):     Checking   ☐         Savings   ☐

Account (select one):     Consumer Account   ☐         Business Account   ☐

Payment amount: _____    Number of Payments: _____

Date of next payment: _____    Frequency of payments: _____

I understand that I may cancel this authorization by contacting the company at least five (5) business days prior to the payment due date. I further understand that canceling my ACH authorizations does not relieve me of the responsibility of paying my account in full, and that if I cancel or revoke this authorization before the debt is paid in full, the Company may take additional actions including legal actions to secure the debt.

Customer signature: _Laura DiPietro_    Date: 10/3/2018 11:49:09 AM PDT

Customer Printed Name: _____

Customer contact Telephone #: _____

Customer signature: _____    Date: _____

Customer Printed Name: _____

Customer contact Telephone #: _____

Merchant Initials _____  _____ Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4500-BAD8-341627070AA0



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

Dear Client,

Thank you for accepting this offer from Complete Business Solutions Group D/b/a Par Funding.  We look forward to being your factoring partner for as long as you need

Daily ACH Program:

Complete Business Solutions Group will require viewing access to your bank account prior to funding as part of our underwriting process, as well as during the time you have a balance with our company

Please be assured that we carefully safeguard your confidential information and only essential top level personnel will have access to it.

Please fill out the form below with the information necessary to access your account.

**Be sure to indicate capital or lower case letters

NAME OF BANK: _____

BANK PORTAL WEBSITE: _____

USERNAME: _____

PASSWORD: _____          _____

SECURITY QUESTION/ANSWER 1: _____

SECURITY QUESTION/ANSWER 2: _____

SECURITY QUESTION/ANSWER 3: _____

ANY OTHER INFORMATION NECESSARY TO ACCESS YOUR ACCOUNTS:

*Merchant Initials*          *Merchant Initials*

Case ID: 190501349

DocuSign Envelope ID: 81724E30-F0C1-4599-BAD0-34102707BAA9



22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636         Fax: 888-305-7562

APPENDIX A: THE FEE STRUCTURE

1    Origination Fee - $10,000.00 to cover underwriting and related expenses

2    ACH Program Fee - $500.00 - The ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs;

3    NSF Fee - $75.00 (each) - Up to FOUR TIMES ONLY before a default is declared;

4.   Rejected ACH - $100.00 - If a merchant directs the bank to reject our debit ACH;

5    Bank Change Fee - $50.00 - If a merchant requires a change of account to be debited requiring us to adjust our system;

6    Blocked Account - $250.00 - If a merchant blocks CBSG's ACH debit of the Account, bounces more than 4 debits of the Account or simultaneously uses multiple bank accounts or credit-card processors to process its receipts;

7    Default Fee - $500.00 default fee - If a merchant changes bank accounts or switches to another credit card processor without CBSG's consent, or commits another default pursuant to the Agreement;

8    3rd Party Intermediary Fee - $4,800.00 deposit toward reasonable related expenses incurred by PURCHASER.  IF PURCHASER receives a communication from a 3rd party debt relief from partner entity or individual which has been retained by Merchant and which contacts PURCHASER on Merchant's behalf seeking to redirect communication related to the obligations contained in this Agreement) to itself/themselves and away from Merchant  This fee shall be used to cover Purchaser's reasonable expenses in retaining counsel or other parties to handle this additional administration required by this retention of the intermediary by PURCHASER  Any portion of the fee that is not used by PURCHASER for this purpose shall be returned to Merchant at the conclusion of this Factoring Agreement or related legal action.

9    Collections Expense – In the event of default, Seller / Merchant shall be responsible for all reasonable costs of collections, including, but not limited to, counsel fees, filing fees and any other fees which may be incurred.

10.  Miscellaneous Service Fees – Merchant shall pay certain fees for services related to the origination and maintenance of accounts  Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire.  The current charge for the underwriting, UCC, ACH Program and origination of each Merchant will be paid from the funded amount. Merchant will be charged $100.00 for every additional change of their operating bank account once they are active with CBSG  Additional copies of prior monthly statements will incur a fee of $10.00 each.

11   Risk Assessment Fee - $10,000.00

12   UCC Fee - $10,000.00

Merchant Signature: _Lara DiPietro_     Name: _____

Merchant Signature: _Lara DiPietro_     Name: _____

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4698-9AD0-3418279?BAA9



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 886-305-7562

### MANDATORY JOINT AFFIDAVIT OF CONFESSION OF JUDGEMENT

INSTRUCTIONS:

SIGN AND NOTARIZE THIS SECTION OF THE AGREEMENT, SEND THE ORIGINAL COPY TO:

PAR FUNDING
22 N 3ᴿᴰ STREET
PHILADELPHIA, PA 19106

C/O UNDERWRITING

*Merchant Initials*          *Merchant Initials*

Case ID: 190501349

DocuSign Envelope ID: 81724E30-F0C1-4589-DAD0-341027973AA0

CBSG

22 N 3rd Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2036     Fax: 888-305-1562

---

NEW YORK UNITY FACTOR, LLC

                              Plaintiff,

          -against-

HMC INCORPORATED D/B/A
HMC INCORPORATED and
KARA DIPIETRO,

                              Defendant(s)

---

Index No.

AFFIDAVIT OF
CONFESSION OF JUDGMENT

STATE OF _____ )
                     )  ss.:
COUNTY OF _____ )

KARA DIPIETRO, being duly sworn, deposes and says:

1.      I am a principal, owner, and an officer of HMC INCORPORATED D/B/A HMC INCORPORATED ("Merchant Defendant"), a CORPORATION located at 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046, in the County of _____, and as such, I have the authority to act on behalf of Merchant Defendant.

2.      I reside at 1836 LANDRAKE RD, TOWSON, MD 21204, in the County of _____.

3.      I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4.      Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the _____, Court of Common Jurisdiction for the County of _____ in the State of _____ the sum of $1,771,346.81 less any payments timely made pursuant to the secured Merchant Agreement dated OCTOBER 3, 2018, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

Merchant Initials                 Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 81724E30-F0C1-4509-BAD0-34102797BAA0

CBSG

22 N 3th Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-305-7369

5.     In addition, I hereby confess judgment, individually and personally, jointly and severely, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the _____ Court of Common Jurisdiction for the County of _____ in the State of _____, against me personally in the sum of $1,771,346.81 less any payments timely made pursuant to the Merchant Agreement dated OCTOBER 3, 2018, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.     This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated OCTOBER 3, 2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated OCTOBER 3, 2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.     Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

8.     If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.     I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this _____ day of _____, 2018.

Page | 18                                     *Merchant Initials*          *Merchant Initials*

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4509-BAD0-34102797BAA0



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-3636        Fax: 838-305-7562

By: _____
KARA DIPIETRO, individually, and on behalf of HMC
INCORPORATED D/B/A HMC INCORPORATED

Sworn to before me this
_____ day of _____, 2018.

_____
        Notary Public

*Merchant Initials*  _____      *Merchant Initials* _____

Case ID: 190501349

DocuSign Envelope ID: B1724E30-F0C1-4599-BAD0-34102797BAA9



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

OCTOBER 3, 2018

Attn: Court Orders & Levies Dept.

Re:   *HMC INCORPORATED, et al.*
Supreme Court of the State of New York, Richmond County  Index No.
*Information Subpoena and Restraining Notice - RELEASE*

Complete Business Solutions Group, Inc. d/b/a Par Funding ("Funder"), Plaintiff/Judgment Creditor, and KARA DIPIETRO ("KARA") and HMC INCORPORATED ("HMC INCORPORATED"), Defendants/Judgment Debtors (collectively, "the Parties"), hereby authorize
_____, N.A. and/or related entities (collectively, "_____, N.A.") to release ($_____) (the "Release Amount") from the funds currently held in reserve per the Information Subpoena with Restraining Notice ("IS/RN"), payable as follows:

Via check                                          Via wire to:

HMC INCORPORATED and KARA agree to indemnify and hold harmless
_____, N.A. and its officers, directors, agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from this release and/or the IS/RN. Upon tender of the Release Amount, Funder consents to the immediate RELEASE of the remainder and/or account(s) being held on reserve to HMC INCORPORATED, KARA, and/or its/their principals, agents, heirs and assigns.

10.     AGREED AND ACCEPTED:

By:_____
KARA DIPIETRO_____ (Name)
Owner/Manager/Agent_____ (Title)
individually, and on behalf of *HMC INCORPORATED*

By:_____
Norman M. Valz, Esq.
*Attorney for Plaintiff/Judgment Creditor, NEW YORK UNITY FACTOR LLC and*
Complete Business Solutions Group, Inc.
205 Arch Street – 2nd Floor
Philadelphia, PA  19106
(215)          (tel.)

State of_____)
                                          ) ss:
County of_____)

Page 120

Merchant Initials _____      Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: B1724E20-F6C1-4599-BAD0-34182797BAA9

CBSG
CORNER OF MAIN
EMPLOYER

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-1562

On the _____ day of _____, in the year 2018, before me, the undersigned Notary Public in and for said state, personally appeared KARA DIPIETRO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

Page | 21

Merchant Initials          Merchant Initials

Case ID: 190501349

Filed and Attested by the
Office of Judicial Records
14 MAY 2019 11:36 am
A. SILIGRINI

# EXHIBIT "F"

DocuSign Envelope ID: 8FE8BBFF-9947-48C2-982D-C2F0261A0179



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 866-305-7582

<u>ACKNOWLEDGEMENT</u>

I, KARA DIPIETRO, hereby acknowledge:

> There has been no promise of additional capital in 30 days from funding by CBSG or any ISO (broker).
>> ▪ Our policy is that merchants can seek additional capital from us when they have paid 55% of the Receipts Purchased Amount.
> That CBSG does not permit outside fees and that no one has discussed additional fees with me. The fee amount for this agreement is $10,000.00, which will be held back from the funding amount.
> There has not been and will not any contact from Third Party debt companies regarding this Factoring Agreement dated AUGUST 7, 2018.

I, the undersigned, acknowledge that I am in agreement with these items, which are also described in detail within the pages of this document.

Kara DiPietro                                    8/7/2018 1:34:04 PM PDT

Signature                                           Date

Merchant Initials ____KD____

Case ID: 190501349

DocuSign Envelope ID: 6FE880FF-9D47-48C2-982D-C3F0261A0179



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 866-305-7562

## FACTORING AGREEMENT

Dated the 7TH day of AUGUST, 2018 by and between Complete Business Solutions Group, Inc. ("CBSG" and/or "PURCHASER") and the "SELLER/MERCHANT" listed below (as "Seller/Merchant" or "the Merchant").
Business Legal Name: HMC INCORPORATED
DBA: HMC INCORPORATED
Type of entity (check one) [] Corporation  [] LLC  [] Limited Partnership []  Limited Liability Partnership  [] Sole Proprietor
Physical Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Mailing Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Fed ID#: 52-2005467

### PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Seller/Merchant's customers' and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.

### THIS IS A FACTORING AGREEMENT WITH RECOURSE.

The Purchased Amount shall be paid to CBSG by Seller/Merchant's irrevocably authorizing only one depositing account acceptable to CBSG (the "Account") to remit the Daily Specified Amount from the Seller/Merchant's receipts until such time as CBSG receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Seller/Merchant hereby authorizes CBSG to ACH debit the "Specified Daily Amount" from the merchant's bank account, as an approximation of the base payment due under the Specified Percentage. It is the Seller/Merchant's responsibility to provide bank statements for any and all bank accounts by the Merchant to reconcile the daily payments made against the Daily Specified Amount. Failure to provide all of their bank statements in a timely manner or missing a month shall forfeit all rights to future reconciliations. CBSG may, upon Seller/Merchant's request, adjust the amount of any payment due under this Agreement at CBSG's sole discretion and as it deems appropriate in servicing this Agreement. Seller/Merchant warrants that it will ensure that funds adequate to cover the amount to be debited by CBSG remains in the account. Seller/Merchant will be held responsible for any fees incurred by CBSG resulting from a rejected ACH attempt or an event of default. (See Appendix A). CBSG is not responsible for any overdrafts or rejected transactions in the Seller/Merchants account which may result from CBSG's scheduled ACH debit under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between CBSG and Seller/Merchant, upon the violation of any provision contained in Section I and II of the FACTORING AGREEMENT, shall be deemed a breach of the representations and warranties contained herein.  A list of all fees applicable under this FACTORING AGREEMENT is contained in Appendix A.

Purchase Price: $300,000.00 Specified Percentage: 10% Daily Specified Amount: $3,307.02  for 127 days.        Receipts Purchased Amount: $420,000.00
*Deal #37 / Invoices:  2646-05-06-07
*If Receipts Purchased Are Not Met Within 23-44 Installments Receipts Purchased Amount: $330,000.00
*If Receipts Purchased Are Not Met Within 45-66 Installments Receipts Purchased Amount: $360,000.00
*If Receipts Purchased Are Not Met Within 67-100 Installments Receipts Purchased Amount: $390,000.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGES 2 THROUGH 12 HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS FACTORING AGREEMENT.

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER                    X  _Kara DiPietro_____
Name and Title                                         (Seller/Merchant Signature)

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER                    X  _Kara DiPietro_____
Name and Title                                         (Seller/Merchant Signature)

COMPLETE BUSINESS SOLUTIONS GROUP, INC.

