**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HMC INCORPORATED, | : |
| | : |
| and | : |
| | : CIVIL ACTION NO.19-3285-JS |
| KARA DIPIETRO, individually, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. | : |
| d/b/a PAR FUNDING and FAST ADVANCE | : |
| FUNDING, INC., | : |
| | : |
| Defendants. | : |
| | : |

## MOTION FOR SUMMARY JUDGMENT

Plaintiffs HMC Incorporated and Kara DiPietro, by their counsel, White and Williams, LLP, hereby move this Court pursuant to Fed. R. Civ. P. 56 for an Order dismissing CBSG's counterclaim in their entirety, with prejudice. Support for this motion is set forth in the accompanying Memorandum of Law, Statement of Material Facts, and the Exhibits attached hereto.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

BY:
Shane R. Heskin
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
(215) 864-6329
heskins@whiteandwilliams.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HMC INCORPORATED, | : |
| and | : |
| KARA DIPIETRO, individually, | : CIVIL ACTION NO.19-3285-JS |
| Plaintiffs, | : |
| v. | : |
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/b/a PAR FUNDING and FAST ADVANCE FUNDING, INC., | : |
| Defendants. | : |

**MEMORANDUM OF LAW OF PLAINTIFF, HMC, INCORPORATED AND KARA DIPIETRO, IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**WHITE AND WILLIAMS LLP**
Shane R. Heskin
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
(215) 864-6329
heskins@whiteandwilliams.com
*Attorneys for Plaintiffs*

# I.     TABLE OF CONTENTS

II.     INTRODUCTION AND PROCEDURAL HISTORY......................................................1

III.    STATEMENT OF FACTS ............................................................................................2

IV.    ARGUMENT ................................................................................................................3

    A.     Standard of Review.............................................................................................3

    B.     The Agreements are invalid because they are loans in violation of Florida's Usury Statute. ...........................................................................................4

    C.     If the Agreements were true purchases of HMC's future receivables, then there has been no breach, because HMC has dramatically overpaid the amounts due. ......................................................................................................9

    D.     CBSG has admitted that the finance fees were without basis...............................13

## II.      TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). .................................................. 3

*Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455 (3d Cir. 2006)) ...................................... 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); ............................................................ 3

*Chestnut v. Pediatric Homecase of Am. Inc.*, 617 A.2d 347 (Pa. Super. Ct. 1992) ...................... 5

*Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1068 (2d Cir. 1995). ........... 7

*Estate of Mixon v. United States*, 464 F.2d 394, 405 (5th Cir. 1972) ............................................ 8

*First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277 (3d Cir. 1987); ..... 3

*Fleetwood Servs., LLC v. Complete Bus. Sols. Grp. Inc.*, 374 F. Supp. 3d 361 (E.D. Pa. April 10, 2019) ....................................................................................................................... 5

*Funding Metrics, LLC v. NRO Boston, LLC*, 2019 N.Y. Misc. LEXIS 4878 (Sup. Ct. Westchester Cty. August 28, 2019) ................................................................................................ 11

*Glick v. White Motor Co v. North American Rockwell Corp.*, 458 F.2d 1287 (3d Cir. 1972) ...... 13

*Green v. Boling (In re Boling)*, 2008 Bankr. LEXIS 2116 (M.D. Fla. July 24, 2008) .................. 6

*Grossman v. Butcher*, 1992 Ohio App. LEXIS 3653 ( Ct. App. 10th Dist. June 30, 1992) .......... 7

*Hayfield v. Home Depot USA, Inc.,* 168 F. Supp. 2d 436 (E.D. Pa. 2001). ................................... 3

*In re Aldan Indus.*, 2000 Bankr. LEXIS 342 (E.D.Pa. Bankr. April 3, 2000). .............................. 9

*In re Joseph Kanner Hat Co.,* 482 F.2d 937 (2d Cir. 1973) ......................................................... 8

*In re Lehigh Valley Prof'l Sports Club, Inc.*, 2002 Bankr. LEXIS 623 (E.D.Pa.Bankr. June 6, 2020) ...................................................................................................................... 13

*Kaneff v. Del. Title Loans, Inc.* 587 F.3d 616 (3d Cir. 2009) ........................................................ 5

