# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HMC INCORPORATED and KARA DIPIETRO individually | : CIVIL ACTION |
| | : |
| | : 19-3285 |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| COMPLETE BUSINESS SOLUTIONS GROUP, INC. d/ba PAR FUNDING and FAST ADVANCE FUNDING INC. | : |
| | : |
| | : |
| Defendant. | : |

## STATEMENT OF MATERIAL FACTS

Plaintiffs and Counterclaim Defendants HMC Incorporated ("HMC") and Kara DiPietro ("Ms. DiPietro"), by and through the undersigned counsel, submit this Statement of Material Facts in support of its Motion for Summary Judgment:

1.      Complete Business Solutions Group, Inc. ("CBSG") is, according to the representations of its 30(b)(6) deponent, a Delaware registered corporation with a principal place of business located in Florida. Deposition of Joseph Cole Barletta ("Barletta Dep.") 157:5-21, attached to the Declaration of Shane Heskin as Ex. 4.

2.      At all times relevant to this action, CBSG, according to its 30(b)(6) deponent, maintained only a single office, located in Florida. *Id.*

3.      Lisa McElhone, who CBSG's 30(b)(6) deponent testified is the owner of CBSG, allegedly conducts business out of CBSG's Florida office. *Id.* at 154:11-156:16.

4.      CBSG, according to the representations of its 30(b)(6) deponent, has not had a physical presence in the Commonwealth of Pennsylvania since the end of 2016. *Id.* at 23:9-24:1.[1]

5.      HMC is a Maryland registered corporation with a principal place of business in Columbia, Maryland. CBSG Answer to First Amended Complaint ("CBSG Answer") ¶ 27, attached to the Declaration of Shane Heskin as Ex 3; Counterclaim by Counterclaim Plaintiff CBSG ("CBSG Counterclaim") ¶ 2, attached to the Declaration of Shane Heskin as Ex. 3.[2]

6.      Kara DiPietro is a resident and citizen of the State of Maryland. CBSG Answer ¶ 8; CBSG Counterclaim ¶ 28; Deposition of Kara DiPietro ("DiPietro Dep.") 22:3-5, attached to the Declaration of Shane Heskin as Ex. 6.

7.      Starting on or about February 15, 2018, and continuing through on or about February 27, 2019, HMC entered into a series of merchant cash advance transactions with CBSG (the "Agreements"), each secured by the personal guaranties of Ms. DiPietro ("the Guaranties"). CBSG Answer ¶ 40; CBSG(HMC)0020548, attached to the Declaration of Shane Heskin as Ex. 7.

8.      It is uncontested that from February 23, 2018 to May 30, 2019, HMC paid to CBSG *at least* $21,882,652. Expert Report of J. Duross O'Bryan, at 7, attached as Ex. 11. *See also* Affidavit of Kara DiPietro ¶ 4; HMC 041206, attached to the Declaration of Kara DiPietro as Exhibit 2.

9.      From February 3, 2018 to July 16, 2020, HMC's sales revenue (thus excluding revenue from financing) totaled $11,524,352.46. Affidavit of Kara DiPietro ¶ 5; *see also* HMC,

---

[1] While Plaintiffs believe that the statements of CBSG's 30(b)(6) as to CBSG's lack of presence in Pennsylvania are false, and, indeed, sanctionable, CBSG is nonetheless bound by the words of its 30(b)(6) deponent.

[2] As these are the same document, they are given the same Exhibit number; however, they are cited separately.

25006088v.1

Inc. Sales Revenue February 2018 through YTD 2020, attached as Ex. 3 to the Affidavit of Kara

DiPietro; *see also* Bank Statements, attached to the Affidavit of Kara DiPietro as Ex. 2.

10.     From August 24, 2018 to May 4, 2020, HMC's sales revenue totaled

$3,008,356.59. HMC, Inc. Sales Revenue February 2018 through YTD 2020, attached as Ex. 3 to

the Affidavit of Kara DiPietro.