By: _____
       Company Officer

To the extent set forth herein, each of the parties is obligated upon his/ her in its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below.  Each individual executing this Agreement represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to honor the terms of this obligation and that the information provided herein and in all of CBSG documents, forms and recording interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements and the representations and warranties contained herein between Merchant and CBSG and CBSG shall be entitled to all remedies available under law. Merchant and each of the above-signed Officers/ Owners authorizes CBSG, its agents and representatives and any credit-reporting agency engaged by CBSG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for as long as Merchant and/or Owner(s) continue to have any obligation owed to CBSG

ANY MISREPRESENTATION MADE BY SELLER/MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION
FACTORING AGREEMENT TERMS AND CONDITIONS

Page 12                                                        Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: 0FE880FF-9947-48C2-982D-C3F0251A8179


CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-7636          Fax: 888-305-7562

### FACTORING AGREEMENT

Dated the 7TH day of AUGUST, 2018 by and between Complete Business Solutions Group, Inc. ("CBSG" and/or "PURCHASER") and the "SELLER/MERCHANT" listed below (as "Seller/Merchant" or "the Merchant").
Business Legal Name: HMC INCORPORATED
D/B/A: HMC INCORPORATED
Type of entity (check one) [] Corporation [] LLC [] Limited Partnership [] Limited Liability Partnership [] Sole Proprietor
Physical Address: 7198 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Mailing Address: 7198 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Fed ID#: 51-2005467

### PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Seller/Merchant's customers' and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG

THIS IS A FACTORING AGREEMENT WITH RECOURSE.
The Purchased Amount shall be paid to CBSG by Seller/Merchant's irrevocably authorizing only one depositing account acceptable to CBSG (the "Account") to remit the Daily Specified Amount from the Seller/Merchant's receipts until such time as CBSG receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Seller/Merchant hereby authorizes CBSG to ACH debit the "Specified Daily Amount" from the merchant's bank account, as an approximation of the true payment due under the Specified Percentage. It is the Seller/Merchant's responsibility to provide bank statements for any and all bank accounts by the Merchant to reconcile the daily payments made against the Daily Specified Amount. Failure to provide all of their bank statements in a timely manner or missing a month shall forfeit all rights to future reconciliations. CBSG may, upon Seller/Merchant's request, adjust the amount of any payment due under this Agreement at CBSG's sole discretion and as it deems appropriate in servicing this Agreement. Seller/Merchant warrants that it will ensure that funds adequate to cover the amount to be debited by CBSG remain in the account. Seller/Merchant will be held responsible for any fees incurred by CBSG resulting from a rejected ACH attempt or an event of default (See Appendix A). CBSG is not responsible for any overdrafts or rejected transactions in the Seller/Merchant's account which may result from CBSG's scheduled ACH debit under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between CBSG and Seller/Merchant, upon the violation of any provision contained in Sections I and II of the FACTORING AGREEMENT, shall be deemed a breach of the representations and warranties contained herein. A list of all fees applicable under this FACTORING AGREEMENT is contained in Appendix A

Purchase Price: $100,000.00 Specified Percentage: 10% Daily Specified Amount: $3,007.09 for 127 days       Receipts Purchased Amount: $310,000.00
*Bal #38/Invoices:    3000-04-05-06
*If Receipts Purchased Are Not Met Within 33-44 Installments Receipts Purchased Amount: $330,000.00
*If Receipts Purchased Are Not Met Within 45-66 Installments Receipts Purchased Amount: $380,000.00
*If Receipts Purchased Are Not Met Within 67-100 Installments Receipts Purchased Amount: $200,000.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGES 2 THROUGH 12 HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS FACTORING AGREEMENT.

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER          X _Kara DiPietro_
Name and Title                              (Seller/Merchant Signature)

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER          X _Kara DiPietro_
Name and Title                              (Seller/Merchant Signature)

COMPLETE BUSINESS SOLUTIONS GROUP, INC.

By _____
          Company Officer

To the extent set forth herein, each of the parties is obligated upon his/her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each individual executing this Agreement represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to honor the terms of this obligation and that the information provided herein and in all of CBSG documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements and the representations and warranties contained herein between Merchant and CBSG and CBSG shall be entitled to all remedies available under law. Merchant and each of the above-signed Officers/Owners authorizes CBSG, its agents and representatives and any credit-reporting agency engaged by CBSG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owner(s) continue to have any obligation owed to CBSG
ANY MISREPRESENTATION MADE BY SELLER/MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION
FACTORING AGREEMENT TERMS AND CONDITIONS

Page 1 7                                                          Merchant Initials [KD]

                                                    Case ID: 190501349

DocuSign Envelope ID: 6FE6BBFF-9047-40C2-992D-C5F0251A0179



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

## FACTORING AGREEMENT

Dated the 7TH day of AUGUST, 2018 by and between Complete Business Solutions Group, Inc. ("CBSG" and/or "PURCHASER") and the "SELLER/MERCHANT" listed below (as "Seller/Merchant" or "the Merchant").

Business Legal Name: HMC INCORPORATED
D/B/A: HMC INCORPORATED
Type of entity (check one) [] Corporation  [] LLC [] Limited Partnership [] Limited Liability Partnership [] Sole Proprietor
Physical Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Mailing Address: 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046
Fed ID#: 52-2005467

### PURCHASE AND SALE OF FUTURE RECEIPTS WITH SELLER RECOURSE

Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Seller/Merchant's customers' and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.

THIS IS A FACTORING AGREEMENT WITH RECOURSE.
The Purchased Amount shall be paid to CBSG by Seller/Merchant's irrevocably authorizing only one depositing account acceptable to CBSG (the "Account") to remit the Daily Specified Amount from the Seller/Merchant's receipts until such time as CBSG receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Seller/Merchant hereby authorizes CBSG to ACH debit the "Specified Daily Amount" from the merchant's bank account, as an approximation of the base payment due under the Specified Percentage. It is the Seller/Merchant's responsibility to provide bank statements for any and all bank accounts by the Merchant to reconcile the daily payments made against the Daily Specified Amount. Failure to provide all of their bank statements in a timely manner or missing a month shall forfeit all rights to future reconciliations. CBSG may, upon Seller/Merchant's request, adjust the amount of any payment due under this Agreement at CBSG's sole discretion and as it deems appropriate in servicing this Agreement. Seller/Merchant warrants that it will ensure that funds adequate to cover the amount to be debited by CBSG remain in the account. Seller/Merchant will be held responsible for any fees incurred by CBSG resulting from a rejected ACH attempt or an event of default. (See Appendix A). CBSG is not responsible for any overdrafts or rejected transactions in the Seller/Merchants account which may result from CBSG's scheduled ACH debit under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between CBSG and Seller/Merchant, upon the violation of any provision contained in Sections I and II of the FACTORING AGREEMENT, shall be deemed a breach of the representations and warranties contained herein. A list of all fees applicable under this FACTORING AGREEMENT is contained in Appendix A.

Purchase Price: $300,000.00 Specified Percentage: 10% Daily Specified Amount: $3,307.09 for 127 days     Receipts Purchased Amount: $420,000.00
*Deal EXP / Invoices:      2806-10-11
*If Receipts Purchased Are Not Met Within 23-44 Installments Receipts Purchased Amount: $330,000.00
*If Receipts Purchased Are Not Met Within 45-66 Installments Receipts Purchased Amount: $360,000.00
*If Receipts Purchased Are Not Met Within 67-100 Installments Receipts Purchased Amount: $390,000.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH ON PAGES 2 THROUGH 11 HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS FACTORING AGREEMENT.

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER        X _Kara DiPietro_
Name and Title                          (Seller/Merchant Signature)

FOR THE SELLER/MERCHANT
By: KARA DIPIETRO, OWNER        _Kara DiPietro_
Name and Title                          (Seller/Merchant Signature)

COMPLETE BUSINESS SOLUTIONS GROUP, INC.

By: _____
                Company Officer

To the extent set forth herein, each of the parties is obligated upon his/ her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each individual executing this Agreement represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to honor the terms of this obligation and that the information provided herein and in all of CBSG documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements and the representations and warranties contained herein between Merchant and CBSG and CBSG shall be entitled to all remedies available under law. Merchant and each of the above-signed Officers/ Owners authorizes CBSG, its agents and representatives and any credit-reporting agency engaged by CBSG, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/Owner(s) continue to have any obligation owed to CBSG.
ANY MISREPRESENTATION MADE BY SELLER/MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.

FACTORING AGREEMENT TERMS AND CONDITIONS

Page | 4                                                                Merchant Initials _kd_

Case ID: 190501349

DocuSign Envelope ID: 6FE890FF-0047-46C2-962D-C3F0251A0379

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636     Fax: 888-305-7562

**1. GENERAL TERMS OF AGREEMENT (MUTUAL REPRESENTATIONS AND WARRANTIES)**

1.1 Electronic Fund Transfer. Upon request from PURCHASER ("hereinafter CBSG or Purchaser") Seller/Merchant ("hereinafter Merchant") shall execute such forms or agreements acceptable to PURCHASER, with Bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER, and/or its authorized agent with all the information, authorization and passwords necessary for verifying Merchant's receivable, receipts and deposits into the account Merchant shall authorize PURCHASER and/or it's agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the SPECIFIED DAILY AMOUNT by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER.

1.2 Deposit Agreement. Seller/Merchant shall execute an agreement (the "Deposit Agreement") acceptable to PURCHASER, with a Bank acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER and/or its authorized agent with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts and deposits into the account. Merchant shall authorize PURCHASER and/or it's agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to PURCHASER by permitting PURCHASER to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable without the written consent of PURCHASER.

1.3 Term of Agreement. This Agreement shall have a term as set forth above. Upon the expiration of the term, this Agreement shall automatically renew for successive similar terms, provided, however, that during the renewal term(s) Merchant may terminate this Agreement upon ninety days' prior written notice (effective upon receipt) to PURCHASER. The termination of this Agreement shall not affect Merchant's responsibility to satisfy all outstanding obligations to PURCHASER at the time of termination.

1.4 Future Purchases. PURCHASER reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

1.5 Financial Condition. Merchant authorizes PURCHASER and its agents to investigate their financial responsibility and history, and will provide to PURCHASER any bank or financial statements, tax returns, etc., as PURCHASER deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. PURCHASER is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.6 Transactional History. Merchant authorizes their bank to provide PURCHASER with Merchant's banking or processing history to determine qualification or continuation in this program.

1.7 Indemnification. Merchant jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by PURCHASER for monies owed to PURCHASER from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by PURCHASER.

1.8 No Liability. In no event will CBSG be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant.

1.9 Reliance on Terms. Section 1.1, 1.7, 1.8 and 7.5 of this Agreement are agreed to for the benefit of Merchant, PURCHASER and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

1.10 Sale of Receipts. Merchant and CBSG agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PURCHASER to Merchant. Merchant agrees that the Purchase Price is for the purchase of Future Receipts pursuant to this Agreement equals the fair market value of such Receipts. PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to PURCHASER with respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. IN NO EVENT SHALL THE AGGREGATE OF THE AMOUNTS RECEIVED BE DEEMED AS INTEREST HEREUNDER. If the amount that a court determines that PURCHASER has charged or received interest hereunder, and that said amount is in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PURCHASER shall promptly refund to Merchant any interest received by PURCHASER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PURCHASER not receive or contract to receive, directly or indirectly in any amount whatsoever, interest in excess of that which may be paid by Merchant under applicable law. MERCHANT ACKNOWLEDGES THAT PENNSYLVANIA LAW APPLIES TO THE WITHIN AGREEMENT.

1.11 Monthly Assessment of Merchant Cash Flow. Merchant hereby authorizes PURCHASER to adjust one or more ACH debits at the specified "Daily Retrieval Rate" from the Account as an approximation of the true payment due under the Specified Percentage. It is the Merchant's responsibility to provide financial information (e.g. bank statements, credit card processing statements, general ledgers) regarding its gross receivables, to reconcile the daily payments made against the Specified Percentage, permitting PURCHASER to debit or credit the difference to Merchant on a monthly basis so that the Daily Retrieval Rate equals the Specified Percentage.

1.12 Power of Attorney. Merchant irrevocably appoints PURCHASER as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to PURCHASER from Processor, or in the case of a

violation by Merchant of Section 1 12 or the occurrence of an Event of Default under Section 4 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under the Account of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to PURCHASER; and (v) to file any claims or take any action or institute any proceeding which PURCHASER may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

1.13 Protections Against Default. Merchant represents and warrants that it will not violate Conditions (a) through (e) below and in the event of default thereunder the following Protections 1 through 8 may be invoked by PURCHASER, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's future sales and products including but not limited to direct deposit of any checks into a bank account without scanning into the PURCHASER electronic check processor; (b) Merchant changes its arrangement with Processor in any way that is adverse to PURCHASER; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of PURCHASER, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to PURCHASER in law, in equity or otherwise pursuant to this Agreement

**Protection 1.** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** Upon breach of ANY MATERIAL PROVISION OR BREACH OF REPRESENT-ATIONS AND WARRANTIES in this Agreement, PURCHASER may enter that confession of judgment (judgment) with the Clerk of the Court and execute thereon.

**Protection 3.** Purchaser may enforce its security interest in the Collateral identified in Article III hereof

**Protection 4.** The entire Unpaid Purchase Amount shall become immediately refundable to PURCHASER from Merchant

**Protection 5.** Purchaser may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which Purchaser shall recover judgment against Merchant, Merchant shall be liable for the full

Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 0FE08DFF-9947-48C2-962D-C3F0201A8179

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-305-7562

costs of PURCHASER's legal action, including all reasonable attorneys' fees and court costs.

**Protection 6.** Merchant shall, upon execution of this Agreement, deliver to PURCHASER an executed assignment of lease of Merchant's premises in favor of CBSG. Upon breach of any provision in this paragraph 1.13, PURCHASER may exercise its rights under such assignment of lease.

**Protection 7.** PURCHASER may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account.

**Protection 8.** In the event Merchant changes or permits the change of the Processor approved by CBSG, or adds an additional Processor, in violation of Section 1.11 above, CBSG shall have the right, without waiving any of its rights and remedies and without notice to Merchant, to notify the new or additional Processor of the sale of the Receipts hereunder and to direct such new or additional Processor to make payments directly to CBSG of all or any portion of the amounts received by such Processor.

**1.14 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes PURCHASER to disclose information concerning Merchant's and each Owner's credit standing (including credit bureau reports that PURCHASER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner hereby waives to the maximum extent permitted by law any claim for damages against PURCHASER or any of its affiliates relating to any (i) investigation undertaken by or on behalf of PURCHASER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.15 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by PURCHASER, including this Agreement and any other PURCHASER documentation (collectively, "Confidential Information") are proprietary and confidential information of PURCHASER. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PURCHASER to any person other than an attorney, accountant, financial adviser or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.15.

**1.16 DUNA's** Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PURCHASER and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**II.   MERCHANT   REPRESENTATIONS, WARRANTIES AND COVENANTS** Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Bank and financial statements, and future statements furnished to PURCHASER, fairly represent the financial condition of Merchant at such dates. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material or adverse change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and

the Merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant will maintain business-interruption insurance naming CBSG as loss payee and additional insured in amounts and against risks as are satisfactory to PURCHASER and shall provide PURCHASER proof of such insurance upon request.

**2.5 Electronic Check Processing Agreement.** Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without PURCHASER's prior written consent. Any such change shall be a material breach of this Agreement.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and PURCHASER or change any of its places of business.

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

**2.8 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, person firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.** As of the date of this Agreement, Merchant does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing, Protections 2 and 3 are immediately invoked.

**2.10 Working Capital Funding.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves the Receipts, whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales with any party other than PURCHASER.

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, charges, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in

which it is organized and/or operates, and Merchant is entering into this Agreement FOR BUSINESS PURPOSES ONLY and not as a consumer for personal, family or household purposes.

**2.13 Default under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.14 3rd Party Negotiations with Regard to This Agreement and the Obligations Herein** Merchant hereby agrees not to retain any 3rd party negotiator, consolidator, or credit relief agencies with regard to its obligations under the terms of this Agreement. Merchant will maintain and allow direct communication with PURCHASER at all times during the course of this Agreement and shall not engage any 3rd party to negotiate its obligations as stated in this Agreement. Should Merchant violate this subsection 2.14, Merchant will be liable for the additional fee as specified in the attached Appendix A.