*Lange v. Inova Capital Funding, LLC*, 441 B.R. 325 (8th Cir. 2011) ........................................... 8

*Major's Furniture Mart, Inc.,* 602 F.2d 538 (3d Cir. 1979) ......................................................... 8

ii

*Math Magicians, Inc. v. Capital for Merchs. LLC,* 2013 Cal. App. Unpub. LEXIS 8694 (Cal. Ct. App. Nov. 26, 2013). ............................................................................................................ 7

*Oregrund Ltd. Partnership v. Sheive*, 873 So.2d 451 (Fla. 5th Dist. Ct. App. 2004).................... 6

*Rosenberg v. Commissioner*, 79 T.C.M. (CCH) 1769 (2000) ........................................................ 8

*TIFD III-E, Inc. v. United States*, 459 F.3d 220 (2d Cir. 2006)...................................................... 8

**Rules**

F.R.C.P. 56(c). ............................................................................................................................... 3

Plaintiffs, HMC Incorporated ("HMC"), and Kara DiPietro ("Ms. DiPietro") (collectively "Plaintiffs"), through their undersigned counsel, hereby submit this Memorandum of Law in support of their Motion for Summary Judgment.

## III.    INTRODUCTION AND PROCEDURAL HISTORY

This matter is before the Court on the Motion of Plaintiffs for Summary Judgment, seeking the dismissal of Complete Business Solution Group's ("CBSG") Counterclaim for breach of contract, brought against Ms. DiPietro in her capacity as guarantor of HMC's obligations under the Agreements at issue in this case (ECF No. 15). The undisputed facts of this case show that HMC—and by extension, its guarantor, Ms. DiPietro—are not liable for breach of any contract, because (1) the Agreements between HMC and CBSG are criminally usurious loans under Florida law, not legitimate purchases of receivables, as revealed in CBSG's own internal documents, which refer to the Agreements' interest rate and term; and (2) even if the Agreements were in fact purchases of receivables, HMC has substantially overpaid its obligations under the Agreements. Further, even if this Court declines to find that, as a matter of law, Ms. DiPietro is clearly not liable for $884,652.84 in "finance fees" charged to HMC, because CBSG's former counsel, John Hartley Esq., conclusively admitted in proceedings before this Court that HMC did not owe those fees.

Plaintiffs filed this action on July 26, 2019. (ECF No. 1).  On September 12, 2019, Plaintiffs filed an Amended Complaint before this Court.  (ECF No. 10).  On October 4, 2019, Defendant Fast Advance Funding, LLC ("FAF") filed an answer to the Amended Complaint (ECF No. 12). On the same date, CBSG filed a motion to dismiss the Amended Complaint, which was later denied by this Court. (ECF No. 13, ECF No. 17). On October 9, 2019, FAF filed their First Amended Answer to the Amended Complaint, which as their original answer, purported to provide answers and counterclaims on behalf of CBSG as well. (ECF, No. 15).   The document set forth the

following counterclaims against Plaintiff DiPietro: Count I—Breach of Contract (Fast Advance Funding Inc.); Count II-Unjust Enrichment (Fast Advance Funding, Inc.); and Count I—Breach of Contract—CBSG (ECF No. 15).[1]   On November 1, 2019, Plaintiffs filed an answer to the Counterclaims raising the following defenses against CBSG: Failure to State a Claim, Breach of Contract, Unconscionability, Duress. (ECF No. 18). On November 14, 2019, CBSG once again filed an Answer to Plaintiffs' first Amended Complaint. (ECF No. 19).

Notwithstanding the confusing procedural events and multiple filings submitted by CBSG in response to Plaintiffs' Amended Complaint, Plaintiffs understand CBSG's only counterclaims against Plaintiff to be one for breach of contract, specifically only against Ms. DiPietro. CBSG raised a claim for breach of contract of DiPietro Guaranty, specifically, as to the following agreements: August 24, October 3, December 5, two December 7, and February 27, 2019.  CBSG demanded a judgment in the amount $11,567,923.27.

Discovery in this case has concluded.

## IV.    STATEMENT OF FACTS

In accordance with this Court's Policies and Procedures,   Plaintiffs filed a Statement of Material Facts in Support of their Motion for Summary Judgment. The Statement of Material Facts is incorporated herein by reference.