11.     From May 5, 2020 to July 16, 2020, HMC's sales revenue totaled $4,873,479.58.

*Id.*

12.     Each of the Agreements have certain terms that are used in common, namely:

Purchase Price, Specified Percentage, Daily Specified Amount, and Receipts Purchased Amount.

*See* Agreements, attached as Ex. 1 to the Affidavit of Kara DiPietro. Because these are form

contracts, only the first contract is attached in its entirety; only the operative pages of the

remaining Agreements are attached.

13.     According to the terms of the Agreements, the Purchase Price denoted the amount

of funds advanced to HMC by CBSG. *Id.*

14.     Per the written terms of each Agreement,[3] CBSG purported to purchase HMC's

"future receipts, accounts, contract rights and other obligations arising from or relating to the

payment of monies from [HMC's] customer's and/or other third party payers." *Id.* These

Receipts were defined as "payments made by cash, check, credit or debit card, electronic transfer

or other form of monetary payment in the ordinary course of [HMC's] business." *Id.*

15.     According to the terms of the Agreements, the Receipts Purchased Amount

denoted the amount of Receipts that had to be repaid by HMC to CBSG to satisfy HMC's

obligations under the Agreement. *Id.*

---

[3] HMC contends that, as a matter of law, the uncontested facts of this case show that these Agreements were loans, and not true sales of receivables. HMC merely notes what the Agreements say on their face.

-3-

16.     All of these Agreements, except the Agreements dated December 5, 2018, December 19, 2018, and February 27, 2019, involved, on their face, the purchase from HMC of a percentage of specific invoices. *Id.; see also* Barletta Dep 372:12-373:8, attached to Declaration of Shane Heskin as Ex. 4.

17.     On its face, the December 5, 2018 involved a purchase of a percentage of HMC's total receipts, or revenue acquired in the ordinary course of business. Agreements.

18.     On its face, the December 19, 2018 Agreement involved a purchase of a percentage of HMC's income. ("Daily specified amount to be determined on percentage of income."). Agreements, attached as Ex. 1 to the Affidavit of Kara DiPietro.

19.     On its face, the February 27, 2019 Agreement involved a purchase of a percentage of HMC's income. ("Daily Specified Amount begins at $4,583.00 per day, and increases based on percentage of income.").

20.     CBSG defined income to mean revenue minus expenses. Barletta Dep. 82:24-83:14; 83:15-22, attached to Declaration of Shane Heskin as Ex. 4.

21.     According to the terms of the Agreements, the Receipts Purchased Amount would be repaid through daily payments referred to as the Daily Specified Amount. Agreements, attached as Ex. 1 to the Affidavit of Kara DiPietro

22.     On their face, each Agreement stated that the Daily Specified Amount was "an approximation of the base payment due under the Specified Percentage." *Id.*

23.     Each and every Agreement contained the same Specified Percentage of 10%. *Id.*

24.     Each Agreement specified a term, over which the Receipts Purchased Amount was required to be repaid. *Id.*

-4-

25.     Wendy Lyday, the underwriter in charge of "the input of the numbers" into the Agreements, who currently publicly holds herself out as the Contract Manager of Par Funding, testified that she did not know what "Specified Percentage," as used in the Agreements, means. Deposition of Wendy Lyday ("Lyday Dep.") 14:10-15:12; 44:22-45:6; 45:10-16, 46:1-6, attached to the Declaration of Shane Heskin as Ex. 8 ("So that specified percentage is in pretty much every contract. I just don't know what it means.").

26.     Ms. Lyday additionally testified that there is no relationship between the Specified Percentage and the calculation of the Daily Specified Amount. *Id.* at 46:1-47:6.

27.     Rather, for each Agreement, Ms. Lyday calculated the Daily Specified Amount by dividing the Purchased Amount by the repayment term. *Id.* at 70:1-17.