**III.   EVENTS   OF   BREACH   OF REPRESENTATIONS, WARRANTIES, AND COVENANTS AND REMEDIES**

**3.1 Events of Breach of Representations, Warranties and Covenants** The occurrence of any of the following events shall constitute an "Event of a Breach of Representations, Warranties, and Covenants" hereunder. (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) Merchant shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) the sending of notice of termination by MERCHANT; (e) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business; (f) Merchant shall transfer or sell all or substantially all of its assets; (h) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (i) Merchant shall use multiple depository accounts without the prior written consent of PURCHASER; (j) Merchant shall change its depositing account without the prior written consent of PURCHASER; (k) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (l) Merchant shall engage a third party to renegotiate the terms of this Agreement on Merchant's behalf; (m) Merchant shall engage a third party in an attempt to cease direct communication and/or contact with PURCHASER; or (n) Merchant shall default under any of the terms, covenants and conditions of any other agreement with PURCHASER

**3.2 Remedies.** In case any Event of a Breach of Representations, Warranties and Covenants, Default occurs and is not waived pursuant to Section 4.4 hereof, PURCHASER may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder or any other legal or equitable right or remedy. IN THE EVENT OF VIOLATION OF THE REPRESENTATIONS AND WARRANTIES BY MERCHANT, PURCHASER may also file a Complaint or Confession of Judgment pursuant to the Warrant of Attorney contained herein. All rights, powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by

*Merchant Initials*

Case ID: 190501349

DocuSign Envelope ID: 6FE888FF-9947-48C2-862D-C3F0251A8179

**CBSG**

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7362

PURCHASER after the occurrence of an Event of Default, on cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.3 Consent to Sale/Transfer of Interest: In event of PURCHASER'S sale or transfer of its remaining interests in MERCHANT'S receivables to a third party buyer of defaulted financial obligations and instruments. More specifically, MERCHANT recognizes PURCHASER'S authority to sell its interests in said receivables to New York Unity Center, LLC ("NYUC") which MERCHANT authorizes to pursue legal remedies in NYUC's home State of New York in the event of a breach of the warranties, covenants, and representations stated under this Agreement.

3.4 WARRANT OF ATTORNEY TO CONFESS JUDGMENT. UPON THE OCCURRENCE OF A VIOLATION OF THE REPRESENTATIONS AND WARRANTIES MADE HERETOFORE BY MERCHANT, MERCHANT IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OR ANY CLERK OF ANY COURT OF RECORD, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR SUCH SUMS AS ARE DUE AND/OR MAY BECOME DUE UNDER THIS MERCHANT AGREEMENT OR ANY ACCOMPANYING DOCUMENTS, WITH OR WITHOUT DECLARATION, WITH COSTS OF SUIT, WITHOUT STAY OF EXECUTION AND WITH AN AMOUNT, FOR LIEN PRIORITY PURPOSES, EQUAL TO TEN PERCENT (10%) OF THE AMOUNT OF SUCH JUDGMENT, BUT NOT LESS THAN ONE THOUSAND DOLLARS ($1,000.00), ADDED FOR ATTORNEY'S COLLECTION FEES, WITH THE ACTUAL AMOUNT OF ATTORNEY'S FEES AND COSTS TO BE DETERMINED IN ACCORDANCE WITH THE SECTION OF THIS MERCHANT AGREEMENT "ATTORNEY'S FEES AND COLLECTION COSTS." TO THE EXTENT PERMITTED BY LAW, MERCHANT: (1) WAIVE THE RIGHT OF INQUISITION ON ANY REAL ESTATE LEVIED ON, VOLUNTARILY CONDEMNS THE SAME, AUTHORIZES THE PROTHONOTARY OR CLERK TO ENTER UPON THE WRIT OF EXECUTION THIS VOLUNTARY CONDEMNATION AND AGREES THAT ANY REAL ESTATE MAY BE SOLD ON A WRIT OF EXECUTION; (2) WAIVE AND RELEASE ALL RELIEF FROM ALL APPRAISEMENT, STAY, EXEMPTION OR APPEAL LAWS OF ANY STATE NOW IN FORCE OR HEREINAFTER ENACTED; AND (3) RELEASE ALL ERRORS IN SUCH PROCEEDINGS. IF A COPY OF THIS MERCHANT AGREEMENT, VERIFIED BY AFFIDAVIT BY OR ON PURCHASER'S BEHALF OR PURCHASER SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL MERCHANT AGREEMENT AS A WARRANTY OF ATTORNEY. THE AUTHORITY AND POWER TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT SHALL NOT BE EXHAUSTED BY THE INITIAL EXERCISE THEREOF AND MAY BE EXERCISED AS OFTEN AS PURCHASER SHALL FIND IT NECESSARY AND DESIRABLE AND THIS BUSINESS CASH ADVANCE AND

SECURITY AGREEMENT SHALL BE A SUFFICIENT WARRANT THEREFOR. PURCHASER MAY CONFESS ONE OR MORE JUDGMENTS IN THE SAME OR DIFFERENT JURISDICTIONS FOR ALL OR ANY PART OF THE AMOUNTS OWING HEREUNDER, WITHOUT REGARD TO WHETHER JUDGMENT HAS THERETOFORE BEEN CONFESSED ON MORE THAN ONE OCCASION FOR THE SAME AMOUNTS. IN THE EVENT ANY JUDGMENT CONFESSED AGAINST THE MERCHANT HEREUNDER IS STRICKEN OR OPENED UPON APPLICATION BY OR ON MERCHANT'S BEHALF FOR ANY REASON, PURCHASER IS HEREBY AUTHORIZED AND EMPOWERED TO AGAIN APPEAR FOR AND CONFESS JUDGMENT AGAINST MERCHANT FOR ANY PART OR ALL OF THE AMOUNTS OWED HEREUNDER, AS PROVIDED FOR HEREIN, IF DOING SO WILL CURE ANY ERRORS AND DEFECTS IN SUCH PRIOR PROCEEDINGS.

3.41 NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY MERCHANT IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT REQUIRES TO THE MERCHANT AND THE MERCHANT'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

3.5 Costs. Merchant shall pay to PURCHASER all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of PURCHASER'S remedies set forth in Section 4.3 above, including but not limited to court costs and attorneys' fees.

3.6 Required Notifications. Merchant is required to give PURCHASER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PURCHASER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

IV. MISCELLANEOUS

4.1 Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by PURCHASER.

4.2 Assignment. PURCHASER may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part. All Notices. All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 Waiver Remedies. No failure on the part of PURCHASER to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 Merchant/Guarantor(s) barred from transfer. This Agreement shall be binding upon and inure to the

benefit of Merchant, PURCHASER and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER, which consent may be withheld in PURCHASER'S sole discretion. PURCHASER reserves the right to assign this Agreement with or without prior written notice to Merchant or Guarantor(s).

4.6 Governing Law/Jurisdiction/Venue for disputes. All signatories to this Agreement consent that this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PURCHASER so elects, be instituted in the Court of Common Pleas, Philadelphia County, Federal Court for the Eastern District of Pennsylvania, or the Philadelphia County Municipal Court, (the "Acceptable Forums") Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by PURCHASER to transfer such proceeding to an Acceptable Forum.

4.7 Survival of Representation, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.8 Severability. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9 Entire Agreement. Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement herein embody the entire agreement between Merchant and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10 JURY TRIAL WAIVER. THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENT-

Page 17

Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 8FE88BFF-9947-48C2-982D-C3F0281A8170



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-932-2636          Fax: 888-305-7562

ATIVE ACTION AGAINST THE OTHER, THE
PARTIES HEREBY AGREE THAT: (1) THE
PREVAILING PARTY SHALL NOT BE
ENTITLED TO RECOVER ATTORNEYS' FEES
OR COSTS ASSOCIATED WITH PURSUING
THE CLASS OR REPRESENTATIVE ACTION
(NOT WITHSTANDING ANY OTHER PROV-
ISION IN THIS AGREEMENT); AND (2) THE
PARTY WHO INITIATES OR PARTICIPATES
AS A MEMBER OF THE CLASS WILL NOT
SUBMIT A CLAIM OR OTHERWISE PART-
ICIPATE IN ANY RECOVERY SECURED
THROUGH THE CLASS OR REPRESENT-
ATIVE ACTION.

4.12 Counterparts & Facsimile/Email Signatures.
This Agreement may be executed in any number of
counterparts each of which shall be deemed to be an
original, all of which together shall be deemed one and
the same instrument. Further, facsimile and email
signatures shall be deemed to be originals for all
purposes.

Merchant Initials

DecuSign Envelope ID: 6FE069FF-0047-40C2-082D-C3F0251A6170



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-305-7562

Seller/Merchant's Legal Name: HMC INCORPORATED DBA HMC INCORPORATED

Physical Address: 7150 OAKLAND MILLS RD #10, COLUMBIA, MD 21046

FED ID # (Merchant): 52-2005467

## SECURITY AGREEMENT

Security Interest. To secure SELLER/MERCHANTS'S performance obligations to PURCHASER under the "Factoring Agreement", SELLER/MERCHANT hereby grants to PURCHASER a security interest in (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, at those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by SELLER/MERCHANT; and (b) all proceeds, as that term is defined in Article 9 of the UCC (a and b collectively, the "Collateral"

Cross-Collateral. To secure MERCHANT's payment and performance obligations to PURCHASER under this Security Agreement (the "Agreement), MERCHANT hereby grants PURCHASER a security interest in ___ (the "Additional Collateral"). MERCHANT understands that PURCHASER will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement

SELLER/MERCHANT acknowledge and agree that any security interest granted to PURCHASER under any other agreement between SELLER/MERCHANT and PURCHASER (the "Cross-Collateral") will secure the obligations hereunder and under the FACTORING Agreement

SELLER/MERCHANT agrees to execute any documents or take any action in connection with this Agreement as PURCHASER deems necessary to perfect or maintain PURCHASER'S first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements SELLER/MERCHANT hereby authorizes PURCHASER to file any financing statements deemed necessary by PURCHASER to perfect or maintain PURCHASER'S security interest, which financing statement may contain notification that SELLER/MERCHANT have granted a negative pledge to PURCHASER with respect to the Collateral, the Additional Collateral and the Cross-Collateral, and that any subsequent lien or may be tortuously interfering with PURCHASER's rights, SELLER/MERCHANT shall be liable for and PURCHASER may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by PURCHASER in protecting, preserving and enforcing PURCHASER'S security interest and rights.

Negative Pledge. SELLER/MERCHANT agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

Consent to Enter Premises and Assign Lease. PURCHASER shall have the right to cure SELLER/MERCHANT default in the payment of rent on the following terms. In the event SELLER/MERCHANT is served with papers in an action against SELLER/MERCHANT for nonpayment of rent or for summary eviction, PURCHASER may execute its rights and remedies under the Assignment of Lease. SELLER/MERCHANT also agrees that PURCHASER may enter into an agreement with SELLER/MERCHANT landlord giving PURCHASER the right: (a) to enter SELLER/MERCHANT's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving some; and (b) to assign SELLER/MERCHANT'S lease to another qualified SELLER/MERCHANT capable of operating a business comparable to SELLER/MERCHANT at such premises.

Remedies. Upon any Event of Default, PURCHASER may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise.

SELLER/MERCHANT
BY: KARA DIPIETRO, OWNER

DocuSigned by:

*Kara DiPietro*

Name/Title/Signature

Page 19          Merchant Initials___     Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 6FE00BFF-0047-48C2-062O-C3F0251A8178



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636       Fax: 888-305-7562

DISCLOSURE FOR CONFESSION OF JUDGMENT

AFFIANT:       KARA DIPIETRO

OBLIGEE:       Complete Business Solutions Group, Inc. d/b/a Par Funding

The undersigned have executed, and/or is executing, on even date herewith, one or more of the following instruments under which the Merchant is obligated to repay monies to Obligee:

i.       Factoring Agreement dated AUGUST 7, 2018; and

A.       THE MERCHANT ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY ENTER JUDGMENT BY CONFESSION AGAINST THE MERCHANT   BEING FULLY AWARE OF THE MERCHANT'S RIGHTS TO PRIOR NOTICE AND A HEARING ON THE VALIDITY OF ANY JUDGMENT OR OTHER CLAIMS THAT MAY BE ASSERTED AGAINST THE MERCHANT BY OBLIGEE THEREUNDER BEFORE JUDGMENT IS ENTERED, THE UNDERSIGNED HEREBY FREELY, KNOWINGLY, AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S ENTERING JUDGMENT AGAINST THE MERCHANT BY CONFESSION PURSUANT TO THE TERMS THEREOF.

B.       THE UNDERSIGNED ALSO ACKNOWLEDGES AND AGREES THAT THE ABOVE DOCUMENTS CONTAIN PROVISIONS UNDER WHICH OBLIGEE MAY, AFTER ENTRY OF JUDGMENT AND WITHOUT EITHER NOTICE OR A HEARING, FORECLOSE UPON, ATTACH, LEVY, OR OTHERWISE SEIZE PROPERTY OR PROCEED AGAINST THE INTERESTS OF THE MERCHANT IN PROPERTY (REAL OR PERSONAL) IN FULL OR PARTIAL PAYMENT OR SATISFACTION OF THE JUDGMENT OR JUDGMENTS.   BEING FULLY AWARE OF THE MERCHANT'S RIGHTS AFTER JUDGMENT IS ENTERED (INCLUDING THE RIGHT TO MOVE TO OPEN OR STRIKE THE JUDGMENT OR JUDGMENTS), THE UNDERSIGNED HEREBY FREELY, KNOWINGLY AND INTELLIGENTLY WAIVES THESE RIGHTS AND EXPRESSLY AGREES AND CONSENTS TO OBLIGEE'S TAKING SUCH ACTIONS AS MAY BE PERMITTED UNDER APPLICABLE STATE AND FEDERAL LAW WITHOUT PRIOR NOTICE TO THE MERCHANT.

C.       The Merchant hereby certifies that the financial accommodations being provided by the Obligee are for a business purpose, and not for personal, family or household use.

D.       The statements made in this Disclosure for Confession of Judgment are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

SELLER/MERCHANT
By: KARA DIPIETRO                        _Kara DiPietro_
                                          (Signature)

EIN# 52-2005462

SELLER/MERCHANT
By: KARA DIPIETRO                        _Kara DiPietro_
                                          (Signature)

SS# 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

Case ID: 190801349

DocuSign Envelope ID: 6FE69DFF-9947-48C2-982D-C3F0261A0179



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-7626          Fax: 888-305-2562

## GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to PURCHASER, SELLER/MERCHANT'S performance of all of the representations and warranties made by SELLER/MERCHANT in this Agreement and the Factoring Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation or warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement.

**Guarantor Waivers.** In the event that SELLER/MERCHANT violates its representations and warranties under the FACTORING AGREEMENT, PURCHASER may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral PURCHASER may hold pursuant to this Agreement or any other guaranty.