---

[1] Admittedly, on the first page of each of the responsive pleadings, CBSG indicated that it was consciously choosing not bring any claims against HMC "because it already has a judgment against HMC" from the action it chose to file separately. (See e.g. ECF 12, at 1 and ECF No. 15, at 1).

## V.     ARGUMENT

### A.     Standard of Review

Summary judgment is proper if the pleadings, discovery, disclosure materials and any affidavits show that there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); *see also* F.R.C.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202.

A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. 242, 252.  To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials.  *Celotex Corp.*, 477 U.S. at 321 n.3; *First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987); *Hayfield v. Home Depot USA, Inc.,* 168 F. Supp. 2d 436, 459 (E.D. Pa. 2001). Summary judgment is appropriate where "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.  In reviewing the record, a court "must view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009).

3

**B.     The Agreements are invalid because they are loans in violation of Florida's Usury Statute.**

CBSG, according to the testimony of its 30(b)(6) deponent, is a corporation registered in Delaware with its principal place of business, and only offices located in Florida. Statement of Material Facts ("SMF") ¶¶ 1-4 and accompany exhibits.  CBSG simply chose to file this matter in Pennsylvania, a state that bears no connection to the parties or the transactions, to perpetuate their deception scheme and avoid applicable usury regulations.  SMF ¶ 4 and accompany exhibit.

Upon commencing this action, Plaintiffs believed CBSG to be a Pennsylvania company. *See* ECF 10, ¶ 29, *see also* ECF 19 and 15, CBSG's Answer to Amended Complaint, ¶ 29 admitting the same.   Since then, discovery in this as well as related actions has revealed that CBSG is in fact a Florida company.  Most recently, on June 30, 2020, Plaintiffs were able to inquire and verify the extent of CBSG's Florida operation during deposition of Joseph Cole Barletta, CBSG's Chief Financial Officer. *See* SMF ¶ 1 and accompanying exhibit, Deposition of Joseph Cole Barletta ("Barletta Dep.") 157:5-21. Mr. Barletta testified that CBSG is a Delaware corporation with its principal and only place of business located in Florida. *Id.*  Mr. Cole also attested that CBSG is owned and operated by a Florida resident, Lisa Elhone. *See Id.* 149, 154,157-159, 220-223, 270-271; SMF ¶ 3.   Ms. Elhone is in charge of making decisions as to CBSG's operations and does so from Florida. SMF ¶ 4 and accompany exhibit. CBSG has not had an office in Pennsylvania since 2016. *Id.* at pp. 23. Because CBSG is a Florida business, operating from that state, and was operating out of Florida for the entire period relevant to this action, Florida law should apply to determine and regulate the transactions at issue.

4

Although the Agreements contain a Pennsylvania Choice of law clause, the clause is invalid and should not be enforced.  Under Pennsylvania conflicts of law, a contractual choice of law provision fails if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [of the Restatement (Second) of Conflicts of Law],  would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Kaneff v. Del. Title Loans, Inc*. 587 F.3d 616, 621-22 (3d Cir. 2009) (quoting *Berg Chilling Sys. v. Hull Corp*., 435 F.3d 455, 463 (3d Cir. 2006)) (emphasis added). *See also Chestnut v. Pediatric Homecase of Am. Inc*., 617 A.2d 347, 350-51 (Pa. Super. Ct. 1992) (applying Restatement §187); *Fleetwood Servs., LLC v. Complete Bus. Sols. Grp. Inc*., 374 F. Supp. 3d 361, 370, Fn. 7 (E.D. Pa. April 10, 2019) (noting that Restatement §187(2)(a) permits a court to disregard a choice of law provision where the chosen state "has no substantial relationship to the parties or to the transaction and there is no other reasonable basis for the parties choice").

Pennsylvania bears no reasonable relationship to the parties or the transactions underlying the CBSG Agreements, because none of the parties are Pennsylvania citizens, and the transactions do not implicate any possible interest of Pennsylvania.

Further, applying Pennsylvania law would be contrary to the Florida's usury statue and policy. Florida, unlike Pennsylvania has a strong connection to this matter and an interest in protecting individuals from companies operating in the State of Florida that, like CBSG promote,

offer, solicit and collect upon criminally usurious loans such as the Agreements at issue. Accordingly, Florida law should apply.