28.     CBSG maintained an internal spreadsheet containing details of all of its deals with HMC. CBSG(HMC)0020548, attached to the Declaration of Shane Heskin as Exhibit. 7. This spreadsheet contained an APR for each of the deals. *Id.*

29.     Per CBSG's own calculations, the August 24, 2018 Agreement carried an APR of 42.4%. *Id.* at line 15.

30.     Per CBSG's own calculations, the October 3, 2018 Agreement carried an APR of 96.0%. *Id.* at line 14.

31.     Per CBSG's own calculations, the December 5, 2018 Agreement carried an APR of 74.9%. *Id.* at line 7.

32.     Per CBSG's own calculations, each of the three December 7, 2018 Agreements individually carried an APR of 83.1%. *Id.* at lines 4-6.

33.     Per CBSG's own calculations, the December 19, 2018 Agreement carried an APR of 66.0%.  *Id.* at line 3.

34.     Per CBSG's own calculations, the February 28, 2019 Agreement carried an APR of 88.0%. *Id.* at line 2.

35.     Per CBSG's own calculations, none of the Agreements carried an APR ranging from 42.2% to 105.6%. *Id.* at line 15, 59.

36.     The August 24, 2018 contained the following language: "Daily Specified Amount: $6,606.00 for 44 days (Interest only)….* After 44 Days, Principal to be returned or we will reassess factor rate." Agreements, attached to Declaration of Shane Heskin as Ex. 1.

37.     The October 3, 2018 Agreement contained the following language: "Daily Specified Amount: $ 5,552.81 for 44 days…*After 44 days, Principal to be returned or we will reassess factor rate."

38.     In a September 19, 2019 hearing before this Court, John Hartley, Esq., attorney for CBSG, explaining the terms of the October 3, 2018 Agreement, represented to this Court: "[CBSG wasn't] charging any factoring rate for the first 44 days. If HMC had paid this factoring agreement off within 44 days, they would have only paid how much they were advanced. It was after the 44 days that the factoring rate would be increased. It says after 44 days, principal to be returned or we will reassess factoring rate. What that means is if they had paid back that $1,500,000 within 44 days, they would not have been charged a factoring rate on that money." Transcript of Oral Argument before Honorable Juan R. Sanchez United States District Judge, September 19, 2019 at 14:19-15:2, attached to Declaration of Shane Heskin as Ex. 12.

39.     Each Agreement contained provisions for recourse by CBSG against HMC. *Agreements.*

40.     The Agreements provided that, in an Event of Default, the entire Purchased Amount, together with additional fees, would immediately become due. *Id.*

41.     The Agreements provided that, upon more than four "NSF [Non-Sufficient Funds]" events, a Default could be immediately declared. *Id.*

42.     The Agreements were secured by the Guaranty of Ms. DiPietro, and with a security interest on substantially all of HMC's assets. *Id.*

43.     The Agreements contained confessions of judgment against HMC. *Id.*

44.     On or about November 8, 2018, CBSG assessed a $472,356.60 finance fee on the August 24, 2018 Agreement. CBSG(HMC)0019831-32, attached to the Declaration of Shane Heskin as Ex. 9.

45.     On or about December 12, 2018, CBSG assessed a $412,296.24 finance fee on the October 3, 2018 Agreement. *Id.*

46.     On or about May 4, 2019, CBSG declared HMC to be in default on its outstanding obligations, and filed a confession of judgment in the Philadelphia Court of Common Pleas. Confession of Judgment, attached to the Declaration of Shane Heskin as Exhibit 10.

47.     CBSG contends that eight Agreements—the August 24, 2018, October 3, 2018, December 5, 2018, three of the December 7, 2018, December 19, and the February 27, 2019 Agreements—remain outstanding. CBSG Counterclaim ¶ 5.

48.     CBSG contends that these outstanding Agreements entitle it to draw upon 80% of HMC's daily receivables. CBSG Answer ¶ 63.

BY:

**WHITE AND WILLIAMS LLP**

By:_____

Shane R. Heskin
Justin Proper
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
(215) 864-6329
heskins@whiteandwilliams.com

*Attorneys for Plaintiffs*

25006088v.1