PURCHASER does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of (i) SELLER/MERCHANT'S violation of the representations and warranties of the FACTORING AGREEMENT or any renewal, extension or other modification of the FACTORING AGREEMENT. In addition, PURCHASER may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the FACTORING AGREEMENT or SELLER/MERCHANT'S other obligations to PURCHASER; (ii) release SELLER/MERCHANT from its obligations to PURCHASER; (iii) sell, release, impair, waive or otherwise execute upon any collateral securing the Guaranteed Obligations ; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until all obligations are fulfilled under the FACTORING AGREEMENT and SELLER/MERCHANT'S other obligations to PURCHASER under the FACTORING AGREEMENT and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against SELLER/MERCHANT, any other guarantor, or any collateral provided by SELLER/MERCHANT or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification, or (v) contribution In the event that PURCHASER must return any amount paid by SELLER/MERCHANT or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FACTORING AGREEMENT, THE GUARANTY, THE CONFESSION OF JUDGMENT, THE SECURITY AGREEMENT, OR ANY OTHER DOCUMENTS EXECUTED BY GUARANTOR IN CONNECTION WITH THE ADVANCE OF FUNDS TO SELLER, ALL PARTIES ACKNOWLEDGE THAT RECOURSE TO THE GUARANTOR AND THE GUARANTOR'S ASSETS IS PERMITTED ONLY FOR BREACHES OF THE REPRESENTATIONS AND WARRANTIES MADE BY THE SELLER IN THE FACTORING AGREEMENT.

**GUARANTOR ACKNOWLEDGEMENT.** Guarantor acknowledges that: (i) He/she understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**JOINT AND SEVERAL LIABILITY** The obligations hereunder of the persons or entities constituting Guarantor under this Agreement are joint and several.

SELLER/MERCHANT
By: XARA DIPIETRO

EIN# 52-2005467

SELLER/MERCHANT
By: XARA DIPIETRO

SS# 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

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY.

CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 6FEB8BFF-9947-48C2-002O-C3F025IAB170



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2036          Fax: 888-305-7562

AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the FACTORING AGREEMENT. You should keep this important legal document for your records

DISBURSEMENT OF BUSINESS CASH ADVANCE PROCEEDS: By signing below, Seller/Merchant authorizes PURCHASER to disburse the Cash Advance Proceeds less the amount of any applicable fees upon approval by initiating an ACH credit to the checking account indicated below (or a substitute checking account Seller/Merchant later identifies and is acceptable to PURCHASER) (hereinafter referred to as the "Designated Checking Account") in the disbursal amount set forth in the accompanying documents. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Merchant's depository bank a reasonable opportunity to act on it

AUTOMATIC PAYMENT PLAN: Enrollment in PURCHASER's Automatic Payment Plan is required for approval. By signing below, Seller/Merchant agrees to enroll in the Automatic Payment Plan and authorizes PURCHASER to collect payments required under the terms of Seller/Merchant Agreement by initiating ACH debit entries to the Designated Checking Account in the amounts and on the dates provided in the payment schedule set forth in the accompanying Seller/Merchant Agreement. Seller/Merchant authorizes PURCHASER to increase the amount of any scheduled ACH debit entry or assess multiple ACH debits for the amount of any previously scheduled payment(s) that was not paid as provided in the payment schedule and any unpaid fees. This authorization is to remain in full force and effect until PURCHASER has received written notification from Seller/Merchant of its termination in such time and in such manner as to afford PURCHASER and Seller/Merchant's depository bank a reasonable opportunity to act on it. PURCHASER may suspend or terminate Seller/Merchant's enrollment in the Automatic Payment Plan immediately if Seller/Merchant fails to keep Seller/Merchant's designated checking account in good standing or if there are insufficient funds in Merchant's checking account to process any payment

If Seller/Merchant revokes the authorization or PURCHASER suspends or terminates Seller/Merchant's enrollment in the Automatic Payment Plan, Seller/Merchant still will be responsible for making timely payments pursuant to the alternative payment methods described in the Seller/Merchant Agreement.

BUSINESS PURPOSE ACCOUNT: By signing below, Seller/Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes.

ACCOUNT CHANGES: Seller/Merchant agrees to notify PURCHASER promptly if there are any changes to the account and routing numbers of the Designated Checking Account

MISCELLANEOUS: PURCHASER is not responsible for any fees charged by Seller/Merchant's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Merchant's account must comply with the provisions of U.S. law.

Signature: _tara DiPietro_          Date: 8/7/2018 1:34:04 PM PDT

Bank Name: _____

City: _____ State: _____ Zip: _____
                 ON FILE

Routing Number: _____
                ON FILE

Account Number: _____
                ON FILE

Business Name on Account: _____

Address on Account: _____

Seller/Merchant Phone #: _____ Tax ID Number: _____

Brand: _____

Signature: _tara DiPietro_

Title: _____

Merchant Initials _____   Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: 6FE0BBFF-D947-48C2-082D-C3F0251A0170

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-927-2636        Fax: 888-305-7562

**BANK ACCOUNT DISCLOSURE AFFIDAVIT**

For the purpose of obtaining the Business Cash Advance evidence by the Merchant Agreement of this same date herewith (the "Business Cash Advance") from Complete Business Solutions Group, Inc., the undersigned Seller/Merchant hereby makes the following statement under penalty of law:

**PLEASE SIGN OPTION ONE OR TWO**

**OPTION 1 – DISCLOSURE AND AUTHORIZATION FOR ADDITIONAL ACCOUNTS:**

The Seller/Merchant hereby declares that in addition to the designated for ACH debit, the Seller/Merchant also has the following additional account(s) which he authorizes us to use in the event we are unable to debit from the designated account.

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account

Bank Name
Name on Account
Account Number
Routing Number
Fed ID number associated with this account
Name associated with this account
Phone number of person whose name is associated with this account
**attach additional pages if necessary**



Seller/Merchant Signature _____   Dated   8/7/2018 1:34:04 PM PDT

Seller/Merchant Signature _____   Dated   8/7/2018 1:34:04 PM PDT

**OPTION 2** – By signing below, the merchant swears, under penalty of law, that he has no accounts in any lending institution in addition to the one provided for ACH debit

Seller/Merchant Signature _____   Dated _____

Seller/Merchant Signature _____   Dated _____

Merchant Initials _____   Merchant Initials _____

Case ID: 190501349

DocuSign Envelope ID: 6FE08BFF-9947-40C2-902D-C3F0251A0170



22 N 3ʳᵈ Street Philadelphia, Pennsylvania 19106
Phone: 215-923-2636          Fax: 888-305-7562

### AUTHORIZATION TO RESUME ACH DEBITING FORM

NAME OF SELLER/MERCHANT: _____

INFORMATION (To be filled out by the customer)

I authorize Company (as shown above) to resume electronically debiting my bank account as detailed below, including a non-sufficient fund fee if applicable, until the debt to the company is paid in full.

Full Name on Account: _____

Account #: _____     Routing #: _____

Account Type (select one):     Checking   ☐     Savings   ☐

Account Class (select one):     Consumer Account   ☐     Business Account   ☐

Payment amount: _____     Number of Payments: _____

Date of next payment: _____     Frequency of payments: _____

I understand that I may cancel this authorization by contacting the company at least five (5) business days prior to the payment due date. I further understand that canceling any ACH authorizations does not relieve me of the responsibility of paying my account in full, and that if I cancel or revoke this authorization before the debt is paid in full, the Company may take additional actions including legal actions to secure the debt.

Customer signature: _____kara DiPietro_____     Date: __8/7/2018 1:34:04 PM PST__

Customer Printed Name: _____

Customer contact Telephone #: _____

Customer signature: _____     Date: _____

Customer Printed Name: _____

Customer contact Telephone #: _____

Page 114          Merchant initials _____     Merchant initials _____

Case ID: 190501349

DocuSign Envelope ID: 6FE88BFF-0947-48C2-962D-C3F0251A8179



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2836         Fax: 888-305-7562

Dear Client,

Thank you for accepting this offer from Complete Business Solutions Group D/b/a Par Funding   We look forward to being your factoring partner for as long as you need

Daily ACH Program:

Complete Business Solutions Group will require viewing access to your bank account prior to funding as part of our underwriting process, as well as during the time you have a balance with our company.

Please be assured that we carefully safeguard your confidential information and only essential top level personnel will have access to it

Please fill out the form below with the information necessary to access your account.

**Be sure to indicate capital or lower case letters.

NAME OF BANK: _____

BANK PORTAL WEBSITE: _____

USERNAME: _____

PASSWORD: _____

SECURITY QUESTION/ANSWER 1: _____

SECURITY QUESTION/ANSWER 2: _____

SECURITY QUESTION/ANSWER 3: _____

ANY OTHER INFORMATION NECESSARY TO ACCESS YOUR ACCOUNTS:

Case ID: 190501349

DocuSign Envelope ID: 6FE08BFF-0947-48C2-062D-C3F0231A8170



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7362

### APPENDIX A: THE FEE STRUCTURE

1   Origination Fee: $4,000.00 to cover underwriting and related expenses

2   ACH Program Fee - $2,000.00 - The ACH program is labor intensive and is not an automated process, requiring us to charge this fee to cover related costs;

3   NSF Fee - $75.00 (each) - Up to FOUR TIMES ONLY before a default is declared;

4   Rejected ACH - $100.00 - If a merchant directs the bank to reject our debit ACH;

5   Bank Change Fee - $50.00 - If a merchant requires a change of account to be debited requiring us to adjust our system;

6   Blocked Account - $250.00 - If a merchant blocks CBSG's ACH debit of the Account, bounces more than 4 debits of the Account or simultaneously uses multiple bank accounts or credit-card processors to process its receipts;

7   Default Fee - $500.00 default fee – If a merchant changes bank accounts or switches to another credit card processor without CBSG's consent, or commits another default pursuant to the Agreement;

8   3rd Party Intermediary Fee – $4,000.00 deposit toward reasonable related expenses incurred by PURCHASER.  If PURCHASER receives a communication from a 3rd party debt relief/renegotiator entity or individual which has been retained by Merchant and which contacts PURCHASER on Merchant's behalf seeking to redirect communication (related to the obligations contained in this Agreement) to itself/themselves and away from Merchant  This fee shall be used to cover Purchaser's reasonable expenses in retaining counsel or other parties to handle this additional administration required by this retention of the intermediary by PURCHASER  Any portion of the fee that is not used by PURCHASER for this purpose shall be returned to Merchant at the conclusion of this Factoring Agreement or related legal action.

9   Collections Expense – In the event of default, Seller / Merchant shall be responsible for all reasonable costs of collections, including, but not limited to, counsel fees, filing fees and any other fees which may be incurred.

10  Miscellaneous Service Fees – Merchant shall pay certain fees for services related to the origination and maintenance of accounts.  Each Merchant shall receive their funding electronically to their designated bank account and will be charged $30.00 for a Fed Wire.  The current charge for the underwriting, UCC, ACH Program and origination of each Merchant will be paid from the funded amount. Merchant will be charged $100.00 for every additional change of their operating bank account once they are active with CBSG  Additional copies of prior monthly statements will incur a fee of $10.00 each.

11  Risk Assessment Fee - $2,000.00

12  UCC Fee – $2,000.00

Merchant Signature: _Isara DiPietro_  Name: _____

Merchant Signature: _Isara DiPietro_  Name: _____

*CBSGhunts 9/14/2018 Agreement*

DocuSign Envelope ID: 6FE00BFF-9947-48C2-902D-C3F0261A8179



22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7562

### MANDATORY JOINT AFFIDAVIT OF CONFESSION OF JUDGEMENT

INSTRUCTIONS:

SIGN AND NOTARIZE THIS SECTION OF THE AGREEMENT, SEND THE ORIGINAL COPY TO:

PAR FUNDING
22 N 3ᴿᴰ STREET
PHILADELPHIA, PA 19106

C/O UNDERWRITING

Merchant Initials_____  Merchant Initials_____

Case ID: 190501349

DocuSign Envelope ID: 6FE88BFF-9047-4BC2-962D-C3F0251A8179

CBSG

22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7562

| NEW YORK UNITY FACTOR, LLC | |
|---|---|
| | Plaintiff, |
| -against- | |
| HMC INCORPORATED D/B/A | |
| HMC INCORPORATED and | |
| KARA DIPIETRO, | |
| | Defendant(s) |

Index No.

**AFFIDAVIT OF**
**CONFESSION OF JUDGMENT**

STATE OF _____ )
                                            )  ss.:
COUNTY OF _____ )

KARA DIPIETRO, being duly sworn, deposes and says:

1. I am a principal, owner, and an officer of HMC INCORPORATED D/B/A HMC INCORPORATED ("Merchant Defendant"), a CORPORATION located at 7190 OAKLAND MILLS RD #10, COLUMBIA, MD 21046, in the County of _____, and as such, I have the authority to act on behalf of Merchant Defendant.

2. I reside at 1836 LANDRAKE RD, TOWSON, MD 21204, in the County of _____.

3. I, individually, and on behalf of Merchant Defendant consent to the jurisdiction of this Court.

4. Merchant Defendant hereby confesses judgment and authorizes entry of judgment in favor of Plaintiff and against Defendants in the Federal District Court for the _____, Court of Common Jurisdiction for the County of _____ in the State of _____ the sum of $1,260,000.00 less any payments timely made pursuant to the secured Merchant Agreement dated AUGUST 7, 2018, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default, or the highest amount allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Affidavit of Confession of Judgment.

Page | 18                                    Merchant Initials        Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 6FE88BFF-0947-48C2-862D-C3F0251A8170

CBSG

22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636      Fax: 888-305-7562

5.    In addition, I hereby confess judgment, individually and personally, jointly and severely, and authorize entry of judgment in favor of Plaintiff and against myself in the Federal District Court for the _____ Court of Common Jurisdiction for the County of _____ in the State of _____, against me personally in the sum of $1,260,000.00 less any payments timely made pursuant to the Merchant Agreement dated AUGUST 7, 2018, plus legal fees to Plaintiff calculated at ten percent (10%) of the total of the aforesaid sums, costs, expenses and disbursements and interest at the rate of 9% per annum from the date of default, or the highest rate allowed by law, whichever is greater. Such amount shall be set forth in an affidavit to be executed by Plaintiff or an affirmation by Plaintiff's attorney, which shall be attached hereto at the time of entry of this Confession of Judgment.

6.    This confession of judgment is for a debt due to Plaintiff arising from Defendants' failure to pay to Plaintiff, Merchant Defendant's accounts-receivable, which were purchased by Plaintiff pursuant to the secured Merchant Agreement dated AUGUST 7, 2018, and for Defendants' breach of the secured Merchant Agreement, plus agreed-upon interest, reasonable attorneys' fees, costs and disbursements, as agreed-upon by Merchant Defendant and myself, under the secured Merchant Agreement, dated AUGUST 7, 2018, of which supporting documents include a Personal Guarantee and a UCC-1 financing statement(s).

7.    Merchant Defendant and I hereby agree that the execution and delivery of this Affidavit of Confession of Judgment and any entry of judgment thereon shall be without prejudice to any and all rights of Plaintiff, who reserves all of its rights and remedies against Defendants.

8.    If for any reason entry of judgment in the above specified amount or execution on the same is outside the jurisdiction of this Court, Merchant Defendant and I hereby consent to the personal jurisdiction, entry of judgment, and execution thereon in any State or Federal Court of the United States of America.