The Agreements at issue are de facto loans, even though CBSG purports to hide this fact by framing it under the guise of a sale—and as loans, and as such they violate the Florida usury statute and public policy by charging an interest in excess of 18%. *See* Fla. Stat. §687.03 and §687.071.

While the Agreements between HMC and CBSG used terms such as "factoring agreement," "sale," and "purchase," and "specified percentage,"[2] the transactions had none of the hallmarks of a true sale and all of the hallmarks of a loan that charged a usurious interest rate ranging between 42.% and 105.6%. SMF ¶ 15 and accompanying exhibit, CBSG(HMC)002548. The mere fact that a transaction may have been denominated as an "asset sale" is not determinative; the court must look beyond that curtain. *See Lange v. Inova Capital Funding*, LLC, 441 B.R. 325, 230 (8th Cir. 2011) (finding the purchase of receivables constituted a loan rather than a sale because the agreement "shift[ed] all risk" onto the seller); *see also Green v. Boling (In re Boling)*, 2008 Bankr. LEXIS 2116, *25 (M.D. Fla. July 24, 2008) ("In contemplating whether a transaction is usurious, courts can consider whether other amounts charged by a lender in connection with financing may be regarded as interest."); *Oregrund Ltd. Partnership v. Sheive*, 873 So.2d 451, 455-457 (Fla. 5th Dist. Ct. App. 2004) ("One does not have to specifically charge interest for there

---

**2** Wendy Lyday, the underwriter in charge of "the input of the numbers" into the Agreements, who currently publicly holds herself out as the Contract Manager of Par Funding, testified that she did not know what "Specified Percentage," as used in the Agreements, means. Deposition of Wendy Lyday ("Lyday Dep.") 14:10-15:12; 44:22-45:6; 45:10-16, 46:1-6, attached to the Declaration of Shane Heskin as Ex. 8 ("So that specified percentage is in pretty much every contract. I just don't know what it means."). Rather, for each Agreement, Ms. Lyday calculated the Daily Specified Amount by dividing the Purchased Amount by the repayment term. *Id.* at 70:1-17.

to be usury."). *See also* Black Law Dictionary's definition of a loan as "a thing lent for the borrower's temporary use; esp., a sum of money lent at interest." Loan, Black's Law Dictionary (10th ed. 2014).

As explained by the court in *Math Magicians*:

> The merchant cash advances are loans. Defendant requires the merchant cash advance be repaid in full. Defendant's only obligation is to advance cash to the borrower. Defendant does not bear any financial risk other than the borrower being unable to pay. Defendant requires borrower to reimburse it for any losses incurred related to the advance. In the event of a default, defendant is entitled to accelerate the borrower's payments. Borrowers must submit a credit application. Borrowers must agree to a credit check prior to entering into the merchant cash advance agreement. Defendant underwrites the merchant cash advance by assessing the borrower's creditworthiness. Defendant collateralizes the merchant cash advance by filing Uniform Commercial Code-1 financing statements. Defendant requires owners of the borrowers, such as Ms. Sinness, to execute personal guarantees.

*Math Magicians, Inc. v. Capital for Merchs. LLC,* 2013 Cal. App. Unpub. LEXIS 8694, at *8-9 (Cal. Ct. App. Nov. 26, 2013).

When, as here, a seller retains the right to use even a portion of the allegedly purchased assets, courts have found the transaction did not constitute a true sale. *See e.g. NetBank, FSB v. Kipperman (In Re Commer. Money Ctr. Inc.),* 350 B.R. 465, (9th Cir. 2006) (finding transaction to be a loan rather than a sale where seller/assignor retained right to surplus proceeds).

The Agreements are also not a sale of receivables because obligations thereunder could be repaid with independent funds. A quintessential element of a true sale of receivables is that the purchaser is repaid through the collection of the purchased receivables. *See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1068 (2d Cir. 1995). Thus, in a bona fide factoring arrangement, the factor is repaid through the account debtor's payment of the purchased receivable

to a lockbox or some other account controlled by the factor.  *See Grossman v. Butcher*, 1992 Ohio App. LEXIS 3653 at 7 (Ct. App. 10th Dist. June 30, 1992) ("[G]enerally speaking, an agreement to factor contains some variation of the following terms . . . an agreement that the invoice will notify the customer of the sale of the account to the factor, and the customer will be required to pay the factor directly."). However, where the advanced funds could be repaid with independent funds, courts have found the transaction was a loan and not a true sale. *See, e.g., In re Joseph Kanner Hat Co.,* 482 F.2d 937, 940 (2d Cir. 1973) (finding an agreement to be a loan where the "bank office testified that any payment received under the assignment would applied to reduce the amount of the loan").