9.    I have been authorized by Merchant Defendant to sign this Affidavit of Confession of Judgment on this _____ day of _____, 2018.

Page | 19                                    *Merchant Initials*        *Merchant Initials*

Case ID: 190501349

DocuSign Envelope ID: 6FE8BBFF-9947-48C2-982D-C3F0261A6179

CBSG

22 N 3ᴿᴰ Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636          Fax: 888-305-7552

By:_____
KARA DIPIETRO, individually, and on behalf of HMC
INCORPORATED D/B/A HMC INCORPORATED

Sworn to before me this
_____ day of _____, 2018.

_____
        Notary Public

Merchant Initials          Merchant Initials

Case ID: 190501349

DocuSign Envelope ID: 0FE88BFF-9947-46C2-982D-C3F0251A8179



22 N 3RD Street Philadelphia, Pennsylvania 19106
Phone: 215-922-2636        Fax: 888-305-7552

AUGUST 7, 2018

Attn: Court Orders & Levies Dept.

Re:   *HMC INCORPORATED, et al.*
Supreme Court of the State of New York, Richmond County   Index No.
*Information Subpoena and Restraining Notice - RELEASE*

Complete Business Solutions Group, Inc. d/b/a Par Funding ("Funder"), Plaintiff/Judgment Creditor, and KARA DIPIETRO ("KARA") and HMC INCORPORATED ("HMC INCORPORATED"), Defendants/Judgment Debtors (collectively, "the Parties"), hereby authorize _____, N.A. and/or related entities (collectively, "_____ ,N.A.") to release ($_____) (the "Release Amount") from the funds currently held in reserve per the Information Subpoena with Restraining Notice ("IS/RN"), payable as follows:

Via check                                                      Via wire to:

|  |  |
|---|---|
|  |  |

HMC INCORPORATED and KARA agree to indemnify and hold harmless _____, N.A. and its officers, directors, agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from this release and/or the IS/RN. Upon tender of the Release Amount, Funder consents to the immediate RELEASE of the remainder and/or account(s) being held on reserve to HMC INCORPORATED, KARA, and/or its/their principals, agents, heirs and assigns.

10.     AGREED AND ACCEPTED:

By: _____                    By: _____
KARA DIPIETRO _____(Name)                 Norman M. Valz, Esq.
Owner/Manager/Agent _____(Title)          *Attorney for Plaintiff/Judgment*
individually, and on behalf of *HMC*         *Creditor, NEW YORK UNITY*
*INCORPORATED*                                *FACTOR LLC and*
                                             Complete Business Solutions Group, Inc.
                                             205 Arch Street – 2nd Floor
                                             Philadelphia, PA  19106
                                             (215)        (tel.)

State of _____ )
                                  ) ss:
County of _____ )

Page | 21                        *Merchant Initials* ____   *Merchant Initials* ____

Case ID: 190501349

# Exhibit 2



HMC PAYMENT HISTORY
MARCH 2018 - MAY 2019



HMC Incorporated Daily Payment History
2/2018 - 5/2019

Exhibit 3

## CHART A

### CALCULATION METHOD SEPERATE DEALS & PAYMENTS SORTED BY OPEN AND CLOSED CONTRACTS

| STATUS | DATE | CBSG FUNDED | HMC PAID |
|---|---|---|---|
| PAID | 2/26/2018 | $ 815,787.00 | $ 1,099,611.46 |
| PAID | 3/16/2018 | $ 247,832.00 | $ 281,504.00 |
| PAID | 3/29/2018 | $ 247,832.00 | $ 284,254.00 |
| PAID | 4/18/2018 | $ 247,832.00 | $ 303,165.34 |
| PAID | 4/25/2018 | $ 283,661.84 | $ 295,215.18 |
| PAID | 5/1/2018 | $ 587,230.66 | $ 667,468.12 |
| PAID | 5/17/2018 | $ 752,056.00 | $ 863,170.59 |
| PAID | 5/18/2018 | $ 496,990.00 | $ 508,567.35 |
| PAID | 5/31/2018 | $ 516,915.16 | $ 597,523.08 |
| PAID | 6/4/2018 | $ 467,792.34 | $ 1,328,522.98 |
| PAID | 6/7/2018 | $ 526,831.00 | $ 610,984.80 |
| PAID | 6/11/2018 | $ 1,211,779.72 | $ 1,294,224.48 |
| PAID | 8/14/2018 | $ 1,195,835.82 | $ 1,531,036.79 |
| PAID | 7/19/2018 | $ 392,000.00 | $ 503,925.00 |
| PAID | 7/27/2018 | $ 750,112.00 | $ 942,059.40 |
| PAID* | 8/7/2018 | $ 890,000.00 | $ 1,083,307.09 |
| PAID | 8/21/2018 | $ 490,000.00 | $ 630,000.00 |
| PAID | 10/15/2019 | $ 735,000.00 | $ 870,000.00 |
| PAID | 11/2/2018 | $ 1,536,987.51 | $ 1,985,866.76 |
| | | $ 12,332,444.85 | $ 15,680,406.42 |

| STATUS | DATE | CBSG FUNDED | HMC PAID |
|---|---|---|---|
| EXHIBIT A | 8/24/2018 | $ 1,780,756.14 | $ 1,912,419.00 |
| EXHIBIT B | 5/3/2019 | $ 97,500.00 | |
| EXHIBIT C | 2/28/2019 | $ 3,286,500.00 | $ 2,691,825.00 |
| EXHIBIT D | 12/19/2018 | $ 3,870,000.00 | $ 2,508,793.00 |
| EXHIBIT E | 10/3/2019 | $ 1,496,523.11 | $ 1,364,222.00 |
| | | $ 10,531,279.25 | $ 8,677,259.00 |

## CHART B

### CALCULATION METHOD COMBINE ALL FUNDING RECEIVED & ALL PAYMENTS MADE

| STATUS | DATE | CBSG FUNDED | HMC PAID |
|---|---|---|---|
| PAID | 2/26/2018 | $ 815,787.00 | $ 1,099,611.46 |
| PAID | 3/16/2018 | $ 247,832.00 | $ 281,504.00 |
| PAID | 3/29/2018 | $ 247,832.00 | $ 284,254.00 |
| PAID | 4/18/2018 | $ 247,832.00 | $ 303,165.34 |
| PAID | 4/25/2018 | $ 283,661.84 | $ 295,215.18 |
| PAID | 5/1/2018 | $ 587,230.66 | $ 667,468.12 |
| PAID | 5/17/2018 | $ 752,056.00 | $ 863,170.59 |
| PAID | 5/18/2018 | $ 496,990.00 | $ 508,567.35 |
| PAID | 5/31/2018 | $ 516,915.16 | $ 597,523.08 |
| PAID | 6/4/2018 | $ 467,792.34 | $ 1,328,522.98 |
| PAID | 6/7/2018 | $ 526,831.00 | $ 610,984.80 |
| PAID | 6/11/2018 | $ 1,211,779.72 | $ 1,294,224.48 |
| PAID | 6/14/2018 | $ 1,195,835.62 | $ 1,531,036.79 |
| PAID | 7/19/2018 | $ 392,000.00 | $ 503,925.00 |
| PAID | 7/27/2018 | $ 750,112.00 | $ 942,059.40 |
| PAID* | 8/7/2018 | $ 890,000.00 | $ 1,083,307.09 |
| PAID | 8/21/2018 | $ 490,000.00 | $ 630,000.00 |
| PAID | 10/15/2019 | $ 735,000.00 | $ 870,000.00 |
| PAID | 11/2/2018 | $ 1,536,987.51 | $ 1,985,866.76 |
| EXHIBIT A | 9/24/2018 | $ 1,780,756.14 | $ 1,912,419.00 |
| EXHIBIT B | 5/3/2019 | $ 97,500.00 | |
| EXHIBIT C | 2/28/2019 | $ 3,286,500.00 | $ 2,691,825.00 |
| EXHIBIT D | 12/19/2018 | $ 3,870,000.00 | $ 2,508,793.00 |
| EXHIBIT E | 10/3/2019 | $ 1,496,523.11 | $ 1,364,222.00 |
| | | $ 22,863,724.10 | $ 24,357,665.42 |

## CHART C

### HMC REVENUE 03/2018 TO 5/2019

| MONTH | HMC REVENUE |
|---|---|
| Feb-18 | $ 631,075.08 |
| Mar-18 | $ 343,535.28 |
| Apr-18 | $ 678,088.68 |
| May-18 | $ 27,602.99 |
| Jun-18 | $ 750,236.99 |
| Jul-18 | $ 1,137,102.44 |
| Aug-18 | $ 895,708.93 |
| Sep-18 | $ 444,223.76 |
| Oct-18 | $ 198,915.62 |
| Nov-18 | $ 315,715.41 |
| Dec-18 | $ 370,080.38 |
| Jan-19 | $ 313,898.80 |
| Feb-19 | $ 140,123.31 |
| Mar-19 | $ 853,987.96 |
| Apr-19 | $ 601,946.21 |
| May-19 | $ 766,699.14 |
| | $ 8,469,940.98 |

## CHART D

### CALCULATION SHOWING WHAT % OF REVENUE CBSG WAS TAKING FOR PAYMENTS

| CBSG PAYMENT | % OF REVENUE |
|---|---|
| $ 32,246.00 | 5.11% |
| $ 200,967.60 | 58.50% |
| $ 725,048.49 | 106.93% |
| $ 1,731,984.76 | 6274.55% |
| $ 2,523,984.00 | 336.42% |
| $ 2,346,987.00 | 206.40% |
| $ 1,628,808.00 | 181.85% |
| $ 884,774.00 | 199.17% |
| $ 2,116,301.00 | 1063.92% |
| $ 1,383,011.00 | 430.36% |
| $ 2,813,100.00 | 760.13% |
| $ 1,099,319.00 | 350.21% |
| $ 1,508,713.00 | 1076.70% |
| $ 1,364,222.00 | 159.75% |
| $ 1,891,825.00 | 314.28% |
| $ 489,003.00 | 63.78% |
| $ 23,413,076.34 | 11588.07% |
| | AVERAGE 724.25% |

KARA A. DIPIETRO
KDIPIETRO@HMCINCORPORATED.COM
(410)340-1523

HMC

*EXHIBIT F (PAID)   8/7/2018   $   890,000.00   $   1,063,307.09

Exhibit 4

SCHWARTZ & STAFFORD, P.A.

PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW
SUITE 110, 8625 CROWN CRESCENT COURT
CHARLOTTE, NORTH-CAROLINA 28227
TOLL FREE (866) 954-4455
TELEPHONE (704) 208-5176
FACSIMILE (980) 330-2158

REPLY TO CHARLOTTE OFFICE

BENJAMIN D. SCHWARTZ
ADMITTED IN NC, GA, PA & NJ
bschwartz@pss-law.com

KATHERINE S. STAFFORD
ADMITTED IN NC

LESLIE ANN L. DUNN
ADMITTED IN FL, GA & CA

OF COUNSEL:
ROGER A. JAVIER
ADMITTED IN LA

STEVEN KANTROWITZ
ADMITTED IN PA, NY, OH & D.C.

RUBEN V. CHAVEZ
ADMITTED IN FL

MAY 28, 2019

HMC Incorporated
719 Oakland Mills Road, Ste 110
Columbia, MD 21046

Re:    Complete Business Solutions Group, Inc. vs. HMC
Incorporated and Kara Dipietro and Wells Fargo Bank, N.A.

Dear Sir or Madam:

This Firm represents Wells Fargo Bank, N.A. (Wells Fargo) in this matter. We _**DO NOT**_ represent the Plaintiff (the party who obtained a Judgment in this case). Should you need to discuss settlement or have questions about the Judgment, please call Plaintiff's counsel (his/her information is in the accompanying documents).

Please find enclosed the Writ of Execution which was served on Wells Fargo. Also, please find a copy of the Entry of Appearance.

Sincerely,

Benjamin D. Schwartz

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
By: John Hartley, Esquire
Attorney I.D. No.: 47106
By: Brian H. Smith, Esquire
Attorney I.D. No.: 65627
20 N. 3rd Street
Philadelphia, PA 19106
(215) 987-3671

Attorneys for Plaintiff

| COMPLETE BUSINESS SOLUTIONS GROUP, INC.: PHILADELPHIA COUNTY | |
|---|---|
| *Plaintiff* | : COURT OF COMMON PLEAS |
| | : |
| vs. | : |
| | : |
| HMC INCORPORATED | : May Term, 2019 No. 001349 |
| and | : |
| KARA DIPIETRO | : Case ID No. 190501349 |
| *Defendant(s)* | |

WRIT OF EXECUTION

To the Sheriff of Philadelphia County:

To Satisfy the Judgment, interest and costs against:

HMC INCORPORATED, located at 7190 Oakland Mills Road, #10 Columbia, MD 21046.

Tax ID:  52-2005467

KARA DIPIETRO, residing at 1836 Landrake Road Towson, MD 21204.

SSN:  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

*Defendant(s)*

(a) You are directed to levy upon the property of the defendant(s) and to sell defendant's(s') interest therein;
   N.A.
(b) You are also directed to attach the property of the defendant(s) not levied upon in the possession of
   TD BANK, WELLS FARGO BANK, CAPITAL ONE BANK, JP MORGAN CHASE & CO. BANK OF AMERICA,
   M&T BANK, SANTANDER BANK, PNC BANK, BB&T BANK, CITIZENS BANK, HSBC BANK, as garnishee(s).

*(Specifically describe property)*

And to notify the garnishee(s) that:

   (a) an attachment has been issued: _____
   (b) except as provided in paragraph (c), the garnishee is enjoined from paying any debt to or for the account of the
      defendant and from delivering any property of the defendant or otherwise disposing thereof;
   (c) the attachment shall not include _____
      (i)      the first $10,000.00 of each account of the defendant with a bank or other financial institution
               containing any funds that are deposited electronically on a recurring basis and are identified as being
               funds, which upon deposit, are exempt from execution, levy, or attachment under Pennsylvania or
               Federal law.

Case ID: 190501349

(ii)  each account of the defendant with a bank or other financial institution in which funds on deposit exceed $10,000.00 at any time if all funds are deposited electronically in a recurring basis and are identified as being funds, which upon deposit, are exempt from execution, levy, or attachment under Pennsylvania, or Federal law.

(iii)  Any funds in the account of the defendant with a bank account or other financial institution that total $300.00 or less. If multiple accounts are attached, a total of $30000 in all accounts shall not be subject to levy and attachment as determined by the executing officer. The funds shall be set aside pursuant to the defendant's general exemption provided in 42 Pa.C.S. §8123.

(d) if property of the defendant not levied upon and subject to attachment is found in the possession of anyone other than a named garnishee, you are directed to notify such person that he or she has been added as a garnishee and is enjoined as above stated.