Further, the Agreements are absolutely repayable.  The *sine qua non* of a loan is that the money advanced is absolutely repayable. *Endico Potatoes*, 67 F.3d at 1069 ("The root of all of these factors is the transfer of risk."); *TIFD III-E, Inc. v. United States*, 459 F.3d 220 (2d Cir. 2006) (citing *Estate of Mixon v. United States*, 464 F.2d 394, 405 (5th Cir. 1972) ("If there is a definite obligation to repay the advance, the transaction [will] take on some indicia of a loan."); *Rosenberg v. Commissioner*, 79 T.C.M. (CCH) 1769 (2000) ("right to enforce repayment of an advance suggests that the advance is a loan.").

Most crucially, the Agreements are loans because the risk of loss associated with the purportedly sold receivables, both in form and practice, remained with Plaintiffs, which is completely inconsistent with a bona fide factoring arrangement. SMF ¶¶ 40-43 (showing that CBSG had full recourse under the Agreements, as a failure to generate sufficient funds on four occasions would result on in a default, and the Agreements were secured by Ms. DiPietro's guaranty, a security interest on substantially all of HMC's assets, and the right to confess judgment

against HMC). In a true factoring arrangement, the factor purchases the receivables and assumes the risk that factor client will pay the receivable. *Lange v. Inova Capital Funding, LLC*, 441 B.R. 325, 230 (8th Cir. 2011) (finding the purchase of receivables constituted a loan rather than a sale because the agreement "shift[ed] all risk" onto the seller); *Major's Furniture Mart, Inc.,* 602 F.2d 538, 546 (3d Cir. 1979) ("It is apparent to us on the record none of the risks present in a true sale is present here.").

Florida usury laws prohibit charging an interest in excess of 18% on loans. See Fla. Stat. §687.03 and §687.071.  A debt charging an interest in excess of said percentage is a criminally usurious debt that is unenforceable.  Fla. Stat. §687.071(7).  Since the Agreements at issue charged in effective interest ranging between 42.2% and 105.6 %, the statute entitles Plaintiffs to the return of amounts paid to CBSG in connection with the usurious loans.  Further, also by reason of the foregoing and pursuant to the same statute, Plaintiffs are entitled to damages in the amount paid to CBSG under the Agreements and a declaration that the Agreement is a criminally usurious and unenforceable loan.

    C.    **If the Agreements were true purchases of HMC's future receivables, then there has been no breach, because HMC has dramatically overpaid the amounts due.**

If the Agreements were not usurious loans, but in fact legitimate purchases of future receivables, then HMC has not breached the Agreements, because it has paid CBSG substantially more than it was obligated to under the Agreements. Given that "a guarantor generally may assert the defenses of his principal on a suit under the guaranty," Ms. DiPietro, as HMC's guarantor, cannot be held liable for a breach of contract that did not occur. *In re Aldan Indus.*, 2000 Bankr. LEXIS 342, at * 18 (E.D.Pa. Bankr. April 3, 2000).

Taking the Agreements at face value, and in the light most favorable to CBSG, HMC has paid several million dollars more than it was obligated under the Agreements. It is undisputed that, since the beginning of its relationship with CBSG, HMC has paid at least $21,882,652 to CBSG. SMF ¶ 8 and accompany exhibits; Duross Expert Report, at 7. CBSG has sued on eight Agreements, the earliest of which is dated August 24, 2018. CBSG Counterclaim ¶ 5. CBSG claims that each Agreement permitted it to draw upon 10% of HMC's receivables. CBSG Answer ¶ 47. Accordingly, the eight agreements that CBSG sued on, according to CBSG, entitled it to be repaid through debiting 80% of HMC's daily receivables. *Id.* According to CBSG's own records, there were a total of twenty-one Agreements active between August 24, 2018 and May 4, 2019 (the day of the confession of judgment)—thirteen Agreements that were paid off, most by December 2018, and the eight that CBSG alleges are still active. CBSG(HMC)0020548.