AMOUNT DUE: $11,985,719.32

INTEREST FROM May 14, 2019: $5,910.77

COSTS TO BE ADDED: $173.12

Total: $11,991,803.21

ERIC FEDER

Director, Office of Judicial Records

By: _____
            *Clerk*

Date: _____



Case ID: 190501349

Filed and Attested by the
Office of Judicial Records
17 MAY 2019 11:24 am
M. RAFFERTY

COURT OF COMMON PLEAS

COMPLETE BUSINESS SOLUTIONS GROUP, INC.: PHILADELPHIA COUNTY
             *Plaintiff*           : COURT OF COMMON PLEAS

           vs.

HMC INCORPORATED         : May Term, 2019 No. 001349
and
KARA DIPIETRO            : Case ID No. 190501349
         *Defendant(s)*

WRIT OF EXECUTION

Real Debt: $11,985,719.32

Interest from May 14, 2019: $5,910.77

COSTS PAID *(Office of Judicial Records)*: $173.12

Sheriff:

Statutory:

Costs Due *(Office of Judicial Records)*:

Total: $11,991,803.21

By: _____

Brian H. Smith, Esquire
Attorney I.D. No.: 47106
20 N. 3rd Street
Philadelphia, PA 19106
Telephone: (215) 987-3671
*Attorney for Plaintiff*    Case ID: 190501349

## Commonwealth of Pennsylvania
### COUNTY OF PHILADELPHIA

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC.: PHILADELPHIA COUNTY | |
| *Plaintiff* | : COURT OF COMMON PLEAS |
| vs. | : |
| HMC INCORPORATED | : May Term, 2019 No. 001349 |
| and | |
| KARA DIPIETRO | : Case ID No. 190501349 |
| *Defendant(s)* | : |

### WRIT OF EXECUTION NOTICE

This paper is a Writ of Execution. It has been issued because there is a judgment against you. It may cause your property to be held or taken to pay the judgment. You may have legal rights to prevent your property from being taken. If you wish to exercise your rights, you must act promptly.

Exempt Property: The law provides that certain property cannot be taken. Such property is said to be exempt. There is a debtor's exemption for $300.00. There are other exemptions, which may be applicable to you. Attached is a summary of some of the major exemptions. You may have other exemptions or other rights.

If you have an exemption, you should do the following promptly: (1) Fill out the attached exemption claim form and demand for a prompt hearing; (2) Deliver the form or mail it to the Sheriff's Office at the address noted. The fee to file this is $20.00 (Attorney check, certified check, cashiers check or money order only).

You should come to court ready to explain your exemption. If you do not come to court and prove your exemption, you may lose some of your property.

Property Belonging to Another Person: If there is property at your residence (or in your bank account) that belongs to another person or that you own with another person, you should notify that person so that he/she can file a Property Claim (fee to file is $40.00, attorney check, certified check, cashiers check or money order only) or other legal papers with the Sheriff's Office to prevent his/her property from being taken or sold at Sheriff's Sale to satisfy your debt. See enclosed forms.

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP."

"LLEVE EST DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SO NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AERIGUAR DONDE SE PUDE CONSOUAR ASISTENCIA LEGAL."

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: (215) 238-1701

Associacion De Licenciados De Filadelfia
Servicio Da Referenda E Information Legal One
Reading Center
Filadelfia, PA 19107
Telefono: (215) 238-1701

EXHIBIT "A"

PLAINTIFF: Complete Bus. Sol. Grp. Inc VS. DEFENDANT HMC INCORPORATED, et al.

Court & Term No. 190501349   Claim No.

### CLAIM FOR EXEMPTION

TO THE SHERIFF:

I, the above-named defendant, claim exemption of property from levy (1) or attachment (2):

(1)   From my personal property in my possession which has been levied upon.

(a)   I desire that my $300.00 statutory exemption by

[ ] (I) set aside in kind (specify property to be set aside in kind):

[ ] (II) paid in cash following the sale of the property levied upon; or

(b)   I claim the following exemption (specify property and basis of exemption):

(2)   From my property which is in the possession of a third party, I claim the following exemptions:

(a)   my $300.00 statutory exemption [ ] in cash [ ] in kind

(specify property):

(b)   Social Security benefits on deposit in the amount of : $

(c)   Other (specify amount and basis of exemption):

I request a prompt court hearing to determine the exemption.

Notice of the hearing should be given to me at: (Name, Address & Telephone Number)

I verify that the statements made in this Claim for Exemption are true and correct. I understand that false statements herein are made subject to the penalties of 18 PA.C.S. Section 4904 relating to unsworn falsification to authorities.

Date:_____ Defendant(s): _____

Phone #_____ Address: _____

City, Zip: _____

THIS CLAIM TO BE FILED WITH:     Office of the Sheriff of Philadelphia County
Land Title Building
100 South Broad Street, Fifth Floor Philadelphia, PA 19110
(215) 686-3559/60

Note:   Under paragraphs (1) and (2) of the writ, a description of specific property to be levied upon or attached may be set forth in the writ or included in a separate direction to the Sheriff.

Under paragraph (2) of the writ, if attachment of a named garnishee is desired, his name should be set forth in the space provided.

Under paragraph (3) of the writ, the Sheriff may, as under prior practice, add as a garnishee any person not named in this writ may be found in possession of property of the defendant. See Rule 3111(a). For limitations on the power to attach tangible personal property, see Rule 3108(a).

(b)   Each court shall by local rule designate the officer, organization or person to be named in the notice.

### MAJOR EXEMPTIONS UNDER PENNSYLVANIA AND FEDERAL LAW

(1)   $300.00 statutory exemption

(2)   Bibles, school books, sewing machines, uniforms and equipment

(3)   Most wages and unemployment compensation

(4)   Social Security benefits

(5)   Certain retirement fund and accounts

(6)   Certain veteran and armed forces benefits

(7)   Certain insurance proceeds

EXHIBIT "A-1"

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC.: | PHILADELPHIA COUNTY |
| *Plaintiff* | : COURT OF COMMON PLEAS |
| | : |
| vs. | : |
| | : |
| HMC INCORPORATED | : May Term, 2019 No. 001349 |
| and | : |
| KARA DIPIETRO | : Case ID No. 190501349 |
| *Defendant(s)* | : |

### NOTICE TO CO-OWNER OF ATTACHMENT OF PROPERTY

Date:_____

The Bank account or other property that you own with the defendant(s) above-named, have been attached by plaintiff, to satisfy a judgment obtained by the plaintiff against the defendant. Your money or property may soon be taken even though you owe nothing to the plaintiff.

If some of the funds in the account or some of the property held by the garnishee, _____, belongs to you, you should contact the bank or garnishee to see if it is defending your funds or property against garnishment. If the bank or garnishee is not defending against garnishment of property, you can prevent garnishment by filling a Petition with the Sheriff.

To protect your funds or property, you should complete the attached Petition to Intervene Stay and Set Aside Writ of Execution as to Non-Judgment Debtor Property and file it in the Office of the Sheriff within fifteen (15) days after the date of this notice.

For additional information, you may call the Sheriff's Office at (215) 686-3559/60.

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP."

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: (215) 238-1701

"LLEVE EST DEMANDA A UN ABOGADO IMMEDIATAMENTE, SI NO TIENE ABOGADO O SO NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AERIGUAR DONDE SE PUDE CONSGUIR ASISTENCIA LEGAL."

Associacion De Licenciados De
Filadelfia Servicio De Referencia E
Informacion Legal One Reading Center
Filadelfia, PA 19107
Telefono: (215) 238-1701

EXHIBIT "F"

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC.: | PHILADELPHIA COUNTY |
| *Plaintiff* : | COURT OF COMMON PLEAS |
| vs. : | |
| HMC INCORPORATED : | May Term, 2019 No. 001349 |
| and : | |
| KARA DIPIETRO : | Case ID No. 190501349 |
| *Defendant(s)* : | |

## PETITION TO INTERVENE, STAY AND SET ASIDE
### WRIT OF EXECUTION AS TO NON-JUDGMENT OF DEBTOR PROPERTY
($40.00 to file - must be in form of attorney's check, cashier check, certified check or money order only.)

This petition respectfully represents:

1.  I,_____, the Petitioner, am a party in interest and hereby move to intervene in this garnishment proceeding pursuant to PA.R.Civ. P. Nos. 3121 and 3126 et seq.
2.  The plaintiff has attached personal property belonging to me currently in the possession of the garnishee.
3.  This attached property consists of:
    [ ] money held in a bank account held in common or jointly with the defendant
    [ ] other (specify) _____
4.  The Writ of Execution must be stayed and set aside as to my property because the plaintiff does not have the legal right to attach and/or garnish property other than that belonging to the judgment debtor in this matter.
5.  I verify that the foregoing statements of fact are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 PA. C.S.A. 4904 relating to unsworn falsifications to authorities.

Date:_____

_____
(Petitioner)

_____
(Address)

_____
(Telephone)

EXHIBIT "O"

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

| | |
|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC.: | PHILADELPHIA COUNTY |
| *Plaintiff* | : COURT OF COMMON PLEAS |
| vs. | : |
| HMC INCORPORATED | : May Term, 2019 No. 001349 |
| and | : |
| KARA DIPIETRO | : Case ID No. 190501349 |
| *Defendant(s)* | |

### APPLICATION TO PROCEED IN FORMA PAUPERIS (PROPERTY CLAIM/PETITION TO INTERVENE, STAY AND SET ASIDE WRIT OF EXECUTION)

TO THE SHERIFF:

1. My personal property is subject to levy or attachment due to a judgment against another person.
2. Because of my financial condition, I am unable to pay the fees and costs of filing my Property Claim form/Petition to Intervene, Stay and Set Aside Writ of Execution; and to defend my property interests.
3. I am unable to obtain funds from anyone, including my family and associates, to pay the costs of this litigation. I understand that I have a continuing obligation to inform the Court of improvement in my financial circumstances, which would permit me to pay the cost incurred herein.
4. I verify that the information disclosed on this application and the attached Financial Statement are true and correct to the best of my knowledge, information and belief.
   I understand that false statements herein are made subject to penalties of 18 PA C.S.A. 4904 relating to unsworn falsification to authorities.

Name: _____

Address: _____

Telephone: _____

EXHIBIT "H"

PLAINTIFF: Complete Bus. Sol. Grp. Inc VS. DEFENDANT HMC INCORPORATED, et al.
Court & Term No. 190501349   Claim No. _____

## FINANCIAL STATEMENT

(a)   Name: _____
      Address: _____
      _____ Phone Number _____
      Social Security Number: _____
(b)   Employment: If you are recently employed, state
      Employer: _____
      Address: _____
      _____ Phone Number _____
      Salary or wages per month: _____ Type
      of work: _____
(c)   Other Income within the past twelve (12) months:
      Business or Profession: _____ Other
      Self-Employment: _____
      Interest: _____ Dividends: _____
      Pension and Annuities: _____ Social
      Security Benefits: _____ Support Payments: _____
      Disability Payments: _____
      Unemployment Compensation/Workers Compensation: _____

      Public Assistance: _____ Other: _____
(d)   Other Contributions to Household Support

      (Wife) (Husband) Name: _____ If
      your (Wife/Husband) is employed, state:
            Employer: _____ Salary
            or wages per month: _____ Type
            of Work: _____
      Contributions from Children: _____
      Contributions from Parents: _____ Other
      Contributions: _____
(e)   Property Owned:
      Cash: _____
      Checking Account: _____ Savings Account: _____
      Certificates of Deposit: _____ Real
      Estate (including home): _____

            Motor Vehicle: Make: _____ Year: _____
                           Cost: _____ Amount Owed: _____

      Stocks/bonds: _____
(f)   Debts and Obligations
      Mortgage: _____ Rent: _____
      Loans: _____ Other: _____
(g)   Persons Dependent Upon You for Support
      (Wife/Husband) Name: _____
      Children, if any:
            Name: _____ Age: _____
            _____ Age: _____
            _____ Age: _____
      Other Persons:
      Name: _____
      Relationship: _____
                        EXHIBIT "H-1"

SCHWARTZ & STAFFORD, P.A.
By:  Benjamin D. Schwartz, Esquire, I.D. No.: 313343
8625 Crown Crescent Court, Suite 110
Charlotte, NC 28227
(704) 708 - 5176
Attorney for Garnishee

| Complete Business Solutions Group, Inc. | In the Court of Common Pleas of Philadelphia County, Pennsylvania |
|---|---|
| vs. | |
| HMC Incorporated and Kara Dipietro | No. May Term, 2019 No. 001349 |
| and | Atty I.D.# 313343 |

WELLS FARGO BANK, GARNISHEE

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

    Kindly enter my appearance on behalf of Wells Fargo Bank, N.A., in the above-captioned matter.

 

_____
BENJAMIN D. SCHWARTZ
Attorney for Garnishee

Dated: 5/28/2019



05/24/2019

**PERSONAL & CONFIDENTIAL**

HMC INCORPORATED
7190 OAKLAND MILLS ROAD #10
COLUMBIA MD 21046

Re:.COMPLETE BUSINESS SOLUTIONS GROUP INC VS HMC INCORPORATED KARA
DIPIETRO
PNC File No.: 2019-G0070431

Dear Customer:

Enclosed is a copy of a Writ of Execution, which the Sheriff has served on this Bank as
garnishee. All of your accounts and any safe deposit box or property of yours in the Bank's
possession or custody or which comes into its possession hereafter until such time as judgment
is entered against it as garnishee or the Writ is dissolved, have been attached by this execution.

However, a search of our records fails to reveal any open checking or savings accounts in your
name. If this is incorrect, please advise us immediately.

Under rules of civil procedure, we are required to notify you.
You should immediately consult your attorney if you have any questions regarding this
execution.

*Sincerely,*

Brittany Vrana
PNC Bank
Pittsburgh Garnishments
500 First Avenue
P7-PFSC-02-11
Pittsburgh, PA 15219
(Tel) 1-888-849-2096 opt 2
(Fax) 855-442-8717



09-28-19;10:42AM;PNC 1800 MARKET ST                                    ;215-585-'194          # 17 9

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

| | | |
|---|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP, INC.: | : | PHILADELPHIA COUNTY |
| *Plaintiff* | : | COURT OF COMMON PLEAS |
| | : | |
| vs. | : | |
| | : | |
| HMC INCORPORATED | : | May Term, 2019 No. 001349 |
| and | : | |
| KARA DIPIETRO | : | Case ID No. 190501349 |
| *Defendant(s)* | : | |

### WRIT OF EXECUTION NOTICE

This paper is a Writ of Execution. It has been issued because there is a judgment against you. It may cause your property to be held or taken to pay the judgment. You may have legal rights to prevent your property from being taken. If you wish to exercise your rights, you must act promptly.

Exempt Property: The law provides that certain property cannot be taken. Such property is said to be exempt. There is a debtor's exemption for $300.00. There are other exemptions, which may be applicable to you. Attached is a summary of some of the major exemptions. You may have other exemptions or other rights.

If you have an exemption, you should do the following promptly: (1) Fill out the attached exemption claim form and demand for a prompt hearing; (2) Deliver the form or mail it to the Sheriff's Office at the address noted. The fee to file this is $20.00 (Attorney check, certified check, cashiers check or money order only).