While CBSG's records show that the thirteen paid-off Agreements were closed by March 1, 2019, for ease of calculation, HMC will assume, *arguendo*, that all twenty-one agreements were active between August 24, 2018 and May 4, 2019. Each Agreement had a Specified Percentage of 10%. *See generally* Agreements. Assuming that each Agreement reflected CBSG's right to draw upon 10% of HMC's daily receivables,[3] and further assuming arguendo that it is proper to stack the Specified Percentages,[4] then, from August 24, 2018 to May 4, 2019, CBSG was entitled to a payment of 210% of HMC's daily receivables. During that period, HMC paid to CBSG not less

---

[3] HMC specifically denies that each Agreement conferred such a right, as the majority of Agreements involved the purchase of some fraction of *specific* invoices, not *all* of HMC's receivables.

[4] HMC again specifically denies that the stacking of Specified Percentages is proper, because the stacking is inconsistent with a true sale, in that it permits CBSG to purchase more than 100% of an asset, which should be impossible.

than $13,590,997.89. SMF ¶ 8 and accompany exhibits; HMC041206.[5] During that same period, HMC's revenues, excluding financing, totaled $3,008,356.59. Kara DiPietro Affidavit, Ex. _. Assuming that CBSG was entitled to 210% of HMC's revenue during this entire period—an assumption more generous than CBSG's own allegations—then HMC overpaid by at least $7,273,449.05. Thus, HMC was not in breach of the Agreement when CBSG filed a confession of judgment against them.

HMC is still not in breach. From May 5, 2019 until July 16, 2020, HMC has earned $4,808,115.78 in receivables, again excluding financing. *Id.* Eighty percent of this figure—the percentage of HMC's daily receivables that CBSG contends it has a right to draw upon—is $3,846,492.63. Accordingly, even under the interpretation of the Agreements most maximally favorable to CBSG, HMC has overpaid on the contracts by $3,426,956.42. Accordingly, no breach has occurred.

The maximalist interpretation of the Agreements is, of course, wrong as a matter of law. Instead, the Agreements are properly interpreted as, *together*, securing CBSG a right to merely 10% of HMC's daily receivables. First, allowing the Specified Percentages of the Agreements to stack would be inconsistent with the nature of a true sale, as it would allow CBSG to purchase more than 100% of an asset, a logical impossibility. *See Funding Metrics, LLC v. NRO Boston, LLC*, 2019 N.Y. Misc. LEXIS 4878 at *8 (Sup. Ct. Westchester Cty. August 28, 2019) (noting the fact that MCA agreements required a merchant to pay back more than 100% of their daily receivables was evidence that those agreements were loans, not sales of receivables). Second, it is inconsistent with the representations of CBSG's 30(b)(6) deponent, who testified that the

---

[5] This number is derived from summing numbers E1066 to E2849 on the spreadsheet.

Agreements together constituted a purchase of 10% of HMC's receivables. *See* Barletta Dep. 54:13-18 (**Q:** And CBSG is buying 10 percent of her receivables, right? **Mr. Berman**: Objection. **A:** Yes, there's a factoring rate on the receivables being presented.).[6] Accordingly, given that HMC's revenues since February of 2018 amount to only $11,524,352.46. SMF ¶ 9 and accompany exhibits.  Ten percent of this figure—$1,152,435.25—is well below the over twenty-one million dollars that it is uncontested HMC paid CBSG.

In the alternative, even if this Court finds that the Specified Percentages on the Agreements can stack, HMC at no point owed more than 40% of its daily receivables. As CBSG acknowledges, certain of the Agreements consist of purchases of *specific invoices.*[7] Indeed, based on reading the face of the Agreements, all but three—the December 5, 2018, December 19, 2018, and February 27, 2019 Agreements—were based on specific invoices. *See* Agreements. The specific invoice Agreements, taken together, could never have entitled CBSG to more than 10% of HMC's daily receivables, because, as a matter of elementary mathematics, the sum of ten percent of certain segments of a whole can never exceed ten percent of the whole. As a consequence, at no point could HMC have owed CBSG more than 40% of its daily receivables. Forty percent of HMC's total revenue since February 2018 is $4,609,740.98—significantly less than what HMC has paid

---

[6] *See also Id.* at 54:20-55:3 (**Q:** I'm not talking about the factoring rate. I'm talking about the paying buying [sic] 10 percent of her future receivables, right? **Mr. Berman:** Objection. **Q:** Right? **A:** Correct.).