You should come to court ready to explain your exemption. If you do not come to court and prove your exemption, you may lose some of your property.

Property Belonging to Another Person: If there is property at your residence (or in your bank account) that belongs to another person or that you own with another person, you should notify that person so that he/she can file a Property Claim (fee to file is $40.00, attorney check, certified check, cashiers check or money order only) or other legal papers with the Sheriff's Office to prevent his/her property from being taken or sold at Sheriff's Sale to satisfy your debt. See enclosed forms.

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP."

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: (215) 238-1701

"LLEVE EST DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SO NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AERIGUAR DONDE SE PUDE CONSIGUIR ASISTENCIA LEGAL."

Asociacion De Licenciedos De Filadelfia
Servicio De Referencia E Informacion Legal One
Reating Center
Filadelfia, PA 19107
Telefono: (215) 238-1701

EXHIBIT "A"

05-28-19;10:42AM;PNC 1800 MARKET ST                    ;215-585-1194          # 2/ 9

PLAINTIFF: Complete Bus. Sol. Grp, Inc VS. DEFENDANT HMC INCORPORATED, et al.

Court & Term No. 190501349  Claim No. _____

<div align="center">

**CLAIM FOR
EXEMPTION**
</div>

TO THE SHERIFF:

    I, the above-named defendant, claim exemption of property from levy (1) or attachment (2):

    (1)    From my personal property in my possession which has been levied upon.

        (a)  I desire that my $300.00 statutory exemption by

        [ ]  (I) set aside in kind (specify property to be set aside in kind);

        [ ]  (II) paid in cash following the sale of the property levied upon; or

        (b)  I claim the following exemption (specify property and basis of exemption)

    (2)    From my property which is in the possession of a third party, I claim the following exemptions:

        (a)  my $300.00 statutory exemption [ ] in cash [ ] in kind (specify property): _____

        (b)  Social Security benefits on deposit in the amount of $ _____

        (c)  Other (specify amount and basis of exemption): _____

I request a prompt court hearing to determine the exemption.
Notice of the hearing should be given to me at: (Name, Address & Telephone Number)

I verify that the statements made in this Claim for Exemption are true and correct. I understand that false statements herein are made subject to the penalties of 18 PA.C.S, Section 4904 relating to unsworn falsification to authorities.

    Date: _____ Defendant(s): _____

Phone # _____ Address: _____

        City, Zip: _____

THIS CLAIM TO BE FILED WITH:    Office of the Sheriff of Philadelphia County
        Land Title Building
        100 South Broad Street, Fifth Floor Philadelphia, PA 19110
        (215) 686-3559/60

Note!    Under paragraphs (1) and (2) of the writ, a description of specific property to be levied upon or attached may be set forth in the writ or included in a separate direction to the Sheriff.

    Under paragraph (2) of the writ, if attachment of a named garnishee is desired, his name should be set forth in the space provided.

    Under paragraph (3) of the writ, the Sheriff may, as under prior practice, add as a garnishee any person not named in this writ may be found in possession of property of the defendant. See Rule 3111(a). For limitations on the power to attach tangible personal property, see Rule 3108(a).

    (b)  Each court shall by local rule designate the officer, organization or person to be named in the notice.

MAJOR EXEMPTIONS UNDER PENNSYLVANIA AND FEDERAL LAW

    (1)    $300.00 statutory exemption

    (2)    Bibles, school books, sewing machines, uniforms and equipment

    (3)    Most wages and unemployment compensation

    (4)    Social Security benefits

    (5)    Certain retirement fund and accounts

    (6)    Certain veteran and armed forces benefits

    (7)    Certain insurance proceeds

<div align="center">EXHIBIT "A-1"</div>

05-29-19;10:42AM;PNC 1900 MARKET ST                    ;215-585-1194               #  7/  9

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
By: John Hartley, Esquire
Attorney I.D. No.: 47106
By: Brian H. Smith, Esquire
Attorney I.D. No.: 65627
20 N. 3rd Street                                    Attorneys for Plaintiff
Philadelphia, PA 19106
(215) 987-3671

| COMPLETE BUSINESS SOLUTIONS GROUP, INC. | PHILADELPHIA COUNTY |
|---|---|
| *Plaintiff* | COURT OF COMMON PLEAS |
| vs. | |
| HMC INCORPORATED | May Term, 2019 No. 001349 |
| and | |
| KARA DIPIETRO | Case ID No. 190501349 |
| *Defendant(s)* | |

### WRIT OF EXECUTION

To the Sheriff of Philadelphia County:

To Satisfy the Judgment, interest and costs against:

HMC INCORPORATED, located at 7190 Oakland Mills Road, #10  Columbia, MD 21046.

Tax ID: ▓▓▓▓▓▓

KARA DIPIETRO, residing at 1836 Landrake Road  Towson, MD 21204.

SSN: ▓▓▓▓▓▓▓

*Defendant(s)*

(a)  You are directed to levy upon the property of the defendant(s) and to sell defendant's(s') interest therein:
N.A.

(b)  You are also directed to attach the property of the defendant(s) not levied upon in the possession of
TD BANK, WELLS FARGO BANK, CAPITAL ONE BANK, JP MORGAN CHASE & CO. BANK OF AMERICA, M&T BANK, SANTANDER BANK, PNC BANK, BB&T BANK, CITIZENS BANK, HSBC BANK, as garnishee(s).

*(Specifically describe property)*

And to notify the garnishee(s) that:

(a)  an attachment has been issued: _____
(b)  except as provided in paragraph (c), the garnishee is enjoined from paying any debt to or for the account of the defendant and from delivering any property of the defendant or otherwise disposing thereof;
(c)  the attachment shall not include: _____
     (i)  the first $10,000.00 of each account of the defendant with a bank or other financial institution containing any funds that are deposited electronically on a recurring basis and are identified as being funds, which upon deposit, are exempt from execution, levy, or attachment under Pennsylvania or Federal law.

Case ID: 190501349

(ii)    each account of the defendant with a bank or other financial institution in which funds on deposit exceed $10,000.00 at any time if all funds are deposited electronically in a recurring basis and are identified as being funds, which upon deposit, are exempt from execution, levy, or attachment under Pennsylvania, or Federal law.

(iii)    Any funds in the account of the defendant with a bank account or other financial institution that total $300.00 or less. If multiple accounts are attached, a total of $30000 in all accounts shall not be subject to levy and attachment as determined by the executing officer. The funds shall be set aside pursuant to the defendant's general exemption provided in 42 Pa.C.S. §8123.

(d)  if property of the defendant not levied upon and subject to attachment is found in the possession of anyone other than a named garnishee, you are directed to notify such person that he or she has been added as a garnishee and is enjoined as above stated.

AMOUNT DUE: $11,985,719.32

INTEREST FROM May 14, 2019: $5,910.77

COSTS TO BE ADDED: $173.12

Total: $11,991,803.21

ERIC FEDER

Director, Office of Judicial Records

By: _____
             *Clerk*

Date: _____



Case ID: 190501349

06-23-19 10:42AM PNC 1600 MARKET ST                                      (215) 585-1104        # 87 9

Filed and Attested by the
Office of Judicial Records
17 MAY 2019 11:24 am
G. BIVIGLIA

COURT OF COMMON PLEAS

COMPLETE BUSINESS SOLUTIONS GROUP, INC.: PHILADELPHIA COUNTY
                        *Plaintiff*                    : COURT OF COMMON PLEAS
                                                       :
                        vs.                            :
                                                       :
HMC INCORPORATED                                       : May Term, 2019 No. 001349
and                                                    :
KARA DIPIETRO                                          : Case ID No. 190501349
                        *Defendant(s)*                 :

WRIT OF EXECUTION

Real Debt: $11,985,719.32

Interest from May 14, 2019: $5,910.77

COSTS PAID *(Office of Judicial Records)*: $173.12

Sheriff:

Statutory:

Costs Due *(Office of Judicial Records)*:

Total: $11,991,803.21

By: _____

Brian H. Smith, Esquire
Attorney I.D. No.: 47106
20 N. 3rd Street
Philadelphia, PA 19106
Telephone: (215) 987-3671
*Attorney for Plaintiff*        Case ID: 190501349

Exhibit 5

| E-MAIL SENT TO | Debtor: HMC INCORPORATED; D/B/A KARA DIPIETRO | | | | | | |
|---|---|---|---|---|---|---|---|
| Date of E-mail:<br>Value in letter:<br>Ltr. Heading: "Notice of Assignment and Lien" | 5/10/2019<br>11,925,053.45<br>First Notice | 5/20/2019<br>11,925,053.45<br>First Notice | 5/21/2019<br>11,925,053.45<br>First Notice | 5/22/2019<br>11,925,053.45<br>First Notice | 6/12/2019<br>11,925,054.45<br>First Notice | 6/21/2019<br>11,925,055.45<br>First Notice | TOTAL TO<br>6/21/2019 |
| A&M SUPPLY CORPORATION | | 1 | | 1 | | 5 | 7 |
| AHP CONSTRUCTION LLC | 38 | 2 | | 2 | | 8 | 50 |
| ARCHITECTURE INCORPORATED | | 1 | | 2 | | 5 | 8 |
| ARMADA HOFFLER CONSTRUCTION | | 1 | | 2 | | 11 | 14 |
| BLUE BOTTLE UNION STATION | 26 | 1 | | 5 | | 7 | 39 |
| BMG METALS, INC | | 2 | | 2 | | 14 | 18 |
| BRIDGEWATER COLLEGE | 12 | 2 | | 2 | | 10 | 26 |
| D.E. HARVEY BUILDERS | 11 | 1 | | 2 | | 7 | 21 |
| DPR CONSTRUCTION | 22 | 1 | 1 | 2 | | 10 | 36 |
| | | | | | | | 0 |
| EILEEN & MARC WELLER | 14 | 1 | | 3 | | 8 | 26 |
| FCL BUILDERS | 23 | 1 | | | | | 24 |
| GILBANE BUILDING COMPANY | 31 | | | 1 | | 8 | 40 |
| HENSEL PHELPS | 18 | 1 | | 2 | | 8 | 29 |
| HITT CONTRACTING | 12 | | 2 | 2 | | 8 | 24 |
| HOTEL SOFITEL | 14 | 1 | 2 | 1 | | 7 | 25 |
| KAISER-PERMANENTE | 22 | | 1 | 2 | | 6 | 29 |
| KINETIC CAPITAL | | | | | | | 2 |
| M&T BANK STADIUM | 14 | | | | | | 14 |
| MUSC CHILDREN'S HOSPITAL | 26 | 1 | | 4 | | 6 | 37 |
| PARADISE DESIGN | 27 | | 2 | | | | 29 |
| POTOMAC CONSTRUCTION SERVICES | 20 | 2 | | 3 | | 6 | 31 |
| PRINCE GEORGE'S COUNTY CIRCUIT COURT | 12 | 1 | 2 | 2 | | | 17 |
| ROBINS & MORTON | 28 | 1 | 1 | 4 | | 11 | 45 |
| SMITHSONIAN NATIONAL | 31 | | | | | | 31 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| MUSEUM OF AMERICAN HISTORY | | | | | | | |
| SODEXO HEALTHCARE | 25 | | 1 | 2 | | 10 | 38 |
| SOLIDCORE @ POINT ST APTS | 22 | 1 | 2 | | | 7 | 32 |
| THE DZUREKGROUP, LLC. | | | | 1 | 31 | | 32 |
| THE SPEAR GROUP | | 1 | | 2 | | 10 | 13 |
| VCU MEDICAL CENTER | 9 | | 2 | 3 | | 9 | 23 |
| ZELDA ZEN | | | | 2 | | | 2 |
| TOTAL E-MAILS REC: | 457 | 23 | 16 | 54 | 31 | 181 | 762 |

# Exhibit 6

**From:** Dan Ring [mailto:DRing@parfunding.com]
**Sent:** Tuesday, May 28, 2019 9:07 AM
**To:** Krakowsky, Joshua S.
**Cc:** John P. Hartley
**Subject:** HMC

Josh: Hope you had a nice holiday weekend. I wanted to shoot a proposal out to you this morning to get this resolved. There is a little over 3.3 mil due and owing on the amount funded to HMC. This does not appear to be in dispute. Would your client be willing to return 1.1 mil/month starting in mid June (payments in June, July and August).? These payments can be made weekly in equal increments. We will stop any and all garnishment/collection activity today and let the dust settle before the first payments would be due. By the end of the summer this will be complete and everyone can move on; our clients have no need to contact each other ever again.

Let me know your thoughts and get back to me. We can look for repayments to start June 14.

Thanks, let me know,

Dan

**Daniel Ring**
General Counsel

P A R
F U N D I N G
22 N. 3rd Street
Philadelphia, PA 19106
Office: 267-540-8126
*dring@parfunding.com*

*******************************************************************
STATEMENT OF CONFIDENTIALITY
The information contained in this electronic message and any
attachments to this message are intended for the exclusive use of the
addressee(s) and may contain confidential or privileged information.
If you are not the intended recipient, please notify us immediately
by email reply to sender or by telephone to Davidoff Hutcher & Citron
LLP at (800) 793-2843, ext. 3284, and destroy all copies of this
message and any attachments.