[7] "**Q:** Well, this agreement says it's buying 10 percent of all of HMC's receivables, doesn't it? **A:** No. **Q:** No? It doesn't say that? **A:** No, I'm saying in underwriting we go through and identify specific receivables such as the one you detailed out those invoices for. Remember the 10 percent that you pointed out that was incorrect? **Q:** Yeah. **A:** We are basing that on actual invoices that the client has and we're applying a factor rate to it to collect on so that we can be made whole when we advance the money. **Q:** So this 10 percent of what? **A:** Of an underwritten receivable that they went through for this deal.**"** Barletta Dep 372:12-373:8.

CBSG. Thus, if this Court treats these Agreements as true sales of receivables, it is clear that HMC could not possibly owe money to CBSG, as it has already substantially overpaid CBSG.

### D.      CBSG has admitted that the finance fees were without basis.

In the alternative, this Court should refuse to hold HMC—and by extension Ms. DiPietro— liable for the finance fees CBSG assessed on the August 24, 2018 and October 3, 2018 Agreements, totaling $884,652.84. SMF ¶ 44 and accompany exhibit. In a hearing before this Court, CBSG's counsel, John Hartley Esq., in reference to the October 3, 2018 Agreement, stated:

> [CBSG wasn't] charging any factoring rate for the first 44 days. If HMC had paid this factoring agreement off within 44 days, they would have only paid how much they were advanced. It was after the 44 days that the factoring rate would be increased. It says after 44 days, principal to be returned or we will reassess factoring rate. What that means is if they had paid back that $1,500,000 within 44 days, they would not have been charged a factoring rate on that money.

SMF ¶ 38 and accompany exhibit, Transcript of Oral Argument before Honorable Juan R. Sanchez United States District Judge, September 19, 2019 at 14:19-15:2. This admission makes clear that, under the Agreement and after passage of 44 days, CBSG would be entitled to demand back from HMC the entire Purchased Amount (and not merely the Purchase Price); however, it does not provide that CBSG would be entitled to add a financing fee. The August 24, 2018 Agreement, on its face, is structured substantially similarly, so the same analysis must apply. CBSG is bound by its representation to this Court. *See In re Lehigh Valley Prof'l Sports Club, Inc.*, 2002 Bankr. LEXIS 623, at *24 (E.D.Pa.Bankr. June 6, 2020) (quoting *Glick v. White Motor Co v. North American Rockwell Corp.*, 458 F.2d 1287, 1291 (3d Cir. 1972). Accordingly, CBSG is barred from claiming that the finance fees have any legitimacy, or that HMC or Ms. DiPietro could be liable to pay them.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully requests that Defendants' counterclaims be dismissed in their entirety and with prejudice pursuant to Fed. R. Civ. P. 56.

Dated: July 23, 2020

**WHITE AND WILLIAMS LLP**

By:_____

Shane R. Heskin
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
(215) 864-6329
heskins@whiteandwilliams.com

*Attorneys for Plaintiffs*

14

**<u>CERTIFICATE OF SERVICE</u>**

I, Shane R. Heskin, Esquire, hereby certify that a true and correct copy of Plaintiffs'

opposition to Defendants' motion for leave to amend was served via ECF upon counsel of record

on July 23, 2020.

**WHITE AND WILLIAMS LLP**

By: _____
            Shane R. Heskin

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

HMC INCORPORATED,

and

KARA DIPIETRO, individually,

     Plaintiffs,

  v.

COMPLETE BUSINESS SOLUTIONS GROUP, INC.
d/b/a PAR FUNDING and FAST ADVANCE
FUNDING, INC.,

     Defendants.

CIVIL ACTION NO.19-3285-JS

## <u>ORDER</u>

  AND NOW, this _____ day of _____, 2020, it is hereby ORDERED that

Plaintiffs' Motion for Summary Judgment is GRANTED. CBSG's Counterclaim is DISMISSED

in their entirety, with prejudice.

  It is so Ordered.

        BY THE COURT:

        _____
                 J.

24985472v.1