IRS DISCLOSURE NOTICE
In accordance with Internal Revenue Service Circular 230, we inform

1

you that any discussion of a federal tax issue contained in this
communication (including any attachments) is not intended or written
to be used, and it cannot be used, by any recipient for the purpose of
(i) avoiding penalties that may be imposed on the recipient under
United States federal tax laws, or (ii) promoting, marketing or
recommending to another party any tax-related matters addressed herein.
*********************************************************************

# Exhibit 7

100% |  f | *Search the website* 🔍



*The*
## DISCIPLINARY BOARD
*of the Supreme Court of Pennsylvania*

[ *I need t...* ▼ ]

FOR ATTORNEYS   FOR THE PUBLIC   NEWS & MEDIA   ABOUT

*Quick Links*   ‹ Back to Search

**BROWSE RULES**

*Browse the Rules that govern attorneys.*

**FILE A COMPLAINT**

*File a complaint against an attorney.*

**FIND AN ATTORNEY**

*Look up an attorney's contact information and disciplinary history.*

**SEARCH OPINIONS**

*Search Supreme Court and Disciplinary Board Opinions.*

**SEARCH RECENT DISCIPLINE**

# Ring, Daniel P.

## Public Information

Attorney ID: 79110

Current Status: Administrative Suspension

Date of Admission: 1/6/1997

Law Firm:

Other Organization:

Address: 213 SUTTER LN

PLYMOUTH MEETING Pennsylvania 19462

Country: United States

Telephone: (610) 322-7252

Fax:

Search
Recent
Discipline

---

©2007-2019 The Disciplinary Board of the Supreme Court of Pennsylvania.     Disclaimer  |  ADA Policy

Exhibit 8





## Policy Information

| | |
|---|---|
| Policy Number: | 6600486824 |
| Policy Type: | TERM LIFE INSURANCE POLICY |
| Product Name: | N/A |
| Policy Date: | JUN 12 2018 |

## Financial Details

| | |
|---|---|
| Face/Cash Amount: | $3,500,000.00 |
| Paid to Date: | DEC 12 2018 |

## Premiums/Billing

| | |
|---|---|
| Last Premium Deposit Date: | NOV 12 2018 |
| Annual Premium (next 12 months): | $7,625.00 |
| Modal Premium Amount: | $655.75 |
| Payment Frequency: | MONTHLY |
| Payment Method: | PRE-AUTHORIZED CHECK |
| Bank Routing Number: | 054001725 |





## Relationships

| | |
|---|---|
| Owner: | KARA ANNE DIPIETRO |
| Insured: | KARA ANNE DIPIETRO |
| Trustee: | GERALD J DZUREK |
| Beneficiary/Payee: | COMPLETE BUSINESS SOLUTIONS GROUP INC D/B/A PAR FUNDING |
| Servicing Agent Information: | 7028582654 |
| Servicing Agent Name: | NATTINAN WANDEEVONG |
| Servicing Agent Address: | 8174 MINOTS LEDGE AVE., LAS VEGAS, NV 89147 |
| Servicing Agency: | AXIANTA FINANCIAL PARTNERS |

## Addresses

Owner/Insured:
KARA A DIPIETRO  1836 LANDRAKE RD TOWSON, MD 21204-1824 USA

Trustee:
GERALD J DZUREK  8174 MINOTS LEDGE AVE LAS VEGAS, NV 89147 USA
6240 W 3RD STREET LOS ANGELES, CA 90036 USA

Beneficiary/Payee:
COMPLETE BUSINESS SOLUTIONS GROUP INC
d/b/a/PAR FUNDING
20 N 3RD ST PHILADELPHIA, PA 19106 USA

Exhibit 9

| DATE | CBSG DAILY ACH DEBIT AMOUNTS | DAILY PMT CONTRACT | DAILY PAYMENT 10% INCOME |
|---|---|---|---|
| 02/28/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/01/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/04/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/05/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/06/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/07/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/08/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/11/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/12/2019 | 4,583.00 | $ 4,583.00 | $ 523.76 |
| 03/14/2019 | 7,719.00 | $ 4,583.00 | $ 523.76 |
| 03/15/2019 | 7,719.00 | $ 4,583.00 | $ 523.76 |
| 03/18/2019 | 7,719.00 | $ 4,583.00 | $ 523.76 |
| 03/19/2019 | 7,719.00 | $ 4,583.00 | $ 523.76 |
| 03/20/2019 | 7,719.00 | $ 4,583.00 | $ 523.76 |
| 03/20/2019 | 7,719.00 | $ 4,583.00 | $ 523.76 |
| 03/21/2019 | 9,995.00 | $ 4,583.00 | $ 523.76 |
| 03/22/2019 | 9,995.00 | $ 4,583.00 | $ 523.76 |
| 03/25/2019 | 9,995.00 | $ 4,583.00 | $ 523.76 |
| 03/26/2019 | 9,995.00 | $ 4,583.00 | $ 523.76 |
| 03/27/2019 | 9,995.00 | $ 4,583.00 | $ 523.76 |
| 03/28/2019 | 12,495.00 | $ 4,583.00 | $ 523.76 |
| 03/29/2019 | 12,495.00 | $ 4,583.00 | $ 523.76 |
| 04/01/2019 | 12,495.00 | $ 4,583.00 | $ 523.76 |
| 04/02/2019 | 12,495.00 | $ 4,583.00 | $ 523.76 |
| 04/03/2019 | 12,495.00 | $ 4,583.00 | $ 523.76 |
| 04/04/2019 | 12,495.00 | $ 4,583.00 | $ 523.76 |
| 04/05/2019 | 12,495.00 | $ 4,583.00 | $ 523.76 |
| 04/08/2019 | 14,995.00 | $ 4,583.00 | $ 523.76 |
| 04/09/2019 | 14,995.00 | $ 4,583.00 | $ 523.76 |
| 04/10/2019 | 14,995.00 | $ 4,583.00 | $ 523.76 |
| 04/12/2019 | 14,995.00 | $ 4,583.00 | $ 523.76 |
| 04/12/2019 | 14,995.00 | $ 4,583.00 | $ 523.76 |
| 04/15/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/16/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/17/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/18/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/19/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/22/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/23/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/24/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/25/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/26/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/29/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 04/30/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 05/01/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 05/02/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| 05/03/2019 | 19,995.00 | $ 4,583.00 | $ 523.76 |
| | 599,901.00 | $ 215,401.00 | $ 24,617.56 |

| $3.35MIL   |   CONTRACT DETAILS   |   DATED 2/28/2019 | |
|---|---|
| CONTRACT DATE | 2/28/2019 |
| CONTRACT AMOUNT | $ 3,350,000.00 |
| DAILY PAYMENT STATED IN CONTRACT | $ 4,583.00 |
| INCOME PAYMENT OPTION SPECIFIED % | 10% |
| | |
| HMC'S AVERAGE DAILY REVENUE | $ 9,027.78 |
| HMC'S AVERAGE DAILY EXPENSES | $ (3,790.00) |
| HMC'S AVERAGE DAILY INCOME | $ 5,237.78 |
| 10% OF AVERAGE DAILY INCOME | $ 523.78 |
| | |
| AMOUNT CBSG DEBITED | $ 599,901.00 |
| DAILY PAYMENT AMOUNT STATED IN CONTRACT | $ 215,401.00 |
| DAILY PAYMENT AMOUNT 10% OF INCOME | $ 24,617.56 |
| | |
| AMOUNT TAKEN OVER DAILY CONTRACT PMT | $ 384,500.00 |
| AMOUNT TAKEN OVER 10% INCOME PAYMENT | $ 575,283.44 |

| DRAW SCHEDULE | | |
|---|---|---|
| DATE OF ADVANCE  |  AGE AT DEFAULT | | AMOUNT |
| 2/28/2019   |   46 DAYS | | $ 544,500.00 |
| 3/07/2019   |   39 DAYS | | $ 342,750.00 |
| 3/14/2019   |   36 DAYS | | $ 342,750.00 |
| 3/21/2019   |   29 DAYS | | $ 342,750.00 |
| 3/28/2019   |   24 DAYS | | $ 342,750.00 |
| 4/05/2019   |   18 DAYS | | $ 342,750.00 |
| 4/12/2019   |   13 DAYS | | $ 342,750.00 |
| 4/22/2019   |   7 DAYS | | $ 342,750.00 |
| 5/01/2019   |   2 DAYS | | $ 342,750.00 |

| DATE | CBSG DAILY ACH DEBIT AMOUNTS | DAILY PMT CONTRACT | DAILY PAYMENT 10% INCOME |
|---|---|---|---|
| 12/20/2018 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 12/21/2018 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 12/24/2018 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 12/26/2018 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 12/27/2018 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 12/28/2018 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 12/31/2018 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/2/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/3/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/4/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/7/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/8/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/9/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/10/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/11/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/14/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/15/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/16/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/17/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/18/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/22/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/23/2019 | $ 3,500.00 | $ 3,500.00 | $ 523.78 |
| 1/24/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 1/25/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 1/28/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 1/29/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 1/30/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 1/31/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/1/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/4/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/5/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/6/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/7/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/8/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/11/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/12/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/13/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/14/2019 | $ 12,337.00 | $ 3,500.00 | $ 523.78 |
| 2/15/2019 | $ 14,525.00 | $ 3,500.00 | $ 523.78 |
| 2/19/2019 | $ 14,525.00 | $ 3,500.00 | $ 523.78 |
| 2/20/2019 | $ 14,525.00 | $ 3,500.00 | $ 523.78 |
| 2/21/2019 | $ 14,525.00 | $ 3,500.00 | $ 523.78 |
| 2/22/2019 | $ 16,713.00 | $ 3,500.00 | $ 523.78 |
| 2/25/2019 | $ 16,713.00 | $ 3,500.00 | $ 523.78 |
| 2/26/2019 | $ 16,713.00 | $ 3,500.00 | $ 523.78 |
| 2/27/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 2/28/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/1/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/4/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/5/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/6/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/7/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/8/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/11/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/12/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/13/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/14/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/15/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/18/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/19/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/20/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/21/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/22/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/25/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/26/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/27/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/28/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 3/29/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/1/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/2/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/3/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/4/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/5/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/8/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/9/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/10/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/11/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/12/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/15/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/16/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/17/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/18/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/19/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/22/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/23/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/24/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/25/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/26/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/29/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 4/30/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 5/1/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 5/2/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 5/3/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 5/6/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| 5/7/2019 | $ 19,179.43 | $ 3,500.00 | $ 523.78 |
| | 1,361,602.80 | 332,500.00 | 49,758.69 |

**$3.8MIL   |   CONTRACT DETAILS   |   DATED 12/19/2018**

| | |
|---|---|
| CONTRACT DATE | 12/19/2018 |
| CONTRACT AMOUNT | $ 3,800,000.00 |
| DAILY PAYMENT STATED IN CONTRACT | $ 3,500.00 |
| INCOME PAYMENT OPTION SPECIFIED % | 10% |
| | |
| HMC'S AVERAGE DAILY REVENUE | $ 9,027.76 |
| HMC'S AVERAGE DAILY EXPENSES | $ (3,790.00) |
| HMC'S AVERAGE DAILY INCOME | $ 5,237.76 |
| 10% OF AVERAGE DAILY INCOME | $ 523.78 |
| | |
| AMOUNT CBSG DEBITED | $ 1,341,602.50 |
| DAILY PAYMENT AMOUNT STATED IN CONTRACT | $ 332,500.00 |
| DAILY PAYMENT AMOUNT 10% OF INCOME | $ 49,758.89 |
| | |
| AMOUNT TAKEN OVER DAILY CONTRACT PMT | $ 1,009,102.80 |
| AMOUNT TAKEN OVER 10% INCOME PAYMENT | $ 1,291,843.91 |

**DRAW SCHEDULE**

| DATE OF ADVANCE | AGE AT DEFAULT | AMOUNT |
|---|---|---|
| 12/19/2018 | 90 DAYS | $ 630,500.00 |
| 01/10/2019 | 81 DAYS | $ 550,000.00 |
| 01/18/2019 | 77 DAYS | $ 350,000.00 |
| 01/24/2019 | 71 DAYS | $ 350,000.00 |
| 01/31/2019 | 68 DAYS | $ 350,000.00 |
| 02/15/2019 | 63 DAYS | $ 350,000.00 |
| 02/22/2019 | 57 DAYS | $ 350,000.00 |
| 02/27/2019 | 53 DAYS | $ 250,000.00 |
| 02/27/2019 | 49 DAYS | $ 250,000.00 |
| 02/28/2019 | 46 DAYS | $ 340,000.00 |

Exhibit 10

**COMPLETE BUSINESS SOLUTIONS GROUP**
22 N 3rd Street –  Philadelphia  –  Pennsylvania 19106
215-253-4139  –  legaldepartment@parfunding.com

## NOTICE OF ASSIGNMENT & LIEN
## FIRST NOTICE

RE:   *HMC INCORPORATED; D/B/A KARA DIPIETRO*

Dear Sir or Madam:

This notice is being sent you because Bridgewater College and/or its parent or subsidiary entity(ies) is an account debtor of HMC INCORPORATED; D/B/A KARA DIPIETRO ("Merchant"), located at 7190 Oakland Mills RD #10, Columbia, MD 21046, and under Section 9-406 of the Uniform Commercial Code.

Merchant has defaulted on a secured merchant agreement between Merchant and CBSG (the "Agreement"). Under the Agreement, CBSG bought from the Merchant and paid for certain of the Merchant's accounts-receivable (collectively, the "Receivables"), making CBSG the owner of the Receivables.[1] The balance currently due and owing to CBSG under the Agreement is $11,925,053.45.

In addition to the buying the Receivables, and in accordance with the Agreement, CBSG filed a UCC-1 financing statement with the Secretary of State of Maryland.  A copy of the UCC-1 is attached for your reference.

To emphasize, Bridgewater College has made payments to Merchant, representing the Receivables CBSG bought from Merchant. While it is understood that Bridgewater College had an agreement with Merchant and not with CBSG, this letter nonetheless is being sent to instruct Bridgewater College, in accordance with the Agreement and with UCC 9-406, to hold in reserve all funds payable to Merchant and forward them to CBSG.

Please comply with the above immediately.  If you have any questions, please contact me at 215-253-4139 or legaldepartment@parfunding.com.  Thank you in advance for your anticipated cooperation in this matter.

Very truly yours,

*Brighid Lamb*

Brighid Lamb, Legal & Collections Coordinator

---

[1] Seller/Merchant hereby sells, assigns and transfers to CBSG (making CBSG the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Seller/Merchant's future receipts, accounts, contract rights, and obligations due to Seller/Merchant that arise from or relate to the payment of monies to Seller/Merchant from Seller/Merchant's customers and/or other third party payers (collectively the "Receipts" defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of Seller/Merchant's business) until such time as the "Receipts Purchased Amount (RPA)" has been delivered by Seller/Merchant to CBSG.

Enclosure
cc: New York Unity Factor

# Exhibit 11

# UCC-1

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
JAMIE MCELHONE          2159222636

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

COMPLETE BUSINESS SOLUTIONS GROUP
22 N 3RD STREET
PHILADELPHIA, PA 19106

ND DEPT. OF ASSESSMENTS & TAXATION    NS
180731-1022000
Lapse Date: 07/31/2023
Date:          7/31/2018
Time:          10:22 AM
Page Count:    2  By  2
Debtor Count:  2
Filing Fees:   $25.00
Electronic
Records Access: $0.00
Total:         $25.00
Order ID#      2106452?

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| HMC INCORPORATED | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 7190 OAKLAND MILLS RD #10 | COLUMBIA | | MD | 21046 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| DIPIETRO | KARA | | | | |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1836 LANDRAKE RD | TOWSON | | MD | 21204 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| COMPLETE BUSINESS SOLUTIONS GROUP | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 22 N 3RD STREET | PHILADELPHIA | | PA | 19106 | US |

4. COLLATERAL: This financing statement covers the following collateral:

See attachment

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:   ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility
6b. Check only if applicable and check only one box:   ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA

(Rev. 04/20/11)

Exhibit A Collateral:

The collateral includes the following property that borrower now owns or shall acquire or create immediately upon the acquisition or creation thereof: (i) any of all amounts owing to borrower not or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions and (ii) all other tangible and intangible personal property, including. but not limited to (a) inventory, (b) equipment, (c) investment property, including certificated and uncertified securities, securities accounts , security entitlements, commodity contracts and commodity accounts, (d) instruments, including promissory notes (e) chattel paper, including tangible chattel paper and electronic chattel paper, (f) documents, (g) letter of credit rights, (h) accounts, including health-care insurance receivables (i) deposit accounts, (j) commercial tort claims, (k) general tangibles, including payment intangibles and software and (l) as extracted collateral as such terms may from time to time be define in the Uniform Commercial Code.  The security interest Borrower grants includes all accessions, attachments, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.